UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 6602 (PKL)

---

CANTONE & CO., INC.,

Plaintiff,

- against -

SEAFRIGO a/k/a SEAFRIGO
MARSEILLE,

Defendant.

---

**DECLARATION OF
STEPHEN H. VENGROW**

Stephen H. Vengrow declares that the following statement is true under the penalties of perjury::

1.  I am a member of the I am a member of the law firm of Cichanowicz, Callan, Keane, Vengrow & Textor, LLP, the law firm representing SeaFrigo Marseille in the captioned litigation.

2.  Attached are the following Exhibits which are true and complete copies:

    Exhibit A        Original SeaFrigo House Bill of Lading "HB/L no. E35039700000 dated September 22, 2006 and whose backside Clause 20 ("Jurisdiction") states:

    > Disputes arising under this Bill of Lading shall be determined by the Tribunal of Commerce at Le Havre under the law of France and no other Court shall have jurisdiction with regards to any such action.

    Exhibit B        46 C.F.R. §520.4(5) of Part 20-Carrier Automated Tariffs Filing Rules issued by the Federal Maritime Commission.

    Exhibit C        The Hatsu Marine ("Hatsu") backside bill of lading terms

and conditions downloaded from the Hatsu website and which shows Clause 29 ("Law and Jurisdiction"); to wit:

(1) Governing Law-Save where the terms and conditions of this bill of lading provide for another law to apply, this bill of lading shall be governed by, and its terms and conditions shall be construed according to, English law.

(2) Jurisdiction-All claims and disputes under this Bill shall be determined by the High Court of Justice, England to the exclusion of the jurisdiction of the courts of any other country provided always that the Carrier may in its absolute and sole discretion invoke or voluntarily submit to the jurisdiction of the courts of any other country which, but for the terms of this Bill of Lading, could properly assume jurisdiction to hear and determine such claims or disputes, but this shall not constitute a waiver of the terms of this provision for any other claims or disputes.

(3) Notwithstanding, the provisions of Clause 29(1) and (2) above, if the carriage includes carriage to, from or through a port in the United States of America, the Merchant may refer any claim or dispute to the United States District Court for the Southern District of New York in who shall determine the same accordance with the laws of the United States of America.

Exhibit D      Sample Hatsu bill of lading (with backside) issued September 14, 2006 with backside terms and conditions which shows Clause 29 ("Law and Jurisdiction") in the exact same wording as stated in Exhibit C.

Exhibit E      Hatsu boiler plate B/L form with the backside terms and conditions reflecting identical language including Clause 29 ("Law and Jurisdiction") language as shown in Exhibit C and D.

Exhibit F      Backside bill of lading terms and conditions represented

by Cantone's lawyer to be the backside of the SeaFrigo

House Bill of Lading E35039700000.

Exhibit G          Plaintiff's complaint.

Exhibit H          Defendant's answer.

Exhibit I          The Docket Sheet

Exhibit J          Plaintiff's    process    of    maritime    attachment    and
                   garnishment

Exhibit K          Proposed French bank guarantee

Exhibit L          Plaintiff's claim statement

Exhibit M          Plaintiff's affidavit in support of attachment

3.   I obtained **Exhibits D** and **E** from the Manager of the export department of
     Evergreen America Corporation located at One Evertrust Plaza, Jersey City, New
     Jersey. Specifically I ask for and received a sample Hatsu B/L with backside
     which was issued in September 2006 which is the same month that **Exhibit A**
     was prepared. [As shown in **Exhibit D**, Evergreen America acted as the agent of
     Hatsu. Today, Hatsu is part of the Evergreen Organization.] It was also explained
     to me that **Exhibit E** always shows the front side as blank until a confirmation
     booking is made by Hatsu or its agent at which time there is computer generated
     a front side Hatsu B/L form with the relevant shipping information inserted into
     each of the front side boxes with the backside terms and conditions remaining as
     the backside of the computer generated front side (as shown by **Exhibit D**).

4.  I would point out that in the "Declared Value" sentence, at the lower portion of the box entitled "Description of Packages and Goods" on the front side of the SeaFrigo HB/L no. E35039700000, there is referenced Clause 7.1 which is the SeaFrigo ad valorem language. Clause 7.1 ("Compensation for Loss and Damage") states:

> 7.1.  Unless otherwise mandated by compulsorily applicable law Carrier's liability for compensation for loss or damage to goods shall in no case exceed the amount of US$500 per package or per customary freight unit, <u>unless the Merchant, with the consent of Carrier, has declared by writing a higher value for the goods in the space provided on the front of this Bill of Lading and paid extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability</u>. Where a container is stuffed by shipper or on its behalf, and the container is sealed when received by Carrier for shipment, the Carrier's liability will be limited to US$500 with respect to the contents of each such container, <u>except when the Shipper declares by writing the value on the face hereof and pays additional charges on such declared value</u>. The freight charged on sealed containers when no higher valuation is declared by the Shipper is based on a value of US$500 per container. However, Carrier shall not, in any case, be liable for an amount greater than the actual loss to the person entitles to make the claim (underlining added).

5.  Clause 7.1 ("Amount of Compensation and Limitation of Liability") of Exhibit F (the purported backside terms and conditions of the SeaFrigo HB/L) is not an ad valorem clause. Rather, this Clause 7.1 is that of the Hatsu B/L (see **Exhibit C**, **D** and **E**); to wit:

> (1) All claims for which the Carrier may be liable shall be adjusted and settled on the basis of the net invoice value of the Goods plus freight and insurance. Notwithstanding the foregoing it is agreed that that in no event shall this clause operate to increase the extent of the Carrier's liability beyond the applicable market value at the port of discharge or place of delivery, if that be less than the net invoice value plus freight and insurance. In no event shall the Carrier be liable for any loss of profit or any consequential loss.

.

4

Dated:        New York, NY, May 22, 2007

_____

Stephen H. Vengrow

# VENGROW EXHIBIT A



**SEAFRIGO**
*YOUR REEFER LOGISTICS SPECIALIST*

| SHIPPER (Principal or Seller-license and address) | BILL OF LADING NUMBER | E35039700000 |
|---|---|---|

**SHIPPER** (Principal or Seller-license and address)
BCS S.A.
Z.I. LES FRARIES

42 740 SAINT PAUL EN JAREZ                    FRANCE

**BILL OF LADING NUMBER**    E35039700000

**EXPORT REFERENCES**
**BOOKING NUMBER**

**FORWARDING AGENT (References)**

**CONSIGNEE** (Non-Negociable unless consigned to order)
CANTONE & CO INC
14 EAST 60TH STREET
SUITE 400
NEW-YORK 10022                    U.S.A.

**POINT AND COUNTRY OF ORIGIN**

**NOTIFY PARTY / INTERMEDIATE CONSIGNEE** (Name and address)

SAME AS CONSIGNEE

**RELEASE INSTRUCTIONS / Presentation OFFICE**

PLEASE CONTACT :
SEAFRIGO INC - Maite CHAVARRI
Phone : 201.770.1143

| PRE-CARRIAGE BY | PLACE OF RECEIPT | | |
|---|---|---|---|
| OCEAN VESSEL STADT WISMAR | PORT OF LOADING FOS-SUR-MER | NUMBER OF ORIGINAL B(s)/L. 0 | |
| PORT OF DISCHARGE NEW-YORK | PLACE OF DELIVERY NEWARK, NJ | TYPE OF MOVE | CONTAINERIZED ☒YES ☐NO |

| MARKS AND NUMBERS | NO.OF PKGS | DESCRIPTION OF PACKAGES AND GOODS PARTICULARS DECLARED BY SHIPPER | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| EISU 564 813 / 0 SEAL : 0960958 | 1 500 | 01X40 REEFER H.C. SAID TO CONTAIN BOXES OF BAKERY PRODUCTS FREIGHT COLLECT - ON BORD TEMPERATURE : -20°C EXPRESS B/L - NO ORIGINAL REQUIRED RYAN : N° 2332036 | 11 315.50 KGS | |

ORIGINAL

DECLARED VALUE ———————————————— READ CLAUSE 7.1
HEREOF CONCERNING EXTRA FREIGHT AND CARRIER'S LIMITATION OF LIABILITY.

**FREIGHT RATES, CHARGES, WEIGHTS AND / OR MEASUREMENTS**

SUBJECT TO CORRECTION

| | PREPAID | COLLECT |
|---|---|---|
| | | |
| TOTAL PREPAID | | |
| TOTAL COLLECT | | |

SEAFRIGO USA, INC.

Received by Carrier for shipment by ocean vessel between port of loading and port of discharge, and for arrangement or procurement of pre-carriage from place of receipt and on-carriage to place of delivery, where stated above, the goods as specified above in apparent good order and condition unless otherwise stated. The goods to be delivered at the above mentioned port of discharge or place of delivery, whichever applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and/or Consignee agree to accepting this Bill of Lading. IN WITNESS WHEREOF three (3) original Bills of Lading have been signed, not otherwise stated above, one of which being accomplished the others shall be void.

PLACE AND DATE OF ISSUE

SEAFRIGO MARSEILLES
Avenue LAMARTINE
13170 LES PENNES MIRABEAU
Tél. 04 42 34 38 70    Fax    04 42 34 38 79

AS CARRIER

| | 09 | 22 | 2006 |
|---|---|---|---|
| | MO | DAY | YEAR |

2876

**❶ CLAUSE PARAMOUNT :**
This Bill of Lading shall have effect subject to the provisions of the Hague Rules contained in the International Convention for the unification of certain rules relating to Bills of Lading dated Brussels the 25th August 1924 as amended by the protocols at Brussels on 23rd February 1968 and 21st December 1979. In the event that this Bill of Lading covers shipment to or from the United States, then the Bill of Lading shall have effect subject to the provision of the Carriage of Goods by Sea Act of the United States 46 U.S.C. sections 1300-1315 (hereafter, "COGSA). The provisions stated in Hague rules or COGSA (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier.

**❷ DEFINITIONS :**
2.1 "Ship" means the vessel named in this Bill of Lading, or any conveyance owned, chartered, or operated by Carrier or used by Carrier for the performance of this contract.
2.2 "Carrier" means Entrepôts et Transports Barbé Seafrigo Le Havre, France on whose behalf this Bill of Lading has been signed.
2.3 "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.
2.4 "Package" is the largest individual unit of partially or completely covered or contained cargo made up by or for the Shipper which is delivered and entrusted to Carrier, including palletized units and each container stuffed and sealed by the Shipper or on its behalf, although the Shipper may have furnished a description of the contents of such sealed container on this Bill of Lading.
2.5 "Container" includes any container, trailer, transportable tank, lift van, flat, pallet, or any similar article of transport used to consolidate goods.

**❸ SUBCONTRACTING :**
3.1 Carrier shall be entitled to subcontract on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods.
3.2 Every servant or agent or subcontractor of Carrier shall be entitled to the same rights, exemptions from liability, defenses and immunities to which Carrier is entitled. For these purposes, Carrier shall be deemed to be acting as agent or trustee for such servants or agents, who shall be deemed to be parties to the contract evidenced in this Bill of Lading.

**❹ ROUTE OF TRANSPORT :**
4.1 Carrier is entitled to perform the transport in any reasonable manner and by any reasonable means, methods and routes.
4.2 The Ship shall have the liberty to, at any time, adjust navigational instruments, make trial trips, dry dock, go to repair yards, shift berths, take in fuel or stores, embark or disembark any persons, carry contraband and hazardous goods, sail with or without pilots and save or attempt to save life or property. Delays resulting from such activities shall not be deemed a deviation.

**❺ HINDRANCES AFFECTING PERFORMANCE :**
5.1 Carrier shall use reasonable endeavors to complete transport and to deliver the goods at the place designated for delivery.
5.2 If at any time the performance of this contract as evidenced by this Bill of Lading in the opinion of Carrier is or will be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind including strike and if by virtue of the above Carrier has no duty to complete the performance of the contract, Carrier, whether or not the transport is commenced may elect to :
a) treat the performance of this contract as terminated and place the goods at Merchant's disposal at any place Carrier shall deem safe and convenient, or
b) deliver the goods at the place of delivery.
In any event, Carrier shall be entitled to full freight for any goods received for transportation and additional compensation for extra costs resulting from the circumstances referred to above.

