UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    07 CV 6602 (PKL)

| |
|---|
| CANTONE & CO., INC., |
|                            Plaintiff, |
|       - against - |
| SEAFRIGO a/k/a SEAFRIGO MARSEILLE, |
|                            Defendant. |

**DECLARATION**

Pursuant to 28 U.S.C.§1746, Marc Gourio declares under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

(1) I am the Office Manager of the SeaFrigo Marseille office located at z.a. de L'Agavon, 21 Avenue La Martime, 13170 Les Pennes Mirabeau, France and has been in this position since July 2004. This declaration is given on personal knowledge and in support of the SeaFrigo motion to dismiss plaintiff's complaint.

(2) As General Manager, my duties include being responsible for both bookings and preparation of related documentation by SeaFrigo Marseille for cargo moving pursuant to a SeaFrigo House Bill of Lading ("HB/L"). I have direct supervision and control of all the personnel in my office.

(3) I am familiar with the facts surrounding the preparation of the SeaFrigo Marseille HB/L no. E35039700000 dated September 22, 2006, a copy attached hereto as **Exhibit A**.

(4) Based on the complaint filed by the plaintiff in the above suit, I can confirm that the cargo loaded into container no. EISU564813/0 and which is the

subject of the litigation was booked for carriage through my office. In this regard SeaFrigo HB/L no. E3503970000 was signed (at the lower right portion of the HB/L) by Ms. Perrine Crouau-Demoya Operation Agent who is under my supervision and control and whose signature I recognize.

(5) The backside of the HB/L terms and conditions Clause 20 ("jurisdiction") requires that any disputes arising under the HB/L shall be determined by the Tribunal of Commerce at Le Havre under the laws of France and no other court shall have jurisdiction with regard to any such action. The text of HB/L Clause 20 has been on the backside of the SeaFrigo HB/L from when SeaFrigo first commenced operating as a Non-Vessel Ocean Common Carrier ("NVOCC") and issuing its HBs/L. In fact, none of the language shown on the backside terms and conditions of SeaFrigo's HB/L E35039700000 has changed since the inception of SeaFrigo's NVOCC operations in April, 2004.

(6) Because, as requested by the shipper this HB/L was an express HB/L (as shown on the front side of the HB/L) no original HB/L was issued to the HB/L shipper, BCS S.A. or to plaintiff, Cantone or to anyone else for that matter although an original was prepared but kept in the SeaFrigo Marseille office for administrative purposes. This original (both sides) **(Exhibit A)** has since been sent to Stephen Vengrow, at his request, and whose law firm is representing SeaFrigo in the instant litigation. The shipper never requested issuance of a regular HB/L.

(7) As is the SeaFrigo Marseille practice when an express HB/L is prepared, the HB/L shipper, here BCS S.A. was sent a faxed copy of the front side only of

2



the HB/L in order that BCS S.A., can show documentary proof to the French tax authority that the cargo moving pursuant to the HB/L is being shipped to a destination outside of France to avoid payment of a sales tax. A faxed copy of the front side of the said SeaFrigo HB/L was also sent to the BCS S.A.'s agent, BVF who, as I understand, loaded the BCS S.A. cargo into container EISU5648130 for movement pursuant to the SeaFrigo HB/L E35039700000.

(8) After SeaFrigo Marseille accepted the booking of the cargo subject to this litigation, SeaFrigo Marseille booked the same cargo with Hatsu, the underlying ocean carrier, for movement aboard the M/V STADT WISMAR voyage GX273W.

(9) Hatsu, in turn, issued a Sea Waybill ("B/L") to SeaFrigo Marseille showing thereon SeaFrigo Marseille as the B/L shipper and SeaFrigo USA as the B/L consignee. Because the Hatsu B/L is a non negotiable bill of lading. Hatsu sent SeaFrigo Marseille, as is its practice, only a copy of the front side of the Hatsu B/L, attached hereto as **Exhibit B** which my office forwarded to SeaFrigo USA.