**❻ BASIC LIABILITY :**
6.1 Carrier shall be liable for loss of or damage to the goods occurring between the time when it takes goods into its charge and the time of delivery.
6.2 If it is established that the loss of or damage to the goods occurred during sea carriage, liability shall be governed either by the Hague rules or by COGSA (see section 1).
6.3 If it cannot be determined when the loss of or damage to the goods occurred, it shall be presumed that such loss or damage occurred while the goods were in the custody of Carrier.
6.4 Carrier does not undertake that the goods shall be delivered at any particular time and shall not be liable for any direct or indirect losses caused by any delay.
6.5 Carrier shall not be liable for any loss or damage arising from :
(a) an act or omission of Merchant or person other than Carrier acting on behalf of Merchant from whom Carrier took the goods in charge,
(b) compliance with the instructions of any person authorized to give them,
(c) handling, loading, stowage or unloading of the goods by or on behalf of Merchant,
(d) inherent vice of the goods,
(e) lack of insufficiency of or defective condition of packing in the case of goods, which by their nature, are liable to wastage or damage when not packed or when not properly packed,
(f) insufficiency or inadequacy of marks or numbers on the goods, coverings or unit loads,
(g) fire, unless caused by actual fault or privity of Carrier,
(h) any cause or event which Carrier could not avoid and the consequences of which he could not prevent by the exercise of due diligence.
6.6 With respect to the transportation performed by Inland Carriers to the port of loading or from the port of discharge, the responsibility of Carrier shall be to procure transportation by such carriers (one or more) and such transportation shall be subject to the Inland Carrier's contracts of carriage, tariffs and any law compulsorily applicable.

**❼ COMPENSATION FOR LOSS AND DAMAGE :**
7.1 Unless otherwise mandated by compulsorily applicable law, Carrier's liability for compensation for loss of or damage to goods shall in no case exceed the amount of US $500 per package or per customary freight unit, unless the Merchant, with the consent of Carrier, has declared by writing a higher value for the goods in the space provided on the front of this Bill of Lading and paid extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability. Where a container is stuffed by shipper or on its behalf, and the container is sealed when received by Carrier for shipment, the Carrier's liability will be limited to US $500 with respect to the contents of each such container, except when the Shipper declares by writing the value on the face hereof and pays additional charges on such declared value. The freight charged on sealed containers when no higher valuation is declared by the Shipper is based on a value of US $500 per container.

However, Carrier shall not, in any case, be liable for an amount greater than the actual loss to the goods entitled to make the claim.
7.2 In any case where Carrier's liability for compensation may exceed the amounts set forth in clause 7.1 above, compensation shall be calculated by reference to the value of the goods, according to their current market price, at the time and place they are delivered, or should have been delivered, in accordance with this contract.
7.3 If the value of the goods is less than US $500 per package or per customary freight unit, their value for compensation purposes shall be deemed to be the invoice value, plus freight and insurance, if paid.

**❽ DESCRIPTION OF GOODS :**
Merchant warrants to Carrier that all particulars of the goods, including, without limitation, the marks, number, quantity and weight, furnished by Merchant are correct and Merchant shall indemnify Carrier against all losses arising from any inaccuracy.

**❾ CARRIER'S CONTAINERS :**
9.1 If goods are not received by Carrier already in containers, Carrier may pack them in any type container.
9.2 Merchant shall be liable to Carrier for damage to Carrier's container or equipment if such damage occurs while such equipment is in control of Merchant or his agents.
9.3 Merchant indemnifies Carrier for any damage or injury to persons or property caused by Carrier's containers during handling by or when in possession or control of Merchant.
9.4 Merchant undertakes to return such containers to Carrier within the time provided for in Carrier's applicable tariff; otherwise, Merchant shall pay Carrier for the demurrage or detention charges applicable to the containers.

**❿ CONTAINER PACKED BY MERCHANT :**
If Carrier receives the goods already packed into containers :
1. This Bill of Lading is prima facie evidence of the receipt of the particular number of containers set forth, and that number only. Carrier accepts no responsibility with respect to the order and condition of the contents of the containers;
2. Merchant warrants that the stowage and seals of the containers are safe and proper and suitable for handling and carriage;
3. Delivery shall be deemed as full and complete performance when the containers are delivered by Carrier with the seals intact; and
4. Carrier has the right to open and inspect the containers at any time without notice to Merchant, and expenses resulting from same shall be borne by Merchant.

**⓫ DANGEROUS GOODS :**
11.1 Merchant may not tender goods of a dangerous nature without written application to Carrier and Carrier's acceptance of the same. In the application, Merchant must identify the nature of the goods with reasonable specificity as well as the names and addresses of the shippers and consignees.
11.2 Merchant shall distinctly and permanently mark the nature of the goods on the outside of the package and container and shall submit to Carrier or to the appropriate authorities all necessary documents required by law or by Carrier for the transportation of such goods.
11.3 If the goods subsequently, in the judgement of Carrier, become a danger to Carrier, the Ship, or other cargo, Carrier may dispose of the goods without compensation to Merchant and Merchant shall indemnify Carrier for any loss or expenses arising from such action.

**⓬ PERISHABLE GOODS :**
12.1 Goods of a perishable nature shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for transportation any Goods which require refrigeration without given written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the Goods by the Carrier in case of refrigerated Container(s) packed by or on behalf of the Merchant. The Merchant undertakes that the Goods have been properly stowed in the Container and that the thermostatic controls have been properly showed in the Container and that the thermostatic controls have been adequately set by him before receipt of the Goods by the Carrier and, if necessary, that the Goods have been pre-chilled before the loading into the Container. The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze down Goods which has not been presented for chilling at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo presented at a higher temperature than that required for its transportation. If the above requirements are not complied with the carrier shall not be liable for any loss of or damage to the Goods howsoever arising.
12.2 The term "apparent good order and condition" when used in this Bill of Lading with reference to Goods which require refrigeration does not mean that the Goods, when received were verified by the Carrier as being at the designated carrying temperature.
12.3 The Carrier shall in no event be held liable for damage to Goods due to condensation.

**⓭ DECK CARGO :**
13.1 Carrier has the right to carry the goods in any container under deck or on deck.
13.2 Carrier is not required to note "on deck storage" on the face of this Bill of Lading and goods so carried shall constitute under deck storage for all purposes including the General Average.
13.3 Except as otherwise provided by any law applicable to this contract, if this Bill of Lading states that the cargo is stowed on deck, then Carrier shall not be liable for any non-delivery, misdelivery, delay or loss to goods carried on deck, whether or not caused by Carrier's negligence or the ship's unseaworthiness.

**⓮ HEAVY LIFT :**
14.1 Single packages with a weight exceeding 2.240 pounds gross not presented to Carrier in enclosed containers must be declared in writing by Merchant before receipt of the packages by Carrier. The weight of such packages must be clearly and durably marked on the outside of the package in letters and figures not less than two inches high.
14.2 If Merchant fails to comply with the above provisions, Carrier shall not be liable for any loss of or damage to the goods, and Merchant shall be liable for any loss of or damage to persons or property resulting from such failure and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of such failure.

**⓯ DELIVERY :**
15.1 Carrier shall have the right to deliver the goods at any time at any place designated by Carrier within the commercial or geographic limits of the port of discharge or place of delivery shown in this Bill of Lading.
15.2 Carrier's responsibility shall cease when delivery has been made to Merchant, any person authorized by Merchant to receive the goods, or in any manner or to any other person in accordance with the custom and usage of the port of discharge.
15.3 If goods should remain in Carrier's custody after discharge from the ship and possession is not taken by Merchant, after notice, within the time allowed in Carrier's applicable tariff, the goods may be considered to have been delivered to Merchant, and, at Carrier's option, may be stored at Merchant's expense.

**⓰ NOTICE OF CLAIM :**
16.1 Written notice of claims for loss of or damage to goods occurring or presumed to have occurred while in the custody of Carrier must be given to Carrier at the port of discharge before or at the time of removal of the goods by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery by Carrier. If such loss or damage is not apparent, Carrier must be given written notice within three (3) days of the delivery.

**⓱ FREIGHT AND CHARGES :**
17.1 Freight may be calculated on the basis of the particulars of the goods furnished by Merchant. Carrier and Merchant agree that it may be difficult or impossible to assess damages if freight is incorrectly declared. Therefore, in case of incorrect declaration of the goods, Merchant shall pay a sum equal to three times the difference between the correct freight and the freight charged as liquidated damages, notwithstanding any other sum having been stated herein as freight payable. Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by Carrier to Merchant are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon Carrier unless the Carrier in writing specifically undertakes the handling of transportation of the shipment at a specific rate.
17.2 Freight shall be deemed earned upon booking of goods by Carrier, whether the freight be intended to be prepaid or collected at destination. Payment shall be in full and in cash, in the currency named in this Bill of Lading, or another currency at Carrier's option, interest at 12% shall run from the date when freight and charges are due and not returnable in any event. If the services of a freight forwarder are used for this transportation, those services shall be deemed to be performed as agent of Merchant and payment of freight to the freight forwarder is not payment to Carrier. Full freight shall be paid on damaged or unsound goods. In any referral for collection or action against the Merchant for monies due to Carrier, upon recovery by the Carrier, the Merchant shall pay the expenses of collection and/or litigation, including reasonable attorney's fees.
17.3 Merchant shall be liable for all dues, duties, fines, taxes and charges, including consular fees, levied on the goods. Merchant shall be liable for return freight and charges on the goods if they are refused export or import by any government.
17.4 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally liable to Carrier for the payment of all freight and charges, including advances.
17.5 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally indemnify the Carrier for all claims, fines, penalties, damages, costs and other amounts which may be incurred or imposed upon the Carrier by reason of any breach of the Merchant of any of the provisions of this Bill of Lading or of any statutory or regulatory requirements.

**⓲ LIEN :**
The Carrier shall have a general lien on any and all property (and documents relating thereto) of the Merchant, in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by the Carrier in connection with any shipments or operations of the Merchant and if such claim remains unsatisfied for ten (10) days after demand for its payment is made, the Carrier may sell at public auction or private sale or otherwise dispose of the goods, upon ten (10) days written notice, registered mail (R.R.R.) to the Merchant, the goods, wares and/or merchandise, or so much necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the amount due the Carrier. Any surplus from such sale shall be transmitted to the Merchant, and the Merchant shall be liable for any deficiency in the sale. If the goods are not claimed during a reasonable time in the Carrier option, the Carrier will make at his discretion and subject to his lien and without responsibility auction, sale, abandon or otherwise dispose of the goods at the risk and expenses of the merchant.

**⓳ TIME BAR :**
Carrier shall be discharged from all liability for loss of or damage to goods unless suit is brought within nine (9) months after delivery of the goods or the date when the goods should have been delivered. The time bar for overcharge claims shall be that set forth in Carrier's applicable tariff or thirty six (36) months, whichever is shorter and of legal effect under the laws of the country having jurisdiction over this contract.

**⓴ JURISDICTION :**
Disputes arising under this Bill of Lading shall be determined by the Tribunal of Commerce at Le Havre under the laws of France, and no other court shall have jurisdiction with regards to any such action.