(10) SeaFrigo Marseille is the sister company of SeaFrigo USA, in that both are owned by the same company and, thus, are branch offices of one another. Hence, SeaFrigo Marseille uses the SeaFrigo USA HB/L as its own HB/L and shows itself on the SeaFrigo USA HB/L as carrier. In this regard, I would point to the words "SeaFrigo USA, Inc." noted on the bottom left portion of the SeaFrigo HB/L E35039700000.

**ENTREPOTS & TRANSPORTS BARBE**
**SEAFRIGO**
ZA de l'Agavon 21, Avenue LAMARTINE
13170 LES PENNES MIRABEAU
Tél. 04 42 34 38 70 Fax 04 42 34 38 79

Marc Gourio

P.Pon ENTREPOTS & TRANSPORTS
BARBÉ
M. GOURIO

Dated: May 20, 2008

# GOURIO EXHIBIT A

# BILL OF LADING
## ORIGINAL



**SEAFRIGO** — YOUR REEFER LOGISTICS SPECIALIST

| SHIPPER (Principal or Seller-license and address) | BILL OF LADING NUMBER | E35039700000 |
|---|---|---|
| BCS S.A.<br>Z.I. LES FRARIES<br>42 740 SAINT PAUL EN JAREZ   FRANCE | EXPORT REFERENCES<br>BOOKING NUMBER | |
| | FORWARDING AGENT (References) | |
| CONSIGNEE (Non-Negociable unless consigned to order)<br>CANTONE & CO INC<br>14 EAST 60TH STREET<br>SUITE 400<br>NEW-YORK 10022   U.S.A. | POINT AND COUNTRY OF ORIGIN | |
| NOTIFY PARTY / INTERMEDIATE CONSIGNEE (Name and address)<br><br>SAME AS CONSIGNEE | RELEASE INSTRUCTIONS / Presentation OFFICE<br><br>PLEASE CONTACT :<br>SEAFRIGO INC - Maite CHAVARRI<br>Phone : 201.770.1143 | |

| PRE-CARRIAGE BY | PLACE OF RECEIPT | | |
|---|---|---|---|
| OCEAN VESSEL<br>STADT WISMAR | PORT OF LOADING<br>FOS-SUR-MER | NUMBER OF ORIGINAL B(s)/L<br>0 | |
| PORT OF DISCHARGE<br>NEW-YORK | PLACE OF DELIVERY<br>NEWARK, NJ | TYPE OF MOVE | CONTAINERIZED<br>☒ YES   ☐ NO |

| MARKS AND NUMBERS | NO. OF PKGS | DESCRIPTION OF PACKAGES AND GOODS<br>PARTICULARS DECLARED BY SHIPPER | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| EISU 564 813 / 0<br>SEAL : 0980958 | 1 500 | 01X40 REEFER H.C. SAID TO CONTAIN<br>BOXES OF BAKERY PRODUCTS<br>FREIGHT COLLECT - ON BORD<br>TEMPERATURE : -20°C<br>EXPRESS B/L - NO ORIGINAL REQUIRED<br>RYAN : N° 2332036 | 11 315.50 KGS | |

DECLARED VALUE ——————— READ CLAUSE 7.1
HEREOF CONCERNING EXTRA FREIGHT AND CARRIER'S LIMITATION OF LIABILITY.

FREIGHT RATES, CHARGES, WEIGHTS AND / OR MEASUREMENTS
SUBJECT TO CORRECTION     PREPAID    COLLECT

Received by Carrier for shipment by ocean vessel between port of loading and port of discharge, and for arrangement or procurement of pre-carriage from place of receipt and on-carriage to place of delivery, where stated above, the goods as specified above in apparent good order and condition unless otherwise stated. The goods to be delivered at the above mentioned port of discharge or place of delivery, whichever applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and/or Consignee agree to accepting this Bill of Lading. IN WITNESS WHEREOF three (3) original Bills of Lading have been signed, not otherwise stated above, one of which being accomplished the others shall be void.

PLACE AND DATE OF ISSUE: MARSEILLES

SEAFRIGO MARSEILLES
21, Avenue LAMARTINE
13170 LES PENNES-MIRABEAU
Tél. 04 42 34 38 70   Fax 04 42 34 38 79

TOTAL PREPAID
TOTAL COLLECT

SEAFRIGO USA, INC.