**㉑ GENERAL AVERAGE :**
21.1 General Average shall be adjusted at New York, or any other port at Carrier's option, according to the York-Antwerp Rules of 1974. The General Average statement shall be prepared by adjusters appointed by Carrier.
21.2 In the event of accident, damage, danger or disaster after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for the consequence of which Carrier is not responsible by statute, contract or otherwise, Merchant shall contribute with Carrier in General average to the payment of any sacrifice, loss or expense of a General Average nature that may be made or incurred, and shall pay salvage or special charges in respect of the goods. If a salving vessel is owned or operated by Carrier, Salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**㉒ BOTH-TO-BLAME COLLISION CLAUSE :**
If the ship comes into collision with another vessel as a result of negligence of the other vessel and any negligence or fault on the part of Carrier or its servants or subcontractors, Merchant shall indemnify Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of Merchant paid or payable by the other or non-carrying vessel or her owners to Merchant and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying ship or her owner. This provision shall apply as well where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

**㉓ CARRIER'S TARIFFS :**
23.1 The goods carried under this Bill of Lading are also subject to all the terms and conditions of tariff(s) on file with the Federal Maritime Commission, the Interstate Commerce Commission or any other regulatory agency which governs a particular portion of the carriage and the terms are incorporated herein as part of the terms and conditions of this Bill of Lading.
23.2 Copies of Carrier's tariffs may be obtained from carrier or its agents upon request or from the government body with whom the tariff has been filed.

**㉔ SEVERABILITY :**
The terms of this Bill of Lading shall be severable, and if any part or term hereof shall be held invalid, such holding shall not affect the validity of enforceability of any other part or term hereof.

**㉕ VARIATION OF THE CONTRACT :**
No servant or agent of the Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by the Carrier.

# VENGROW EXHIBIT B

rates may be published in individual tariffs of conference members.

(c) *Agents.* Common carriers or conferences may use agents to meet their publication requirements under this part.

(d) *Notification.* Each common carrier and conference shall notify BTA, prior to the commencement of common carrier service pursuant to a published tariff, of its organization name, organization number, home office address, name and telephone number of firm's representative, the location of its tariffs, and the publisher, if any, used to maintain its tariffs, by electronically submitting Form FMC-1 via the Commission's website at www.fmc.gov. Any changes to the above information shall be immediately transmitted to BTA. The Commission will provide a unique organization number to new entities operating as common carriers or conferences in the U.S. foreign commerce.

(e) *Location of tariffs.* The Commission will publish its website, www.fmc.gov a list of the locations of all carrier and conference tariffs. The Commission will update this list on a periodic basis.

[64 FR 11225, Mar. 8, 1999, as amended at 67 FR 39660, June 11, 2002]

§520.5 Tariff contents.

(a) *General.* Tariffs published pursuant to this part shall:

(1) State the places between which cargo will be carried;

(2) List each classification of cargo in use;

(3) State the level of ocean transportation intermediary, as defined by section 3(17)(A) of the Act, compensation, if any, to be paid by a carrier or conference;

(4) State separately each terminal or other charge, privilege, or facility under the control of the carrier or conference and any rules or regulations that in any way change, affect, or determine any part of the aggregate of the rates or charges;

(5) Include sample copies of any bill of lading, contract of affreightment or other document evidencing the transportation agreement;

(6) Include copies of any loyalty contract, omitting the shipper's name;

(7) Contain an organization record, tariff record, and tariff rate items; and

(8) For commodity tariffs, also contain commodity descriptions and tariff rate items.

(b) *Organization record.* Common carriers' and conferences' organization records shall include:

(1) Organization name;

(2) Organization number assigned by the Commission;

(3) Agreement number, where applicable;

(4) Organization type (e.g., ocean common carrier (VOCC), conference (CONF), non-vessel-operating common carrier (NVOCC) or agent);

(5) Home office address and telephone number of firm's representative;

(6) Names and organization numbers of all affiliates to conferences or agreements, including trade names; and

(7) The publisher, if any, used to maintain the organization's tariffs.

(c) *Tariff record.* The tariff record for each tariff shall include:

(1) Organization number and name, including any trade name;

(2) Tariff number;

(3) Tariff title;

(4) Tariff type (e.g., commodity, rules, contract interchange, or bill of lading);

(5) Contact person and address;

(6) Default measurement and currency units;

(7) Origination and destination scope; and

(8) A statement certifying that all information contained in the tariff is true and accurate and no unlawful alterations will be permitted.

(d) *Tariff rules.* Carriers and conferences shall publish in their tariffs any rule that affects the application of the tariff.

(e) *Commodity descriptions.* (1) For each separate commodity in a tariff, a distinct numeric code may be used. Tariff publishers are not required to use any numeric code to identify commodities, but should they choose to do so, they are encouraged to use the U.S. Harmonized Tariff Schedule ("U.S. HTS") for both the commodity coding and associated terminology (definitions).

---

points/postal regions, and combination rates, it shall clearly and accurately set forth the applicable charges in an "Inland Rate" (Rabies's) section. An inland rate table may be constructed to provide an inland distance which is applied to a per mile rate to calculate the inland rate.

(d) *Shipper requests.* Conference tariffs shall contain clear and complete instructions, in accordance with the agreement's provisions, stating where and by what method shippers may file requests and complaints and how they may engage in consultation pursuant to section 5(b)(6) of the Act, together with a sample rate request form and a description of the information necessary for processing the request or complaint.

(e) *Inland divisions.* Common carriers are not required to state separately, or otherwise reveal in tariffs the inland division of a through rate.

§520.5 Standard tariff terminology.

(a) *Approved codes.* The Standard Terminology Appendix contains codes for rate bases, container sizes, service, etc., and units for weight, measure and distance. They are intended to provide a standard terminology baseline for tariffs to facilitate retrieval efficiency. Tariff publishers may use additional codes, if they are clearly defined in their tariffs.

(b) *Geographic names.* Tariffs should employ locations (points) that are published in the National Imagery and Mapping Agency ("NIMA") gazetteer or the Geographic Names Information System ("GNIS") developed by the U.S. Geological Survey. Ports published or approved for publication in the World Port Index (Pub. No. 150) should also be used in tariffs. Tariff publishers may use geographic names that are currently in use and have not yet been included in these publications.

§520.6 Retrieval of information.

(a) *General.* Tariffs systems shall present retrievers with the ability to:

(1) Search for commodity objects (e.g., commodities, origins, destinations, etc.) without restricting such search to or from named

(2) If a tariff publisher uses a numeric code to identify commodities, the following commodity types shall be preceded by their associated 2-digit prefixes, with the remaining digits at the publisher's option:

(i) Mixed commodities—"99";

(ii) Projects—"98"; and

(iii) non-commodities, e.g., "cargo, n.o.s.," "general cargo," or "freight-all kinds"—"00".

(3) *Commodity index.* (i) Each commodity description created under this section shall have at least one similar index entry which will logically represent the commodity within the alphabetical index. Publishers are encouraged, however, to create multiple entries in the index for articles with equally valid common use names, such as, "Sodium Chloride," "Salt, common," etc.

(ii) If a commodity description includes two or more commodities, each included commodity shall be shown in the index.

(iii) Items, such as "mixed commodities," "projects" or "project rates," "n.o.s." descriptions, and "FAK," shall be included in the commodity index.

(d) *Tariff rate items.* A tariff rate item ("TRI") is the single freight rate in effect for the transportation of cargo under a specified set of transportation conditions. TRIs must contain the following:

(1) Brief commodity description;

(2) TRI number (optional);

(3) Publication date;

(4) Effective date;

(5) Origin and destination locations or location groups;

(6) Rate and rate basis; and

(7) Service code.

(g) *Location groups.* In the primary tariff, or in a governing tariff, a publisher may define and create groups of cities, states, provinces and countries (e.g., location groups) or groups of ports (e.g., port groups), which may be used in the construction of TRIs and other tariff objects, in lieu of specifying particular place names in a tariff item, or creating multiple tariff items which are identical in all ways except for place names.

(h) *Inland rate tables.* If a carrier or conference desires to provide intermodal transportation to or from named

# VENGROW EXHIBIT C



## B/L Clauses

Since every single shipment with us is subject to the Terms & Conditions of Bill of Lading, here we offer you the function of browsing or even downloading any particular item you are interested in.

If you can't open the PDF file, please download Adobe Reader.

| Bill of Lading Clauses | View |
|---|---|
| Evergreen Line | |
| Evergreen Marine Corp. (Taiwan) Ltd. | |
| Italia Marittima S.p.A. | |
| Evergreen Marine (UK) Ltd. (Formerly Hatsu Marine Limited) | |

Best viewed in 1024 x 768 only using IE 5.x or higher

Legal Terms of Use, Copyright and Privacy and Security Statement for ShipmentLink Shipping & Transport Website.
Copyright© 2001-2008, All Rights Reserved by Evergreen International Corp.

RECEIVED by the Carrier from the Merchant in apparent good order and condition unless otherwise indicated herein, the Goods, or the Container(s) or other package(s) or unit(s) said by the Merchant to contain the cargo herein mentioned, to be carried subject to all the terms and conditions contained or incorporated in this Bill (defined hereinafter at Clause 1(1)) including both front and back pages where issued in paper form and Carrier's Tariff rules and regulations by the vessel named herein or any substitute at the Carrier's option and/or other means of transport, including the use of feeder ships, barges, trucks or rail cars, from the place of receipt or the loading port to the port of discharge or place of delivery shown herein and there to be delivered unto order or assigns.

If issued in paper form and if required by the Carrier, this Bill duly endorsed must be surrendered in exchange for the Goods or Delivery Order.

In accepting this Bill, whether in paper or electronic form, the Merchant agrees to be bound by all the stipulations, exceptions, terms and conditions contained or incorporated in this Bill whether written, typed, stamped, printed or otherwise, and as well, to be bound by the Carrier's Tariff rules and regulations which are deemed incorporated herein, all of which supersede all previous agreements, including booking notes, dock and mate's receipts and like, any local customs or privileges to the contrary notwithstanding. The terms of this Bill shall be separable and if any part or term hereof is invalid or unenforceable, the validity and enforceability of any other part or term shall not be affected.

Agents signing this Bill on behalf of the Carrier have only the limited authority at common law of a vessel's master signing a Bill .

An endorsement on this Bill that the Goods are "On Board" shall mean that the Goods are loaded on board the ocean vessel named in this Bill , or loaded on board rail cars, trucks, lorries, feeder ships, barges, or other means of transportation and are in the custody of an Inland or ocean Carrier for Through Transportation in accordance with the terms of this Bill .

1. **Definitions.**
   (1) "Bill" means (a) Bill of Lading if this document is issued as a Bill of Lading, or (b) Sea Waybill if this document is issued as a Sea Waybill. Notwithstanding anything else contained in or incorporated into this Bill, if it is issued as a Sea Waybill, it will not be a document of title to the Goods.
   (2) "Carrier" means the party on whose behalf this Bill has been signed, as well as the Ship and/or her Owner, demise charterer (if bound hereby), the time charterer and any substituted or Underlying Carrier whether any of them is acting as Carrier or bailee.
   (3) "COGSA" means the United States Carriage of Goods by Sea Act, approved April 16, 1936.
   (4) "Container" includes any ISO standard container, trailer, transportable tank, flat rack and/or other item of transportation equipment in conformance with ISO standards.
   (5) Force Majeure shall include, but not be limited to, work stoppages, civil commotion, strikes, accidents, casualties, lockouts, fire, transportation disasters, acts of God, governmental restraints (including governmental import restrictions and voluntary quotas arising from the threat of governmental restraints), war or hostilities, embargoes or other similar conditions.
   (6) "Goods" means the cargo accepted from the Merchant and includes any Container whether supplied by or on behalf of the Carrier or by the Merchant.
   (7) "Hague Rules" as used herein refers to the provisions of the International Convention for the Unification of Certain Rules Relating to Bills of Lading signed at Brussels on 25th August 1924 and includes any amendments thereto including the Hague Visby Amendments, 1968.
   (8) "Holder" mean any person for the time being in possession of this Bill (if issued as a Bill of Lading) to whom the property in the Goods has passed on or by reason of the consignment of the Goods or the endorsement of this Bill or otherwise.
   (9) "Merchant" includes the shipper, Holder, consignee, the receiver of the Goods, any person owning or entitled to the possession of the Goods or this Bill and anyone acting on behalf of any such persons.
   (10) "Ship" shall include the vessel named in this Bill, any substituted vessel or feeder vessels, and any vessel, craft, lighter or other means of conveyance whatsoever owned, chartered, operated or controlled and used by the Carrier in the performance of this Contract.
   (11) "Through Bill " as used herein refers to the contract evidenced by this Bill when it covers the carriage of the Goods from the place of receipt from the Merchant to the place of delivery to the Merchant by the Carrier plus one or more Underlying Carriers.
   (12) "Through Transportation" means carriage of the Goods under this Bill from place of receipt from the Merchant to place of delivery to the Merchant by the Carrier plus one or more Underlying Carriers.
   (13) "Underlying Carrier" includes any water, rail, motor, air or other carrier utilized by the Carrier for any part of the transportation of the shipment covered by this Through Bill .
   (14) "Sub-contractor" includes owners and operators of vessels (other than the Carrier), stevedores, terminal operators, warehousemen, Underlying Carriers, ocean and rail transport intermediaries and any independent contractor employed by the Carrier in its performance of the transportation of the Goods hereunder. Sub-contractor shall also include direct and indirect sub-contractors and their respective servants and agents.