2876

AS CARRIER

09  22  2006
MO  DAY  YEAR

# TERMS AND CONDITIONS

**① CLAUSE PARAMOUNT :**
This Bill of Lading shall have effect subject to the provisions of the Hague Rules contained in the International Convention for the unification of certain rules relating to Bills of Lading dated Brussels the 25th August 1924 as amended by the protocols at Brussels on 23rd February 1968 and 21st December 1979. In the event that this Bill of Lading covers shipment to or from the United States, then the Bill Of Lading shall have effect subject to the provision of the Carriage of Goods by Sea Act of the United States 46 U.S.C. sections 1300-1315 (hereafter, 'COGSA'). The provisions stated in Hague rules or COGSA (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier.

**② DEFINITIONS :**
2.1 "Ship" means the vessel named in this Bill of Lading, or any conveyance owned, chartered, or operated by Carrier or used by Carrier for the performance of this contract.
2.2 "Carrier" means Entrepôts et Transports Barbé Seafrigo Le Havre, France on whose behalf this Bill of Lading has been signed.
2.3 "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.
2.4 "Package" is the largest individual unit of partially or completely covered or contained cargo made up by or for the Shipper which is delivered and entrusted to Carrier, including palletized units and each container stuffed and sealed by the Shipper or on its behalf, although the Shipper may have furnished a description of the contents of such sealed container on this Bill of Lading.
2.5 "Container" includes any container, trailer, transportable tank, lift van, flat, pallet, or any similar article of transport used to consolidate goods.

**③ SUBCONTRACTING :**
3.1 Carrier shall be entitled to subcontract on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods.
3.2 Every servant or agent or subcontractor of Carrier shall be entitled to the same rights, exemptions from liability, defenses and immunities to which Carrier is entitled. For these purposes, Carrier shall be deemed to be acting as agent or trustee for such servants or agents, who shall be deemed to be parties to the contract evidenced in this Bill of Lading.

**④ ROUTE OF TRANSPORT :**
4.1 Carrier is entitled to perform the transport in any reasonable manner and by any reasonable means, methods and routes.
4.2 The Ship shall have the liberty to, at any time, adjust navigational instruments, make trial trips, dry dock, go to repair yards, shift berths, take in fuel or stores, embark or disembark any persons, carry contraband and hazardous goods, sail with or without pilots and save or attempt to save life or property. Delays resulting from such activities shall not be deemed a deviation.

**⑤ HINDRANCES AFFECTING PERFORMANCE :**
5.1 Carrier shall use reasonable endeavors to complete transport and to deliver the goods at the place designated for delivery.
5.2 If at any time the performance of this contract as evidenced by this Bill of Lading in the opinion of Carrier is or will be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind including strike and if by virtue of the above Carrier has no duty to complete the performance of the contract, Carrier, whether or not the transport is commenced may elect to :
a) treat the performance of this contract as terminated and place the goods at Merchant's disposal at any place Carrier shall deem safe and convenient, or
(b) deliver the goods at the place of delivery.
In any event, Carrier shall be entitled to full freight for any goods received for transportation and additional compensation for extra costs resulting from the circumstances referred to above.

**⑥ BASIC LIABILITY :**
6.1 Carrier shall be liable for loss of or damage to the goods occurring between the time when it takes goods into its charge and the time of delivery.
6.2 If it is established that the loss of or damage to the goods occurred during sea carriage, liability shall be governed either by the Hague rules or by COGSA (see section 1).
6.3 If it cannot be determined when the loss of or damage to the goods occurred, it shall be presumed that such loss or damage occurred while the goods were in the custody of Carrier.
6.4 Carrier does not undertake that the goods shall be delivered at any particular time and shall not be liable for any direct or indirect losses caused by any delay.
6.5 Carrier shall not be liable for any loss or damage arising from :
(a) an act or omission of Merchant or person other than Carrier acting on behalf of Merchant from whom Carrier took the goods in charge;
(b) compliance with the instructions of any person authorized to give them,
(c) handling, loading, stowage or unloading of the goods by or on behalf of Merchant,
(d) inherent vice of the goods,
(e) lack or insufficiency of or defective condition of packing in the case of goods, which by their nature, are liable to wastage or damage when not packed or when not properly packed,
(f) insufficiency or inadequacy of marks or numbers on the goods, coverings or unit loads,
(g) fire, unless caused by actual fault or privity of Carrier,
(h) any cause or event which Carrier could not avoid and the consequences of which he could not prevent by the exercise of due diligence.
6.6 With respect to the transportation performed by Inland Carriers to the port of loading or from the port of discharge, the responsibility of Carrier shall be to procure transportation by such carriers (one or more) and such transportation shall be subject to the Inland Carrier's contracts of carriage, tariffs and any law compulsorily applicable.