2. **Carrier's Tariff.** The terms of the Carrier's applicable Tariff are incorporated herein. If this Bill is issued as a Sea Waybill, the CMI Rules for Sea Waybills excluding Rule 4 are also incorporated herein. Copies of the relevant provisions of the applicable Tariff are obtainable from the Carrier upon request. Copies of the CMI Rules for Sea Waybills can be obtained from the CMI website at www.comitemaritime.org/. In the case of inconsistency between this Bill and the applicable Tariff or CMI Rules, this Bill shall prevail.

3. **Merchant's Warranty.** The Merchant warrants that in agreeing to the terms hereof he is, or has the authority of, the person owning or entitled to the possession of the Goods and this Bill .

4. **Sub-Contracting.**
   (1) The Carrier shall be entitled to sub-contract on any terms the whole or any part of the carriage, loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by the Carrier in relation to the Goods.
   (2) In contracting for the following exemptions and limitation of and exoneration from liability, the Carrier is acting as agent and trustee for all other persons named in this clause. It is understood and agreed that, other than the Carrier, no person, firm or corporation or other legal entity whatsoever (including the Master, officers and crew of the vessel, all agents and all Sub-Contractors ) is, or shall be deemed to be liable with respect to the Goods as carrier, bailee or other howsoever. If, however, it shall be adjudged that any one other than the Carrier is carrier or bailee of the Goods or under any responsibility with respect thereto, all exemptions and limitations of and exoneration from liability provided by law or by terms hereof shall be available to such other. It is also agreed that each of these persons and companies referred to above are intended beneficiaries, but nothing herein contained shall be construed to limit or to relieve them from liability to the Carrier for acts arising or resulting from their fault or neglect.

5. **Clause Paramount and Responsibility of Carrier.**
   (A) Clause Paramount – as far as this Bill covers the carriage of Goods by sea either by the Carrier or its Sub-contractor, the contract evidenced in this Bill shall have effect subject to the Hague Rules, if and as enacted in the country of shipment, and any Legislation including COGSA which make those rules compulsory, applicable or effective. The Hague Rules and said Legislation shall be deemed contractually incorporated herein and made a part of this Contract regardless of whether it or they would otherwise be compulsorily applicable and nothing herein contained shall be deemed a surrender by the Carrier or its Sub-contractor of any of its rights and immunities or any increase of any of its responsibilities under said Rules and Act. Notwithstanding anything to the contrary, if the carriage called for in this Bill is a shipment to or from the United States, the liability of the Carrier or its Sub-contractor shall be exclusively determined pursuant to COGSA which is contractually incorporated into this Bill. The provisions cited in the Hague Rules and COGSA (except as may be otherwise specifically provided herein) shall also govern before the Goods are loaded on and after they are discharged from the Ship provided, however, that the Goods at said times are in the actual custody of the Carrier or any Sub-contractor. When no such enactment is in force in the country of shipment, the Hague Rules will apply. If any terms of this Bill are repugnant to the Hague Rules or any other compulsorily applicable International Convention or National Law which cannot be departed from by private contract, then such provision shall be null and void to the extent of such invalidity without invalidating the remaining provisions hereof. The Carrier or its Sub-contractor shall not be liable in any capacity whatsoever for any delay, non-delivery or misdelivery, or loss of or damage to the Goods howsoever caused occurring while the Goods are not in the actual custody of the Carrier.
   (B) Responsibility for Port to Port Shipments. Where loss or damage has occurred between the time of receipt of the Goods by the Carrier at the port of loading and the time of delivery by the Carrier at the port of discharge, or during any prior or subsequent period of carriage by Underlying Carriers or period of custody by Sub-Contractors, the liability of the Carrier shall be determined in accordance with the appropriate Hague Rules and for other Legislation as provided in the provisions of Clause 5A above of this Bill .
   (C) Responsibility for Through Transportation. Where the place of receipt or place of delivery as set forth herein are inland points or ports not directly served by the Carrier the responsibility of the Carrier with respect to the Through Transportation of the Goods shall be as follows:
      (1) With respect to Through Transportation from, to or within the United States where the Goods are in the custody of a Sub-contractor such Through Transportation will be governed by the provisions of Clause 5B above.
      (2) In the event Clause 5B is held inapplicable to such Through Transportation from, to or within the United States then Carrier's liability will be governed by and subject to the terms and conditions of the Sub-contractor's bill of lading or waybill and/or the ICC Uniform Bill of Lading together with the Sub-contractor's Tariff which shall be incorporated herein as if set forth at length. Notwithstanding the foregoing, in the event there is a private contract between the Carrier and a Sub-Contractor, responsibility for such Through Transportation will be governed by the terms and conditions of said contract which shall be incorporated herein as if set forth at length and copies of said contract(s) shall be available to the Merchant at any office of the Carrier upon request.
      (3) With respect to road carriage between countries in Europe according to the Convention on the Contract for the International Carriage of Goods by Road (CMR), dated May 19, 1956, and during rail carriage between countries in Europe according to the International Agreement on Railway Transports (CIM) dated February 25, 1961.
      (4) With respect to rail or road carriage within a European country then according to the internal law of such state and/or any International Convention which is compulsorily applicable by the laws of such state. In the absence of such laws or conventions then according to the Sub-contractors contracts of carriage and tariffs, if any. Notwithstanding the above provision, road carriage in the United Kingdom according to the Conditions of Carriage 1998 of Road Haulage Association Limited.
      (5) With respect to carriage by road in Japan, according to the Standard Japanese Road Transportation Clauses (SIRTC). With respect to carriage by rail in Japan, according to the Japanese Railway Transportation Business Law and Ministerial Ordinance for Railway Transportation.
      (6) With respect to inland transportation of the Goods other than as provided in subparagraphs (1) through (5) supra, then according to the provisions of any International Convention or National Law which is compulsorily applicable in the country where the inland transportation took place or, if no such law or convention is applicable, then according to the Sub-contractor's tariff or any contract existing between the Sub-contractor and the Carrier.
   (D) Extent of Liability for Through Transportation. In any event, the liability of the Carrier shall under no circumstances whatsoever be greater than that of the Sub-contractor under said Sub-contractors' contract with the Carrier, and the Carrier shall be entitled to all the rights, defenses, limitations and exemptions from liability contained therein.
   (E) Subrogation. When any claims are paid to the Merchant by the Carrier, the Carrier shall be automatically subrogated to all rights of the Merchant against all others, including Underlying Carrier's, on account of such loss or damage.
   (F) In the event an action is brought in a jurisdiction in which the relevant provisions of clause 5 (A) – (E) of this Bill which are applicable to such claim are held to be unenforceable pursuant to local law then liability for such claim shall be determined according to the internal law of the jurisdiction in which the action is brought.

6. **General Limitations.**
   (1) The Carrier does not undertake that the Goods shall arrive at the port of discharge or place of delivery at any particular time or to meet any particular market or use and save as provided in Clause 5 the Carrier shall in no circumstances be liable for any indirect or consequential loss or damage caused by delay.
   (2) Save as otherwise provided herein, the Carrier shall in no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause.
   (3) The Carrier shall be entitled to the full benefit of all rights and immunities and all limitations of, or exemptions from, liability provided in the London Convention of 1976. Notwithstanding the foregoing, if local law makes the Brussels Convention of 1957 mandatorily applicable, then said latter Act will be applicable under this Bill . The Carrier shall also be entitled to the full benefit of all rights and immunities and all limitations of, or exemptions from liability contained in any national law of any nation whose laws shall be applicable.
   (4) Without waiver or limitation of any exemption from or limitation of liability afforded by law or by this Bill and pursuant to the United States Fire Statute, 46 U.S.C., Sec. 182, neither Carrier nor any corporation owned by, subsidiary to, or associated or affiliated with Carrier shall be liable for any loss or damage wheresoever and whensoever occurring by reason of any fire whatsoever, including that occurring before loading on or after discharge from the Ship or while the Goods are in the custody of an Underlying Carrier, unless such fire shall have been caused by the design or neglect or by the actual fault or privity of Carrier or such corporation, respectively. In any situation where such exemption from liability may not be permitted by law neither Carrier nor such corporation shall be liable for any such loss or damage by fire unless caused by negligence, including that imputed by law, for which Carrier or such corporation is liable, respectively.

7. **Amount of Compensation and Limitation of Liability.**
   (1) All claims for which the Carrier may be liable shall be adjusted and settled on the basis of the net invoice value of the Goods plus freight and Insurance. Notwithstanding the foregoing it is agreed that in no event shall this clause operate to increase the extent of the Carrier's liability beyond the applicable market value at the port of discharge or place of delivery, if that be less than the net invoice value plus freight and insurance. In no event shall the Carrier be liable for any loss of profit or any consequential loss.
   (2) In the event this Bill covers Goods moving to or from a port or final destination in the United States, the Carrier's limitation of liability in respect to the Goods shall in no event exceed US$ 500 per package or, when the Goods are not shipped in packages, US$500 per customary freight unit. In the event the foregoing would be held inapplicable under the local law of the jurisdiction in which legal proceedings are brought and if the Goods covered by this Bill are subject to the Hague Rules or any amendments thereto, including the Hague Visby Amendments, then Carrier's liability in no event shall exceed the greater of 2 SDRs per Kilo of gross weight of the Goods lost or damaged or 667 SDRs per package. The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods, and that higher compensation than that provided herein may not be claimed unless the nature and value of such Goods have been declared by the Merchant before shipment and agreed to by the Carrier and inserted in this Bill and any applicable Ad Valorem freight rate, as set out in Carrier's tariff, is paid.
   (3) If the actual value of the Goods per package or per customary freight unit exceeds such declared value, the value shall nevertheless be deemed to be the declared value. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value. In any case, if the declared value is higher than the actual value, the Carrier shall in no event be liable to pay compensation higher than the net invoice value of the Goods plus freight and insurance.

8. **Notice of Claim and Time for Suit.** Unless notice of loss or damage and a general nature of such loss or damage be given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods, or, if the loss or damage be not apparent, within three consecutive days after delivery, the Goods shall be deemed to have been delivered as described in this Bill. In any event, except as provided in the next sentence, the Carrier shall be discharged from all liability in respect of non-delivery, mis-delivery, delay, loss or damage unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. Where the damage occurs in the custody of a Sub-Contractor during Through Transportation, the Carrier and the Sub-Contractor shall be discharged from all liability in respect of non-delivery, mis-delivery, delay, loss or damage unless notice of claim is filed and suit is brought within the time periods prescribed by the local laws set forth in Clause 5 (C) (1) - 5 (C) (6) of this Through Bill .

9. **Defence and Limits for the Carrier.** The defence and limits of liability provided for in this Bill shall apply in any action against the Carrier for loss or damage to the Goods whether the action be founded in contract or in tort.