**⑦ COMPENSATION FOR LOSS AND DAMAGE :**
7.1 Unless otherwise mandated by compulsorily applicable law, Carrier's liability for compensation for loss of or damage to goods shall in no case exceed the amount of US $500 per package or per customary freight unit, unless the Merchant, with the consent of Carrier, has declared by writing a higher value for the goods in the space provided on the front of this Bill of Lading and paid extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability. Where a container is stuffed by shipper or on its behalf, and the container is sealed when received by Carrier for shipment, the Carrier's liability will be limited to US $500 with respect to the contents of each such container, except when the Shipper declares by writing this value on the face hereof and pays additional charges on such declared value.
The freight charged on sealed containers when no higher valuation is declared by the Shipper is based on a value of US $500 per container.
However, Carrier shall not, in any case, be liable for an amount greater than the actual loss to the person entitled to make the claim.
7.2 In any case where Carrier's liability for compensation may exceed the amounts set forth in clause 7.1 above, compensation shall be calculated by reference to the value of the goods, according to their current market price, at the time and place they are delivered, or should have been delivered, in accordance with this contract.
7.3 If the value of the goods is less than US $500 per package or per customary freight unit, their value for compensation purposes shall be deemed to be the invoice value, plus freight and insurance, if paid.

**⑧ DESCRIPTION OF GOODS :**
Merchant warrants to Carrier that all particulars of the goods, including, without limitation, the marks, number, quantity and weight, furnished by Merchant are correct and Merchant shall indemnify Carrier against all losses arising from any inaccuracy.

**⑨ CARRIER'S CONTAINERS :**
9.1 If goods are not received by Carrier already in containers, Carrier may pack them in any type container.
9.2 Merchant shall be liable to Carrier for damage to Carrier's containers or equipment if such damage occurs while such equipment is in control of Merchant or his agents.
9.3 Merchant indemnifies Carrier for any damage or injury to persons or property caused by Carrier's containers during handling by or when in possession or control of Merchant.
9.4 Merchant undertakes to return such containers to Carrier within the time provided for in Carrier's applicable tariff; otherwise, Merchant shall pay Carrier for the demurrage or detention charges applicable to the containers.

**⑩ CONTAINER PACKED BY MERCHANT :**
If Carrier receives the goods already packed into containers :
1. This Bill of Lading is prima facie evidence of the receipt of the particular number of containers set forth, and that number only. Carrier accepts no responsibility with respect to the order and condition of the contents of the containers;
2. Merchant warrants that the stowage and seals of the containers are safe and proper and suitable for handling and carriage;
3. Delivery shall be deemed as full and complete performance when the containers are delivered by Carrier with the seals intact; and
4. Carrier has the right to open and inspect the containers at any time without notice to Merchant, and expenses resulting from same shall be borne by Merchant.

**⑪ DANGEROUS GOODS :**
11.1 Merchant may not tender goods of a dangerous nature without written application to Carrier and Carrier's acceptance of the same. In the application, Merchant must identify the nature of the goods with reasonable specificity as well as the names and addresses of the shippers and consignees.
11.2 Merchant shall distinctly and permanently mark the nature of the goods on the outside of the package and container and shall submit to Carrier or to the appropriate authorities all necessary documents required by law or by Carrier for the transportation of such goods.
11.3 If the goods subsequently, in the judgement of Carrier, become a danger to Carrier, the Ship, or other cargo, Carrier may dispose of the goods without compensation to Merchant and Merchant shall indemnify Carrier for any loss or expenses arising from such action.