10. **Shipper-Packed Containers.** If a Container has not been filled, packed, stuffed or loaded by the Carrier, the Carrier shall not be liable for loss or damage to the contents and the Merchant shall indemnify the Carrier against any loss, damage, liability or expense incurred by the Carrier, if such loss, damage, liability or expense has been caused by:- (a) the manner in which the Container has been filled, packed, stuffed or loaded; or (b) the unsuitability of the contents for carriage in Containers; or (c) the unsuitability or defective condition of the Container arising without any want of due diligence on the part of the Carrier to make the Container reasonably fit for the purpose for which it is required; or (d) the unsuitability or defective condition of the Container which would have been apparent upon reasonable inspection by the Merchant at or prior to the time when the Container was filled, packed, stuffed or loaded, or (e) the discovery of any drugs, narcotics or other illegal substances within Containers packed by the Merchant or inside Goods supplied by the Merchant, and shall indemnify the Carrier in respect thereof. Any reference in this Bill to Shipped on Board or Clean on Board relates solely to the Containers and not to the contents thereof. This Bill shall be subject to Section 80113 of the U.S. Federal Bills of Lading Act, 49 U.S.C. (The Pomerene Act) and it is agreed that the Carrier is entitled to that section's full protection for the entire period the Goods are in the custody of the Carrier including pre-loading and post-discharge periods.

11. **Inspection of Goods.** The Carrier shall be entitled, but under no obligation, to open any Container at any time and to inspect the contents. If it thereupon appears that the contents or any part thereof cannot safely or properly be carried further, either at all or without incurring any additional expense or taking any measures in relation to the Container or its contents or any part thereof, the Carrier may abandon the transportation thereof and/or take any measures and/or incur any reasonable additional expense to carry or to continue the carriage or to store the same ashore or afloat under cover or in the open, at any place, which storage shall be deemed to constitute due delivery under this Bill . The Merchant shall indemnify the Carrier against any reasonable additional expense so incurred.

12. **Description of Goods.** The Carrier does not have facilities to weigh sealed Containers at the loading port and has neither inspected the contents of nor weighed the Containers. Any statements on this Bill relating to marks and numbers, number and kind of packages, description, quantity, quality, weight, measure, nature, kind, value or other particulars of the contents of such Container(s) are as furnished by the Merchant and are unknown to the Carrier and the Carrier accepts no liability in respect thereof. The acknowledgement of the Carrier is confined to the number and apparent order and condition of the Container(s).

13. **Merchant's Responsibility.**
   (1) The Merchant warrants to the Carrier that the particulars relating to the Goods as set out overleaf have been checked by the Merchant on receipt of this Bill and that such particulars and any other particulars furnished by or on behalf of the Merchant are correct.
   (2) The Merchant shall indemnify the Carrier against all loss, damage and expenses arising or resulting from inaccuracies in, or inadequacy of, such particulars. The right of the Carrier to such indemnity shall in no way limit his responsibility and liability under this Bill to any person other than the Merchant.
   (3) Containers, pallets or similar articles of transport supplied by or on behalf of the Carrier shall be returned to the Carrier in the same order and condition as handed over to the Merchant, normal wear and tear excepted, with interiors clean and within the time prescribed in the Carrier's Tariff or elsewhere. The Merchant of the Goods shall be jointly and severally liable for any loss of, damage to, or delay incurred during the period between handing over to the consignee and return to the Carrier.

14. **Freight and Charges.**
   (1) Freight shall be payable, at Carrier's option, on gross intake weight or measurement, or gross discharge weight or measurement, or ad valorem basis, or package or customary freight unit basis or any other applicable rate as set forth in Carrier's Tariff. Freight may be calculated on the basis of the description of the Goods furnished by the Merchant, but Carrier may at any time, weigh, measure and value the Goods and open packages or customary freight units to examine contents. In case the Merchant's description is found to be erroneous and additional freight is payable, the Merchant shall be liable for any additional freight and expense incurred in examining, weighing, measuring, fumigating and valuing the Goods.
   (2) Full freight to the port of discharge or in case of Through Transportation to place of delivery named herein and all advance charges against the Goods shall be considered completely earned on receipt of the Goods by the Carrier or Underlying Carrier as the case may be, whether the freight or charges be prepaid or be stated or intended to be prepaid or to be collected at port of discharge or destination or subsequently, and the Carrier shall be entitled absolutely, to all freight and charges, whether actually paid or not, and to receive and retain them under all circumstances whatever, the Ship and/or the Goods lost or not lost, or the voyage changed, broken up, frustrated or abandoned. Full freight shall be paid whether the Goods be damaged or lost, or packages or customary freight units be empty or partly empty.
   (3) All freight and charges shall be paid in full and without any offset, counterclaim or deduction, in the currency named in this Bill or, at the Carrier's option, in its equivalent in local currency at bank demand rates of exchange in New York as of the date payment of freight shall be due hereunder. Any error in freight or in charges or in the classification herein of the Goods is subject to correction, and if on correction, the freight or charges are higher, Carrier may collect the additional amount.
   (4) The Merchant of the Goods shall be jointly and severally liable to Carrier for the payment of all freight, Bunker Adjustment Factor (BAF), Currency Adjustment Factor (CAF), Terminal Handling Charge (THC), demurrage, detention, General Average, salvage and other charges, including but not limited to court costs, expenses and reasonable attorney's fees incurred in collecting sums due to the Carrier. Payment of ocean freight and charges to a freight forwarder, broker or anyone other than the Carrier, or its authorized agent, shall not be deemed payment to the Carrier and shall be made at payer's sole risk.

15. **Lien.** The Carrier shall have a lien on the Goods and any documents relating thereto for all sums payable to the Carrier under this Bill or any other contracts with the Merchant and expenses incurred by the Carrier for the account of the Merchant and for General Average and Salvage contributions to whomsoever due and for the cost of recovering the same and shall be for the account of the Goods and the Merchant jointly and severally and the Carrier shall have the right in its absolute discretion to dispose of the Goods and/or to sell the Goods by public auction or private treaty without notice to the Merchant.

16. **Optional Stowage.**
   (1) The Goods may be stowed by the Carrier in Containers or similar articles of transport used to consolidate Goods.
   (2) Goods stowed in Containers whether by the Carrier or the Merchant, may be carried on or under deck without notice to the Merchant. Goods (other than live animals) stowed in any covered-in space or loaded in Containers, vans or trailers carried on deck shall be deemed to be stowed under deck for all purposes, including General Average and the COGSA, the Hague Rules or other compulsorily applicable legislation.

17. **Deck Cargo.** Goods which are stated herein to be carried on deck , whether or not carried on deck, are carried without responsibility on the part of the Carrier for loss or damage of whatsoever nature arising during carriage by sea whether caused by unseaworthiness or negligence or any other cause whatsoever.

18. **Special Container.**
   (1) The Carrier shall not undertake to carry the Goods in refrigerated, heated, insulated, ventilated or any other special Container(s) nor to carry special Container(s) packed by or on behalf of the Merchant, as such; but the Carrier will treat such Goods or Container(s) only as ordinary goods or dry Container(s) respectively, unless special arrangements for the carriage of such Goods or Container(s) have been agreed to in writing between the Carrier and the Merchant and unless such special arrangements are noted on the face of this Bill and all special freight, as required, has been paid. The Carrier shall not accept responsibility for the function of special Container(s) supplied by or on behalf of the Merchant.
   (2) As regards the Goods which have been agreed to be carried in special Container(s), the Carrier or its Sub-contractors shall not be responsible for control and care of the refrigeration units of such Container(s) when the Containers are not in the actual possession of the Carrier. The Carrier does not warrant the refrigerating machinery and the Carrier shall not be liable for any loss of or damage to the Goods caused by latent defect in the refrigeration equipment.
   (3) If the Goods have been packed into refrigerated Container(s) by the Carrier and the particular temperature range requested by the Merchant is inserted in this Bill , the Carrier will set the thermostatic controls within the requested temperature range, and will exercise due diligence to maintain such temperature plus or minus three degrees C.
   (4) If the cargo received by the Carrier is refrigerated Container(s) into which the contents have been packed by or on behalf of the Merchant, it is the obligation of the Merchant to stow the contents properly and set the thermostatic controls exactly. The Carrier shall not be liable for a loss of or damage to the Goods arising out of or resulting from the Merchant's failure in such obligation.

19. **Rust Condensation, etc.** It is agreed that superficial rust, oxidation or condensation inside the Container or any like condition due to moisture is not the responsibility of the Carrier, unless said condition arises out of Carrier's failure to provide a seaworthy Container to the Merchant prior to loading. If the Merchant requires special arrangements or care for the carriage of such Goods, he must request same in writing to the Carrier and said arrangements must be noted on the face of this Bill and all special freight, as required, must be paid by the Merchant.

20. **Methods and Routes of Transportation.**
   (1) The Carrier may at any time and without notice to the Merchant:- (a) use any means of transport or storage whatsoever; (b) transfer the Goods from one conveyance to another including trans-shipping or carrying the same on another vessel than the vessel named overleaf; (c) proceed by any route in his discretion (whether or not the nearest or most direct or customary or advertised route) and proceed to or stay at any place or port whatsoever once or more often and in any order; (d) load and unload the Goods at any place or port (whether or not any such port is named overleaf as the port of loading or port of discharge) and store the Goods at any such place or port; (e) comply with any orders or recommendations given by any government or authority or any person or body acting or purporting to act as or on behalf of such government or authority or having under the terms of the insurance on the conveyance employed by the Carrier the right to give orders or directions.
   (2) The liberties set out in sub-clause (1) may be invoked by the Carrier for any purpose whatsoever including undergoing repairs, towing or being towed, adjusting instruments, drydocking Force Majeure and assisting vessels in all situations, and anything done in accordance with sub-clause (1) or any delay arising therefrom shall be deemed to be within the contractual carriage and shall not be a deviation.

21. **Matters Affecting Performance.** If at any time the performance of the contract evidenced by this Bill is or is likely to be affected by any Force Majeure hindrance, risk, delay, difficulty or disadvantage of whatsoever kind which can not be avoided by the exercise of reasonable endeavours, the Carrier (whether or not the transport is commenced) may without notice to the Merchant treat the performance of this Contract as terminated and place the Goods or any part of them at the Merchant's disposal at any place or port which the Carrier may deem safe and convenient, whereupon the responsibility of the Carrier in respect of such Goods shall cease. The Carrier shall nevertheless be entitled to full freight and charges on Goods received for transportation, and the Merchant shall pay any additional costs of carriage to and delivery and storage at such place or port.

22. **War Risk Expenses.** The Carrier may at any time and without prior notice to the Merchant impose surcharges to cover all extra expenses (including but not limited to extra insurance premiums and costs of diversion) incurred by the Carrier as a result of the outbreak of war, hostilities, war-like operations, civil war, civil commotion, blockade, piracy or revolution regardless of whether the Ship sailed or not sailed or is underway at the time the expenses are incurred.

23. **Dangerous Goods.**
   (1) The Merchant undertakes not to tender for transportation of any Goods which are of a dangerous, inflammable, radioactive, or damaging nature without previously giving written notice of their nature to the Carrier and marking the Goods and the Container or other covering on the outside as required by any laws or regulations which may be applicable.
   (2) If the requirements of sub-clause (1) are not complied with, the Merchant shall indemnify the Carrier against all loss, damage or expense directly or indirectly arising out of such Goods being tendered for transportation or handled or carried by the Carrier.
   (3) Goods which are or at any time become dangerous, inflammable, radioactive or damaging may, at any time or place, be unloaded, destroyed, or rendered harmless without compensation, and if the Merchant has not given notice of their nature to the Carrier under (1) above, the Carrier shall be under no liability to make any General Average contribution in respect of such Goods.

24. **Regulations Relating to Goods.** As a result of Merchant's failure to comply with such regulations or requirements of Customs, port and other authorities, Merchant shall bear and pay all amounts incurred by the Carrier in complying with same as well as all duties, taxes, fines, imposts, expenses or losses incurred or suffered or by reason of any illegal, incorrect or insufficient marking, numbering or addressing of the Goods, and indemnify the Carrier in respect thereof.