**⑫ PERISHABLE GOODS :**
12.1 Goods of a perishable nature shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for transportation any Goods which require refrigeration without given written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the Goods by the Carrier in case of refrigerated Container(s) packed by or on behalf of the Merchant. The Merchant undertakes that the Goods have been properly stowed in the Container and that the thermostatic controls have been properly stowed in the Container and that the thermostatic controls have been adequately set by him before receipt of the Goods by the Carrier and, if necessary, that the Goods have been pre-chilled before the loading into the Container. The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze down Goods which has not been presented for stuffing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo presented at a higher temperature than that required for the transportation. If the above requirements are not complied with the carrier shall not be liable for any loss of or damage to the Goods howsoever arising.
12.2 The term "apparent good order and condition" when used in this Bill of Lading with reference to Goods which require refrigeration does not mean that the Goods, when received were verified by the Carrier as being at the designated carrying temperature.
12.3 The Carrier shall in no event be held liable for damage to Goods due to condensation.

**⑬ DECK CARGO :**
13.1 Carrier has the right to carry the goods in any container under deck or on deck.
13.2 Carrier is not required to note "on deck storage" on the face of this Bill of Lading and goods so carried shall constitute under deck storage for all purposes including the General Average.
13.3 Except as otherwise provided by any law applicable to this contract, if this Bill of Lading states that the cargo is stowed on deck, then Carrier shall not be liable for any non-delivery, misdelivery, delay or loss to goods carried on deck, whether or not caused by Carrier's negligence or the ship's unseaworthiness.

**⑭ HEAVY LIFT :**
14.1 Single packages with a weight exceeding 2,240 pounds gross not presented to Carrier in enclosed containers must be declared in writing by Merchant before receipt of the packages by Carrier. The weight of such packages must be clearly and durably marked on the outside of the package in letters and figures not less than two inches high.
14.2 If Merchant fails to comply with the above provisions, Carrier shall not be liable for any loss of or damage to the goods, and Merchant shall be liable for any loss of or damage to persons or property resulting from such failure and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of such failure.

**⑮ DELIVERY :**
15.1 Carrier shall have the right to deliver the goods at any time at any place designated by Carrier within the commercial or geographic limits of the port of discharge or place of delivery shown in this Bill of Lading.
15.2 Carrier's responsibility shall cease when delivery has been made to Merchant, any person authorized by Merchant to receive the goods, or in any manner or to any other person in accordance with the custom and usage of the port of discharge.
15.3 If goods should remain in Carrier's custody after discharge from the ship and possession is not taken by Merchant, after notice, within the time allowed in Carrier's applicable tariff, the goods may be considered to have been delivered to Merchant, and, at Carrier's option, may be stored at Merchant's expense.

**⑯ NOTICE OF CLAIM :**
16.1 Written notice of claims for loss of or damage to goods occurring or presumed to have occurred while in the custody of Carrier must be given to Carrier at the port of discharge before or at the time of removal of the goods by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery by Carrier. If such loss or damage is not apparent, Carrier must be given written notice within three (3) days of the delivery.

**⑰ FREIGHT AND CHARGES :**
17.1 Freight may be calculated on the basis of the particulars of the goods furnished by Merchant. Carrier and Merchant agree that it may be difficult or impossible to assess damages if freight is incorrectly declared. Therefore, in case of incorrect declaration of the goods, Merchant shall pay a sum equal to three times the difference between the correct freight and the freight charged as liquidated damages, notwithstanding any other sum having been stated herein as freight payable. Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by Carrier to Merchant are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon Carrier unless the Carrier in writing specifically undertakes the handling of transportation of the shipment at a specific rate.
17.2 Freight shall be deemed earned upon booking of goods by Carrier, whether the freight intended to be prepaid or collected at destination. Payment shall be in full and in cash, in the currency named in this Bill of Lading, or another currency at Carrier's option, with interest at 12% shall run from the date when freight and charges are due and not returnable in any event. If the services of a freight forwarder are used for this transportation, those services shall be deemed to be performed as agent of Merchant and payment of freight to the freight forwarder is not payment to Carrier. Full freight shall be paid on damaged or unsound goods. In any referral for collection or action against the Merchant for monies due to Carrier, upon recovery by the Carrier, the Merchant shall pay the expenses of collection and/or litigation, including reasonable attorney's fees.
17.3 Merchant shall be liable for all dues, duties, fines, taxes and charges, including consular fees, levied on the goods. Merchant shall be liable for return freight and charges on the goods if they are refused export or import by any government.
17.4 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally liable to Carrier for the payment of all freight and charges, including advances.
17.5 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally indemnify the Carrier for all claims, fines, penalties, damages, costs and other amounts which may be incurred or imposed upon the Carrier by reason of any breach of the Merchant of any of the provisions of this Bill of Lading or of any statutory or regulatory requirements.