25. **Notification and Delivery.**
   (1) Any mention in this Bill parties to be notified of the arrival of the Goods is solely for information of the Carrier, and failure to give such notification shall not involve the Carrier in any liability nor relieve the Merchant of any obligation hereunder.
   (2) The Merchant shall take delivery of the Goods within the time provided for in the Carrier's applicable Tariff, failing which the Merchant is liable to pay for the detention/demurrage charges at the rate stipulated in the Carrier's applicable Tariff.
   (3) If the Merchant fails to take delivery of the Goods or part of them upon expiration of the Tariffs prescribed free time, the Goods shall be deemed to have been delivered to the Merchant and the Carrier may with or without notice, but subject to its lien, store or warehouse the unclaimed Goods at the sole risk and expense of the Merchant and the Carrier shall have a lien for all expenses incurred. Thereupon, the liability of Carrier in respect of the unclaimed Goods shall cease.
   (4) The Merchant's attention is drawn to the provisions concerning free storage time and cargo and equipment demurrage contained in the Carrier's applicable tariff.
   (5) Notwithstanding anything else to the contrary contained within this Bill , where in accordance with local legislation all import cargo is discharged into the custody of the port authority or customs and such agencies in turn are solely responsible for the correct release of the cargo to the rightful consignee upon presentation of the pertinent documentation and payment of relevant customs duties, taxes, dues and any other charges, then in such countries neither the Carrier nor its agents or Sub-contractors will be responsible or liable in the event of incorrect release of the cargo after its delivery to the port authority or customs by the Carrier.

26. **Both-to-Blame Collision.** If the (carrying) Ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default in the navigation or the management of the carrying Ship, the Merchant undertakes to pay the Carrier or, where the Carrier is not the owner and in possession of the carrying Ship, to pay to the Carrier as trustee for the owner and/or demise charterer of the carrying Ship, a sum sufficient to indemnify the Carrier and/or the owner and/or demise charterer of the carrying Ship against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of or damage to, or any claim whatsoever of the Merchant, paid or payable by the other or non-carrying ship or her owners to the Merchant and set-off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying Ship or her owner or demise charterer or the Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge of any ship or ships or objects, other than, or in addition to, the colliding ships or objects, are at fault in respect to a collision, contact, stranding or other accident.

27. **General Average.** General Average shall be adjusted, stated and settled in London or any other place selected by the Carrier and according to the York/Antwerp Rules 1994 except Rule Paramount thereof and as to matters not provided for by those Rules, according to the laws and usages in London. The General Average Statement in every instance shall be prepared by Average Adjusters selected by the Carrier. In average adjustments, disbursements in foreign currency shall be exchanged into any currency at the Carrier's option at the rate prevailing at time of payment and allowances for damage to cargo claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port of final discharge of such damaged cargo. Average agreement or bond and such additional security as may be required by the Carrier, must be furnished before the delivery of the Goods. Such cash deposit, agreement or other security as the Carrier or its agents may consider requisite to cover the estimated contribution of the Goods and any salvage and special charges thereon shall be made by the Goods, or the Merchant(s) to the Carrier if required before delivery. Any deposits shall be payable at Carrier's option in the currency to be indicated on each occasion by the Carrier and be remitted to the Average Adjusters. Refunds of credit balance shall be paid in the same currency. It is understood that in every instance the Merchant shall remain responsible until the statement of average has been settled. In case of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatever, whether due to negligence or not for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Goods, the Merchant(s) shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charge incurred in respect to the Goods. If the salving ship is owned or operated by the Carrier, salvage shall be paid so fully as if the salving ship was owned or operated by strangers.

28. **Variation of the Contract, etc.** No servant or agent of the Carrier shall have power to waive or vary any term of this Bill unless such waiver or variation is in writing and is specifically authorized or ratified in writing by the Carrier.

29. **Law and Jurisdiction.**
   (1) Governing Law – Save where the terms and conditions of this bill of lading provide for another law to apply, this bill of lading shall be governed by, and its terms and conditions shall be construed according to, English law.
   (2) Jurisdiction – All claims and disputes under this Bill shall be determined by the High Court of Justice, England to the exclusion of the jurisdiction of the courts of any other country provided always that the Carrier may in its absolute and sole discretion invoke or voluntarily submit to the jurisdiction of the courts of any other country which, but for the terms of this Bill of Lading, could properly assume jurisdiction to hear and determine such claims or disputes, but this shall not constitute a waiver of the terms of this provision for any other claims or disputes.

   Notwithstanding the provisions of Clause 29 (1) and (2) above, if the carriage includes carriage to, from or through a port in the United States of America, the Merchant may refer any claim or dispute to the United States District Court for the Southern District of New York in who shall determine the same accordance with the laws of the United States of America.

# VENGROW EXHIBIT D

# HATSU MARINE

## BILL OF LADING
NOT NEGOTIABLE UNLESS CONSIGNED TO ORDER
### ORIGINAL

| (2) Shipper/Exporter (Complete Name and Address, Zip Code)<br>EMPIRE INTER-FREIGHT CORP.<br>3840 PARK AVE.<br>EDISON, NJ 08820<br>TEL: 732-846-6378 | | (5) Document No.<br>61852707 |
|---|---|---|
| | Shipper code | (6) Export References<br>REF: EIF06033 |
| (3) Consignee (complete name and address) / (unless provided otherwise, a consignee "To Order" means To Order of Shipper.)<br>CHINA INTERNATIONAL FREIGHT LTD.<br>(GUANGZHOU)<br>ROOM 1109 ZHENGSHENG BLDG<br>NO 5-9 TIAN HE BEI ROAD, GUANGZHOU,<br>CHINA TEL: FAX:86-20-2886-9580<br>ATTN: WILLIAM CHAO | | (7) Forwarding Agent (Name and Address, F.M.C No.)  FMC 019719  F<br>CHK FREIGHT INC.<br>10 WHITEHALL ROAD<br>EAST BRUNSWICK, NJ 08816 |
| (4) Notify Party (complete name and address)<br>SAME AS CONSIGNEE | | (8) Point and Country of Origin (for the Merchant's reference only) |
| | | (9) Also Notify Party (complete name and address) |
| | Notify code | |
| (12) Pre-carriage by | (13) Place of Receipt / Date<br>COLONIAL HEIGHTS, VA | In Witness Whereof, the undersigned, on behalf of Hatsu Marine Limited, the Master and the Owner of the Vessel, has signed the number of Bill(s) of Lading stated below, all of this tenor and date, one of which being accomplished, the others to stand void. |
| (14) Ocean Vessel / Voy. No<br>EVER DELUXE 0233-066W | (15) Port of Loading<br>NORFOLK, VA | (10) Onward Inland Routing / Export Instructions (for Merchant's reference only) |
| (16) Port of Discharge<br>HONG KONG | (17) Place of Delivery<br>HUANGPU, CHINA | |

Particulars furnished by the Merchant

| (18) Container No. And Seal No.<br>Marks & Nos. | (19) Quantity and Kind of Packages | (20) Description of Goods | (21) Measurement (M³)<br>Gross Weight (KGS) |
|---|---|---|---|
| CONTAINER NO. / SEAL NO.<br>EISU5667249/<br>1730        /<br>EMCU5208442/<br>1731        /<br><br>ETC-CH 090206<br>ETC-CH 090106 | | NO SED REQUIRED AES XTN:202326959-EIF06033<br>ITN:X2006091102648O<br>2 X 40' HQ REEFER CONTAINERS SLAC:<br>36 PLTS / 72 ROLLS<br>DRY FILM PHOTORESIST (NON-HAZ)<br>TEMPERATURE SET AT 40.0 DEGREES F.<br>VENTILATION SET AT 50%<br><br>REEFER CONTAINER | 74,015.000 LBS<br>33,572.679 KGS<br>3,178.3203 CFT<br>90.0000 CBM<br><br><br>"OCEAN FREIGHT PREPAID"<br>SHIPPER'S LOAD & COUNT |
| (22)<br>TOTAL NUMBER OF<br>CONTAINERS OR PACKAGES  SAY TOTAL: 2X40H ONLY<br>(IN WORDS) 539397 | | THESE COMMODITIES, TECHNOLOGY AND SOFTWARE, WERE EXPORTED FROM THE UNITED STATES IN ACCORDANCE WITH THE EXPORT ADMINISTRATION REGULATIONS. DIVERSION CONTRARY TO U.S. LAW PROHIBITED. | (23)<br>Declared Value $ _____<br>If Merchant enters actual value of Goods and pays the applicable ad valorem Tariff rate, Carrier's package limitation shall not apply. |

| (24) FREIGHT & CHARGES | Revenue Tons | Rate | Per | Prepaid | Collect |
|---|---|---|---|---|---|
| | | | | | |

| (25) B/L NO.<br>HTML<br>488618527078 | (27) Number of Original B(s)L<br>THREE (3) | | (29) Prepaid at<br>NEW YORK, NY | (30) Collect at |
|---|---|---|---|---|
| | (28) Place of B(s)/L Issue/Date<br>NEW YORK, NY SEP.14,2006 | | (31) Exchange Rate | (32) Exchange Rate |
| (26) Service  Type / Mode<br>FCL/FCL  D/O | (33) Laden on Board<br>SEP.14,2006<br>EVER DELUXE 0233-066W<br>NORFOLK, VA | | EVERGREEN AMERICA CORPORATION<br><br>By<br>AS AGENTS FOR THE CARRIER HATSU MARINE LIMITED | |

FORM NO. DOC-001B-00     (TERMS OF BILL OF LADING ARE CONTINUED ON THE BACK HEREOF AND ENLARGED VERSION OF BACK CLAUSE IS AVAILABLE ON www.hatsu-marine.com)     (1)

# VENGROW EXHIBIT E

**HATSU MARINE**

VOID 4/28/08

# VENGROW EXHIBIT F

# VENGROW EXHIBIT G

**JUDGE LEISURE**

LENNON, MURPHY & LENNON, LLC
Attorneys for Plaintiff
CANTONE & CO., INC.
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax



JUL 2 3 2007

U.S.D.... S.J., N.Y.
CASHIERS

# '07 CIV 6602

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

CANTONE & CO., INC,.                              :        07 Civ. _____

            Plaintiff,                         :        **ECF CASE**

   - against -                                    :        COMPLAINT

SEAFRIGO a/k//a SEAFRIGO MARESEILLE,    :

           Defendant.                        :
--------------------------------------------------------------X

      Plaintiff, CANTONE & CO., INC. (hereinafter "CANTONE" or "Plaintiff") by and

through its attorneys, LENNON, MURPHY & LENNON, LLC, as and for its Verified

Complaint against the Defendant, SEAFRIGO a/k/a SEAFRIGO MARSEILLE (hereinafter

"SEAFRIGO" or "Defendant"), alleges, upon information and belief where indicated, as follows:

      1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.

      2.     At all times material to this action, CANTONE was, and still is, a corporation

duly organized under, and existing by virtue of, the laws of the State of Delaware and has a

principal place of business in New York, New York.

3.      Upon information and belief, and at all times material to this action, SEAFRIGO was, and still is, a foreign company duly organized and operating under foreign law with a principal place of business in Le Havre, France.

4.      At all times material to this action, Defendant SEAFRIGO was and is now engaged as a freight forwarder and acted in the transaction at issue as a common carrier of cargo by water for hire.

5.      At all times material to this action, CANTONE was the cargo owner and receiver of 1500 packages of frozen ready-to-bake bakery products stowed within a freezer container.

6.      At all times material to this action, SEAGFRIGO was the Carrier of the above cargo pursuant to a freight forwarding agreement and bill of lading number E35039700000 dated September 22, 2006 issued by Seafrigo Marseille.