**⑱ LIEN :**
The Carrier shall have a general lien on any and all property (and documents relating thereto) of the Merchant, in his possession, custody or control or en route, for all claims for charges, expenses or advances incurred by the Carrier in connection with any shipments or operations of the Merchant and if such claim remains unsatisfied for ten (10) days after demand for its payment is maid, the Carrier may sell at public auction or private sale or otherwise dispose of the goods, upon ten (10) days written notice, registered mail (R.R.R.) to the Merchant, the goods, wares and/or merchandise or so much necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the amount due the Carrier. Any surplus from such sale shall be transmitted to the Merchant, and the Merchant shall be liable for any deficiency in the sale. If the goods are not claimed during a reasonable time in the Carrier opinion, the Carrier will make at his discretion and subject to his lien and without responsibility auction, sale, abandon or otherwise dispose of the goods at the risk and expenses of the Merchant.

**⑲ TIME BAR :**
Carrier shall be discharged from all liability for loss of or damage to goods unless suit is brought within nine (9) months after delivery of the goods or the date when the goods should have been delivered. The time bar for overcharge claims shall be that set forth in Carrier's applicable tariff or thirty six (36) months, whichever is shorter and of legal effect under the laws of the country having jurisdiction over this contract.

**⑳ JURISDICTION :**
Disputes arising under this Bill of Lading shall be determined by the Tribunal of Commerce at Le Havre under the laws of France, and no other court shall have jurisdiction with regards to any such action.

**㉑ GENERAL AVERAGE :**
21.1 General Average shall be adjusted at New York, or any other port at Carrier's option, according to the York-Antwerp Rules of 1974. The General Average statement shall be prepared by adjusters appointed by Carrier.
21.2 In the event of accident, damage, danger or disaster after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for the consequence of which Carrier is not responsible by statute, contract or otherwise, Merchant shall contribute with Carrier in General average to the payment of any sacrifices, loss or expense of a General Average nature that may be made or incurred, and shall pay salvage or special charges in respect of the goods. If a salving vessel is owned or operated by Carrier, Salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**㉒ BOTH-TO-BLAME COLLISION CLAUSE :**
If the ship comes into collision with another vessel as a result of negligence of the other vessel and any negligence or fault on the part of Carrier or its servants or subcontractors, Merchant shall idemnify Carrier against all loss or liability to the other or non-carrying vessel or her owners, insofar as such loss or liability represents loss of, or damage to, or any claim what so ever of Merchant paid or payable by the other or non-carrying vessel or her owners to Merchant and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying ship or her owner. This provision shall apply as well where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault with respect to a collision or contact.

**㉓ CARRIER'S TARIFFS :**
23.1 The goods carried under this Bill of Lading are also subject to all the terms and conditions of tariff(s) on file with the Federal Maritime Commission, the Interstate Commerce Commission or any other regulatory agency which governs a particular portion of the carriage and the terms are incorporated herein as part of the terms and conditions of this Bill of Lading.
23.2 Copies of Carrier's tariffs may be obtained from carrier or its agents upon request or from the governmental body with whom the tariff has been filed.

**㉔ SEVERABILITY :**
The terms of this Bill of Lading shall be severable, and, if any part or term hereof shall be held invalid, such holding shall not affect the validity of enforceability of any other part or term hereof.