7.      Plaintiff's cargo was loaded in good order and condition on board the motor vessel "Stadt Wismar" (hereinafter "vessel") under the aforesaid bill of lading for carriage from Le Havre, France to Newark, NJ.

8.      The vessel arrived at Newark, NJ on or about October 3, 2006 and unloaded the Plaintiff's cargo.

9.      On discharge the Plaintiff's cargo was found to be damaged due to defrosting, thawing and re-freezing of the cargo which occurred during the voyage.

10.     The aforesaid damage to Plaintiff's cargo was caused due Defendant's breach of its obligations as Carrier under the contract of carriage pursuant to which it was obligated to deliver the cargo to Plaintiff in same good order and condition as when the cargo was loaded on the vessel.

11.    Defendant was negligent in its care and custody of the cargo in that, *inter alia*, it failed to ensure that the refrigerated container into which Plaintiff's cargo was loaded was in proper working order, it failed to ensure that the cargo was properly stowed and handled on the vessel, it failed to provide contracted for specialized accessorial services, and/or failed to ensure that the same was in proper working order and condition, including temperature controlled care of the cargo during all periods of custody and carriage, and in that it otherwise failed to properly arrange for the cargo to be safely carried aboard the vessel.

12.    In addition, Seafrigo breached its duty as bailee of the cargo.

13.    As a result of the Defendant's negligence and breach of contract as above described, Plaintiff has suffered damages in the principal sum of $50,000.00, exclusive of pre-judgment interest, incidental and/or consequential damages, reasonable attorney's fees and litigation costs.

14.    Despite due and repeated demand, Defendant has failed and/or refused to pay the sums due owing to Plaintiff.

## PRAYER FOR ISSUANCE OF MARITIME ATTACHMENT AND GARNISHMENT PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE B

15.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

16.     The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishee(s) within the District for the purpose of obtaining personal jurisdiction over the Defendant, and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against the Defendant, SEAFRIGO a/k/a SEAFRIGO MARSEILLE, in the principal amount of Fifty Thousand Dollars and No/100 (U.S. $50,000)., plus Plaintiff's incidental and/or consequential costs and damages, plus prejudgment interest at the rate of 9% per annum and post-judgment interest as may be allowed by the Court;

B.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $60,000.00 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including , but not limited to, such property as may be held, received or transferred in Defendant's name, or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishes to be

named, and that all persons claiming any interest in the same be cited to appear and pursuant to

Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.      That this Court retain jurisdiction over this matter through the entry of any

judgment or award associated with any of the claims currently pending, or which may be

initiated in the future, including any appeals thereof;

D.      That this Court award Plaintiff the attorneys' fees and costs incurred in this

action;

E.      That the Plaintiff has such other, further and different relief as the Court

may deem just and proper.

Dated: New York, New York
        July 23, 2007

                                LENNON, MURPHY & LENNON, LLC


                                Kevin J. Lennon (KL 5072)
                                Attorney for Plaintiff

                                The GrayBar Building
                                420 Lexington Avenue, Suite 300
                                New York, NY 10170
                                (212) 490-6050 - phone
                                (212) 490-6070 - fax
                                Our ref.: 07-1040

## VERIFICATION

State of New York    )
                     )    ss.:    City of New York
County of New York   )

1. My name is Reto Cantone.

2. I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3. I am the President of Cantone & Co., Inc, the Plaintiff herein.

4. I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5. The source of my knowledge and the grounds for my belief is my personal

involvement in the subject transaction and the documents and information maintained within the

files of Cantone & Co., Inc. on this matter.

6. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    New York, NY
          July 20, 2007

_____
Reto Cantone

# VENGROW EXHIBIT H

9011/SHV

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    07 CV 6602 (PKL)

```
┌─────────────────────────────────────────────┐
│ CANTONE & CO., INC.,                          │
│                              Plaintiff,       │
│                   - against -                 │         ANSWER
│ SEAFRIGO a/k/a SEAFRIGO                        │
│ MARSEILLE,                                     │
│                              Defendant.        │
└─────────────────────────────────────────────┘
```

Defendant, SEAFRIGO MARSEILLE, by its attorneys, Cichanowicz Callan Keane

Vengrow & Textor, LLP, for its answer to the complaint, alleges on information and belief:

1.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of para. 1.

2.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of para. 2.

3.    Denies the truth of the allegations of para. 3.

4.    Denies the truth of the allegations of para. 4.

5.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of para. 5.

6.    Denies the truth of the allegations of para. 6.

7.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of para. 7.

8.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations of para. 8.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations of para. 9.

10.     Denies the truth of the allegations of para. 10.

11.     Denies the truth of the allegations of para. 11.

12.     Denies the truth of the allegations of para. 12.

13.     Denies the truth of the allegations of para. 13.

14.     Denies the truth of the allegations of para. 14 except admits nonpayment.

15.     Denies the truth of the allegations of para. 15.

16.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations of para. 16

FIRST AFFIRMATIVE DEFENSE

17.     This Court lacks jurisdiction over defendant's person.

SECOND AFFIRMATIVE DEFENSE

18.     Defendant has not been served with a summons herein, and no summons issued in this action would be sufficient to compel defendant's appearance since this Court lacks both general and specific jurisdiction over defendant's person.

THIRD AFFIRMATIVE DEFENSE

19.     Pursuant to F.R.Civ.P. Admiralty & Maritime Supplemental Rule E(8), defendant's appearance in this action is restricted to the defense of the claims herein for which plaintiff has obtained attachment or garnishment of defendant's property, and in any event is not

an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

## FOURTH AFFIRMATIVE DEFENSE

20.     The Rule B attachment and garnishment herein is invalid, and the circumstances of the said attachment and garnishment show a want of equity warranting its vacation.

## FIFTH AFFIRMATIVE DEFENSE

21.     The complaint pleads a claim arising out of a bill of lading contract for the carriage of goods by sea from a foreign port to a U.S. port issued by defendant as common carrier.  If those allegations are true, then the rights and obligations of the parties are subject to the U.S. Carriage of Goods by Sea Act and the bill of lading.  This defendant claims the benefit of all applicable laws, contracts and tariffs.

## SIXTH AFFIRMATIVE DEFENSE

22.     Defendant claims the benefit of any forum selection or choice of forum provision contained in the applicable contracts.

## SEVENTH AFFIRMATIVE DEFENSE

23.     This action should be dismissed on grounds of forum non conveniens.

## EIGHTH AFFIRMATIVE DEFENSE

24.     The cargo loss and damage complained of occurred, if at all, as a result of the inherent vice or defect or pre-existing condition of the goods, or as a result of the fault or neglect of plaintiff or those for whom plaintiff is responsible.

## NINTH AFFIRMATIVE DEFENSE

25.     Plaintiff did not mitigate its damages.

WHEREFORE, defendant, SEAFRIGO MARESEILLE, respectfully requests the following relief:

A.     Judgment dismissing the complaint and awarding defendant the costs and disbursements of this action; and

B.     An order vacating plaintiff Rule B attachment and garnishment and granting defendant all damages caused by plaintiff's wrongful attachment and garnishment.

Dated: New York, NY, August 24, 2007

CICHANOWICZ, CALLAN, KEANE,
VENGROW & TEXTOR, LLP
Attorneys for Defendant
SEAFRIGO MARSEILLE

By: _____Stephen H. Vengrow_____
Stephen H. Vengrow (SHV-3479)
61 Broadway, Suite 3000
New York, New York 10006-2802
(212)344-7042

TO:    Opposing Counsel

## <u>CERTIFICATE OF SERVICE BY REGULAR U.S. MAIL AND BY ECF</u>

The undersigned declares under penalty of perjury that the following is true and correct:

1. I am over the age of eighteen years and I am not a party to this action.

2. On August 24, 2007, I served a complete copy of Seafrigo's Answer to Plaintiff's Complaint, by regular U.S. mail and by ECF, to the following attorneys at their ECF registered address and at the following address:

To:     Kevin John Lennon
        Lennon, Murphy & Lennon, LLC
        The GrayBar Building
        420 Lexington Avenue
        Suite 300
        New York, NY 10170
        (212) 490-6050
        Fax: (212) 490-6070
        Email: kjl@lenmur.com


                                        s/ Jessica De Vivo
                                        Jessica De Vivo

DATED:      August 24, 2007
            New York, New York

# VENGROW EXHIBIT I

ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:07-cv-06602-PKL

| | |
|---|---|
| Cantone & Co., Inc. v. Seafrigo | Date Filed: 07/23/2007 |
| Assigned to: Judge Peter K. Leisure | Jury Demand: None |
| Demand: $60,000 | Nature of Suit: 120 Contract: Marine |
| Cause: 28:1333 Admiralty | Jurisdiction: Federal Question |

**Plaintiff**

**Cantone & Co., Inc.**                    represented by **Kevin John Lennon**
Lennon, Murphy & Lennon, LLC
The GrayBar Building
420 Lexington Avenue
Suite 300
New York, NY 10170
(212) 490-6050
Fax: (212) 490-6070
Email: kjl@lenmur.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Seafrigo**                    represented by **Stephen H Vengrow**
*also known as*                    Cichanowicz, Callan, Keane, Vengrow & Textor
Seafrigo Mareseille                    61 Broadway, Suite 3000
New York, NY 10006
212-344-7042
Fax: 212-344-7285

Email: svengrow@cckvt.com
*ATTORNEY TO BE NOTICED*

V.

**Garnishee**

**Societe Generale New York Branch**                represented by  **Richard Joseph Reisert**
Clark, Atcheson & Reisert
7800 River Road
North Bergen, NJ 07047
201-537-1200
Fax: 201-537-1201
Email: reisert@navlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/23/2007 | 1 | COMPLAINT against Seafrigo. (Filing Fee $ 350.00, Receipt Number 621952)Document filed by Cantone & Co., Inc..(mbe) (Entered: 07/25/2007) |
| 07/23/2007 |   | SUMMONS ISSUED as to Seafrigo. (mbe) (Entered: 07/25/2007) |
| 07/23/2007 |   | Magistrate Judge Debra C. Freeman is so designated. (mbe) (Entered: 07/25/2007) |
| 07/23/2007 |   | Case Designated ECF. (mbe) (Entered: 07/25/2007) |
| 07/23/2007 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Cantone & Co., Inc..(mbe) (Entered: 07/25/2007) |
| 07/23/2007 | 8 | EX PARTE ORDER FOR PROCESS OF MARITIME ATTACHMENT against all tangible or intangible property, credits, letter of credit, bills of lading effects, debts and monies, electronic funds transfers, freights, sub-freights, charter hire, sub charter hire or any other funds or property up to the amount of $60,000.00, belonging to, due or being transferred to, from or for the benefit of the Defendant. (Signed by Judge George B. Daniels on 7/23/07) (djc) (Entered: 08/27/2007) |
| 07/26/2007 | 3 | AFFIDAVIT of Kevin J. Lennon in Support. Document filed by Cantone & Co., Inc.. (Lennon, Kevin) (Entered: 07/26/2007) |

| 08/15/2007 | [4](#) | NOTICE OF APPEARANCE by Richard Joseph Reisert on behalf of Societe Generale New York Branch (Reisert, Richard) (Entered: 08/15/2007) |
|---|---|---|
| 08/15/2007 | [5](#) | ANSWER to Writ of Garnishment *Report of Garnishee Societe Generale New York Branch to Plaintiff's Maritime Attachment*. Document filed by Societe Generale New York Branch. (Reisert, Richard) (Entered: 08/15/2007) |
| 08/24/2007 | [6](#) | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Seafrigo.(Vengrow, Stephen) (Entered: 08/24/2007) |
| 08/24/2007 | [7](#) | ANSWER to Complaint. Document filed by Seafrigo.(Vengrow, Stephen) (Entered: 08/24/2007) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/21/2008 15:54:12 | | |
| **PACER Login:** | cc0860 | **Client Code:** | Optional for PACER use only |
| **Description:** | Docket Report | **Search Criteria:** | 1:07-cv-06602-PKL |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# VENGROW EXHIBIT J

07-6602 (PKL)
Docket no.