**㉕ VARIATION OF THE CONTRACT :**
No servant or agent of the Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by the Carrier.

# GOURIO EXHIBIT B

# HATSU MARINE

## SEA WAYBILL
### NON-NEGOTIABLE

| | |
|---|---|
| **(2) Shipper/Exporter** | **(5) Document No.** |
| SEAFRIGO<br>Z.A. DE L'AGAVON<br>21 AVENUE LAMARTINE<br>13170 LE PENNES MIRABEAU - FRANCE | 540600103855 |
| Shipper code | **(6) Export References**<br>IME 350397 |
| **(3) Consignee (complete name and address)**<br>SEAFRIGO INC<br>1 ENTERPRISE AV<br>SEACAUCUS NJ 07094<br>USA | **(7) Forwarding Agent/References** |
| **(4) Notify Party (complete name and address)**<br>SEAFRIGO INC<br>1 ENTERPRISE AV<br>SEACAUCUS NJ 07094<br>USA | **(8) Point and Country of Origin (for the Merchant's reference only)** |
| | **(9) Also Notify Party (complete name and address)** |
| Notify code | |
| **(12) Pre-carriage by** | **(13) Place of Receipt/Date**<br>FOS-SUR-MER |
| **(14) Ocean Vessel/Voy. No.**<br>STADT WISMAR GX273W | **(15) Port of Loading**<br>FOS-SUR-MER |
| **(16) Port of Discharge**<br>NEW YORK, NY | **(17) Place of Delivery**<br>NEW YORK, NY |

Received for carriage as below in apparent good order and condition, unless otherwise stated hereon, the Goods specified in the below particulars. Delivery of the Goods will be made to the Consignee or its authorized representative upon proper proof of identity and authorization without the need of producing or surrendering a copy of this Waybill.

**(10) Onward Inland Routing/Export Instructions (for the Merchant's reference only)**

---

### Particulars furnished by the Merchant

| (18) Container No. And Seal No. Marks & Nos. | (19) Quantity And Kind of Packages | (20) Description of Goods | (21) Measurement (M³) Gross Weight (KGS) |
|---|---|---|---|
| CONTAINER NO. / SEAL NO.<br>EISU5648130/4RH/0980958<br>SEAL NO. 0980958 | 1 X 4RH | 1500 CTNS (REEFER HI-CUBE)<br>1 500 CARTONS OF FROZEN BAKERY PRODUCTS<br>TEMPERATURE SET AT -20.0 C.<br>THC : PREPAID<br>WHARFAGE : PREPAID<br>REEFER CONTAINER<br><br>"OCEAN FREIGHT PREPAID"<br>SHIPPER'S LOAD & COUNT | 65.0000 CBM<br>11,315.500 KGS |

**(22) TOTAL NUMBER OF CONTAINERS OR PACKAGES (IN WORDS):** ONE (1) CONTAINER ONLY

**(23)** Declared Value $ _____
If Merchant enters actual value of Goods and pays the applicable ad valorem tariff rate, Carrier's package limitation shall not apply.

| (24) FREIGHT & CHARGES | Revenue Tons | Rate | Per | Prepaid | Collect |
|---|---|---|---|---|---|
| | | | | | |

| (25) Waybill No.<br>HTML<br>540600103855 | (27) Number of Original Waybills<br>NIL (0) | (29) Prepaid at<br>LE HAVRE | (30) Collect at |
|---|---|---|---|
| (26) Service Type/Mode<br>FCL/FCL  O/O | (28) Place and Date of Issue<br>LE HAVRE SEP.22,2006 | (31) Exchange Rate | (32) Exchange Rate |
| | (33) Laden on Board<br>SEP.22,2006<br>STADT WISMAR GX273W<br>FOS SUR MER | By<br>AS AGENTS FOR THE CARRIER HATSU MARINE LIMITED | NON-NEGOTIABLE (R) |

FORM NO. DOC-003-02   TERMS OF BILL OF LADING ARE CONTINUED ON THE BACK HEREOF AND ENLARGED VERSION OF BACK CLAUSE IS AVAILABLE ON www.hatsu-marine.com