THE PRESIDENT OF THE UNITED STATES OF AMERICA

To the Marshal of the Southern District of New York (or designated process server) - GREETINGS:

WHEREAS a Verified Complaint has been filed in the United States District Court for the Southern District of New York on the 23rd day of July 2007 by

CANTONE & CO., INC.,

Plaintiff,

against

SEAFRIGO a/k/a SEAFRIGO MARSEILLE,

Defendant,

in a certain action for breach of maritime contract wherein it is alleged that there is due and owing from the Defendant to the said Plaintiff the amount of **$60,000.00** and praying for process of maritime attachment and garnishment against the said Defendant,

WHEREAS, this process is issued pursuant to such prayer and requires that a garnishee(s) shall serve their answer(s), together with answers to any interrogatories served with the Complaint, within 20 days after service of process upon him and requires that Defendant shall serve its answer within 30 days after process has been executed, whether by attachment of property or service on the garnishee.

NOW, THEREFORE, we do hereby command you that if the said Defendant cannot be found within the District you attach goods and chattels to the amount sued for; and if such property cannot be found that you attach other property, credit and effects to the amount sued for in the hands of:

ABN Amro, American Express Bank, Bank of America, Bank of China, Bank of New York, Barclay's Bank, BNP Paribas, Calyon, Chibank, Deutsche Bank, HSBC Bank USA Bank, J.P. Morgan Chase, Societe Generale, Standard Chartered Bank, UBS, and/or Wachovia Bank N.A

to wit: property, letters of credit, deposits, funds, credits, bills of lading, debts, settlement agreements, or other assets, tangible or intangible, in whatever form of:

SEAFRIGO a/k/a SEAFRIGO MARSEILLE

and that you promptly after execution of this process, file the same in this court with your return thereon.

WITNESS, the Honorable Kimba M. Wood, Chief Judge of said Court, this _____ day of July 2007, and of our Independence the two-hundred and thirty-first.

Lennon, Murphy & Lennon, LLC
Attorneys for Plaintiff
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Phone (212) 490-6050

J. MICHAEL McMAHON
Clerk

By:_____
Deputy Clerk

A TRUE COPY
J. MICHAEL McMAHON, CLE

BY_____
DEPUTY CLERK

NOTE: *This Process is issued pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and/or New York Civil Practice Law and Rules, Article 62.*

# VENGROW EXHIBIT K

# ♻ Compagnie Financière du Crédit Mutuel _____ *Groupe Arkéa*

**Département des Activités Internationales**
**International Department**
SWIFT : CMBRFR2B

December 26, 2007

Lennon, Murphy & Lennon, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170


Attn.: Kevin J. Lennon, Esq.


**RE :  PAYMENT GUARANTEE NO. DOC-303456 FOR USD60,000.00**
**IN RESPECT OF SECURITY FOR CLAIM AGAINST MARITIME**
**ATTACHMENT AND GARNISHMENT OF SEAFRIGO "MARSEILLE"**
**MONIES LOCATED IN U.S. BANKS**

Description of Claim: Claim for damages to cargo moving from Le Havre, France to Newark, New Jersey pursuant to the Seafrigo House Bill of Lading no. E350390000 dated September 22,2006 and which claim is sublect to the captioned complaint entitled *Cantone & Co., Inc. v. Seafrigo a/k/a Seafrigo Marseille*, Docket no.: 07 Civ 6602 filed in the U.S. District Court for the Southern District of New York: Amount of Guarantee: USD60,000.00 (U.S. DOLLARS SIXTY THOUSAND).

Whereas you have commended proceedings and obtained a Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure in New York as security for the above claim: now in consideration of your releasing the said attachment as security for the above claim, we, COMPAGNIE FINANCIERE DU CREDIT MUTUEL, with head office 1 rue Louis Lichou 29480 Le Relecq-Kerhuon/Brest (France), hereby irrevocably undertake to pay you immediately upon receipt by us of an agreement of the parties providing for the payment of a compensation to CANTONE & CO. by SEAFRIGO or a definitive judicial decision condemning SEAFRIGO any sum not exceeding USD60,000.00 (U.S. DOLLARS SIXTY THOUSAND MAXIMUM) such sum, whether principal interests and costs due

It is hereby agreed that you may make more than one demand under this guarantee: save that the total of all sums demanded hereunder may not exceed the sum hereby guaranteed.

This guarantee shall be governed by New York Law and for the purpose of enforcing this guarantee:

   1. We hereby submit to and consent to the jurisdiction of the U.S. District Court for the Southern District of New York.

# ⚘ Compagnie Financière du Crédit Mutuel_____ *Groupe Arkéa*

**Département des Activités Internationales**
**International Department**
SWIFT : CMBRFR2B

2. We hereby choose as an address for service:

**Compagnie Financière du Crédit Mutuel**
**International Département**
**1, rue Louis Lichou**
**29480 Le Relecq-Kerhuon/Brest (France)**
**Telephone: (33)2.98.00.24.39**
**Fax: (33)2.98.00.27.24**
**Mail: operations.documentaires@cmb.fr**

This guarantee is initially valid for on year from the date of issue i.e. up to December 26, 2008 and shall be automatically renewed and shall remain valid until such time as it is returned for cancellation or until the above claim is either dismissed by judicial judgment or the claim has been settled or paid which ever is the earlier.

Yours faithfully,

**COMPAGNIE FINANCIERE DU CREDIT MUTUEL**
**INTERNATIONAL DEPARTMENT**

Laurent LEVILLAIN
Authorized Signatory

Lucette JOLLY
Authorized Signatory

Signed in Brest, on December 26, 2007

# VENGROW EXHIBIT L

# CANTONE & Co.

14 East 60th St., Suite 400
New York, NY 10022
212-826-2357 (fax) 212-826-1320

To:   Mr. Al Raffa                              17 November 2006
      Seafrigo USA
Ref:  Viennoiserie Claim
Fax:  201-867-9320

Dear Al:

Please see enclosed copies of the following invoices which are part of the total
claim of this shipment. Please note that all products in this shipment were
damaged, and at this point there is no complete understanding of where the
damage happened. Therefore I have included all invoices pertaining; which
should all be part of the total claim.

| | | |
|---|---|---|
| BCS Invoice (enclosed)     Euro 29,756.89 | US$37,791.25 |
| Seafrigo Invoice #IMP04126605-1 | $ 6,754.18 |
| Preferred Freezer | $ 2,007.12 |
| Preferred Freezer (spot check by Cantone) | $   202.50 |
| Preferred Freezer (spot check by Cantone) | $   121.50 |
| Preferred Freezer (spot check by Seafrigo) – note yet billed | |

Total of Claim                                US$46,876.55

If you need any further details please don't hesitate to contact myself or Reto.

Regards,

*Sarah C. Nodjoumi*

Sarah C. Nodjoumi

# SEAFRIGO USA, INC.

55 CARTER DRIVE - SUITE 208
EDISON, NJ 08817
Phone: (201) 770-1143
Fax: (201) 867-9320
FMC LIC 3616



**Bill To:** CANTONE & COMPANY, INC.
14 EAST 60TH STREET
NEW YORK, NY 10022

| INVOICE | |
|---|---|
| DATE | INVOICE# |
| 10/05/06 | IMP04125605-01 |

OUR REF#:    IMP04125605
YOUR REF#:   EISU5648130

| Description | Charges |
|---|---|
| DUTY & TAXES | 127.56 |
| ENTRY FEE | 160.00 |
| PRE-CARRIAGE | 1,404.00 |
| AMS FEE | 19.50 |
| ISPS | 19.50 |
| OCEAN FREIGHT | 3,410.00 |
| BUNKER ADJ FACTOR | 886.00 |
| B/L FEE | 30.00 |
| INSURANCE | 304.62 |
| CUSTOMS EXAM FEE | 393.00 |

VESSEL:          STADT WISMAR
SHIPPER:         BCS / BVF
CONSIGNEE:       CANTONE & COMPANY, INC.
MBL# / MAWB#:    HTML540600103855
HBL# / HAWB#:    E35039700000

NOTES:    CONT# EISU5648130
EXAM CHARGES ARE FOR XRAY
PERFORMED IN NY PORT

| DUE | TOTAL AMOUNT DUE | $6,754.18 |
|---|---|---|

Notice is hereby constituted under the truth intending act that any accounts remaining unpaid after 10 days from the indicated terms are subject to 1.5% per month interest and collection costs, including attorney fees.

# VENGROW EXHIBIT M

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CANTONE & CO., INC.,                                   :        07 CV ⟨ʒ002⟩ (PKL) (DCF)
                                                       :
                        Plaintiff,                     :        **ECF CASE**
                                                       :
        - against -                                    :
                                                       :
SEAFRIGO a/k//a SEAFRIGO MARESEILLE,                   :
                                                       :
                        Defendant.                     :
---------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut   )
                       )        ss: SOUTHPORT
County of Fairfield    )

        Kevin J. Lennon , being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

## DEFENDANT IS NOT PRESENT IN THIS DISTRICT

        2.      I have attempted to locate the Defendant, SEAFRIGO a/k//a SEAFRIGO

MARESEILLE within this District. As part of my investigation to locate the Defendant within

this District, I checked the telephone company information directory, as well as the white and

yellow pages for New York listed on the Internet or World Wide Web, and did not find any

listing for the Defendant. Finally, I checked the New York State Department of Corporations'

online database which showed no listing or registration for the Defendant. The online database

does, however, provide a listing for Seafrigo International Inc. However, although listed as a

1

New York corporation the listing provides that this entity only has a presence in Elizabeth, New Jersey and does not have a registered agent for service of process in the District. Further, although this company may be related to the Defendant, it is not the Defendant named in this action.

3.      I did locate a website believed to be owned and operated by the Defendant hosted at www.seafrigo.com. A review of that website provides that Defendant does not have a presence in this District. Upon information, the Defendant has an affiliated company located in Secaucus, NJ named Seafrigo U.S.A. and although that company was involved – apparently as an agent on behalf of the Defendant – in the transaction discussed in the Plaintiff's Complaint, that entity is not a named Defendant herein.

4.      I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claim.

5.      Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

6.      This is Plaintiff's first request for this relief made to any Court.

**PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER**

7.      Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing the undersigned, Patrick F. Lennon, Charles E. Murphy, Nancy Peterson or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC be and is hereby appointed, in addition to the United States Marshal, to serve the Process of

2

Maritime Attachment and Garnishment and the Verified Complaint, together with any

interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon

information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account

of, the Defendant.

8.     Plaintiff seeks to serve the prayed for Process of Maritime Attachment and

Garnishment with all deliberate speed so that it may be fully protected against the potential of

being unable to satisfy a judgment ultimately obtained by Plaintiff and entered against the

Defendant.

9.     To the extent that this application for an Order appointing a special process server

with respect to this attachment and garnishment does not involve a restraint of physical property,

there is no need to require that the service be effected by the Marshal as it involves simple

delivery of the Process of Maritime Attachment and Garnishment to the various garnishes to be

identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10.     Plaintiff also respectfully requests that the Court grant it leave to serve any

additional garnishee(s) who may, upon information and belief obtained in the course of this

litigation, to be holding, or believed to be holding, property of the Defendant, within this District.

Obtaining leave of Court at this time to serve any later identified garnishees will allow for

prompt service of the Process of Maritime Attachment and Garnishment without the need to

present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11.     Further, in order to avoid the need to repetitively serve the garnishees/banks,

Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte

3

Order for Process of Maritime Attachment, for any process that is served on a garnishee to be

deemed effective and continuous service of process throughout any given day on which process

is served through the next day, provided that process is served the next day, to authorize service

of process via facsimile or e-mail following initial *in personam* service.

Dated:        July 23, 2007
              Southport, CT

                                                            Kevin J. Lennon


Sworn and subscribed to before me
this 23rd day of July, 2007.


Notary Public/Commissioner of Superior Court

4