UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CV 6602 (PKL)

---

CANTONE & CO., INC.,

                                    Plaintiff,

        - against -

SEAFRIGO a/k/a SEAFRIGO
MARSEILLE,

                                    Defendant.

---

**DECLARATION**

Pursuant to 28 U.S.C.§1746, Olivier Barbeyrac declares under penalty of perjury under

the laws of the United States of America that the following statements are true and correct:

(1)   I am the Director of Sales of SeaFrigo USA, Inc. ("SeaFrigo USA") whose

principal office is located at 1 Enterprise Avenue, Secaucus, New Jersey

07094 and have been in this position since February, 2007.  Previously I was

the Regional Sales manager of SeaFrigo USA and was in that position from

January 2004 to when I assumed the position of Director of Sales in 2007.

This declaration is given on personal knowledge and in support of SeaFrigo's

motion to dismiss plaintiff's complaint and vacate the Rule B attachment of

US$60,000.00 belonging to SeaFrigo Marseille.

(2)   I am familiar with the booking arrangements for the shipment subject to the

SeaFrigo House Bill of Lading ("HB/L") no. E35039700000 dated

September 22, 2006, a copy of which is attached hereto as **Exhibit A.**

(3)   On September 1, 2006, plaintiff, Cantone, contacted SeaFrigo USA to

inquire about a rate for moving a 40' foot refrigerated ("reefer") container

from Fos, France to Newark, New Jersey. I sent him a Sales Quote, a copy of

which is attached hereto as **Exhibit B**. Thereafter, the cargo subject to the Sales Quote was booked by the HB/L shipper BCS S.A. with SeaFrigo Marseille who prepared the SeaFrigo HB/L E35039700000 (Exhibit A). SeaFrigo Marseille, in turn, booked the same cargo with Hatsu Marine ("Hatsu") for movement of the cargo pursuant to the Hatsu Bill of lading ("B/L") no. 540600103855 which reflects SeaFrigo Marseille and SeaFrigo USA  as the B/L shipper and consignee, respectively, a front side copy attached hereto as **Exhibit C**.

(4)  SeaFrigo USA has been issued the Federal Maritime Commission ("FMC") Ocean Transportation Intermediary ("OTI") license no. 00361NF dated April 16, 2004.  This FMC OTI license allows SeaFrigo USA to operate as an ocean freight forwarder and/or a Non-Vessel Operating Common Carrier ("NVOCC"), a copy attached hereto as **Exhibit D**.

(5)  Under the SeaFrigo USA OTI license for NVOCC activities, SeaFrigo Marseille prepared the above mentioned SeaFrigo HB/L no. E35039700000 and showed itself as the carrier since it is a sister affiliated company of SeaFrigo USA in that both are owned by the same corporate parent, Entrepots Et Transports Barbe SeaFrigo Le Havre, France. Both SeaFrigo Marseille and SeaFrigo USA consider themselves as branch offices of one another and it is, thus, the internal practice for each to prepare the  SeaFrigo USA standardized HB/L noting itself as the carrier depending on the direction of the trade. For example and as relevant here, for the cargo moving from Fos, France to Newark, New Jersey pursuant to the HB/L no. E35039700000 SeaFrigo

Marseille showed itself as the carrier and SeaFrigo USA acted as its handling agent in the United States including to provide the arrival notice to the HB/L U.S. consignee Cantone, effect delivery of the cargo, as required, and to collect the freight if the movement was a "collect" shipment. Conversely, when cargo moves from the United States to France, SeaFrigo USA will prepare the HB/L showing itself as the carrier and use SeaFrigo Marseille as its handling agent to performing the same type of services in France as SeaFrigo USA would do with cargo coming into the United States.

(6) That SeaFrigo HB/L no. E35039700000 is the bill of lading of SeaFrigo USA is no better illustrated then by the fact that at the lower left portion of the aforementioned HB/L there is printed the words "SeaFrigo USA, Inc.".

(7) SeaFrigo Marseille is part of the Condigel Group which offers logistical services worldwide. As can be seen form its web site [See, **Exhibit E** hereto], both SeaFrigo Marseille and SeaFrigo USA are branch offices of the Condigel Group and work together on shipments between France and the United States.

(8) The backside terms and conditions of the SeaFrigo HB/L no. E35039700000 are the same terms and conditions that are on the backsides of all SeaFrigo bills of lading since SeaFrigo first began NVOCC operations on or about April 16, 2004. This includes HB/L Clause 20 ("jurisdiction") which states:

> Disputes arising under this Bill of Lading shall be determined by the Tribunal of Commerce at Le Havre under the laws of France and no other shall have jurisdiction with regard to any such action.

(9)   Being that SeaFrigo USA is an FMC licensed NVOCC, SeaFrigo USA is required by the FMC common carrier tariff filing regulations to publish a website tariff for public access to and viewing of the SeaFrigo's rates, charges, regulations, rules and, as is relevant here, the backside HB/L terms and conditions. In this latter regard, 46 C.F.R. 520.4(a)(5) of the said FMC tariff filing regulations requires that SeaFrigo USA's publish its tariff:

> (5) Include sample copies of any <u>bill of lading</u>, contract of affreightment or other document evidencing the transportation agreement (underlining added).

(10) In conjunction with the above, Rule 8 of the SeaFrigo USA website tariff, a copy attached hereto as **Exhibit F**, shows the same terms and conditions text as shown on the backside of the SeaFrigo HB/L E35039700000 including the language of HB/L Clause 20 ("Jurisdiction"), as quotes in para. 7 above.

(11) The Rule 8 terms and conditions of the SeaFrigo HB/L have not changed since the time that SeaFrigo USA first commenced NVOCC operations and filed its tariff.

(12) I would note that HB/L Clause 23 ("Carrier's Tariff") on the backside of the SeaFrigo HB/L E35037900000 [which is on the backsides of all SeaFrigo HBs/L] provides, in relevant part:

> 23.1   The goods carried under this Bill of Lading are also subject to all the terms and conditions of tariff(s) on file with the Federal Maritime Commission,… and the terms are incorporated herein as part of the terms and conditions of the Bill of Lading,.

> 23.2   Copies of Carrier's tariffs may be obtained from the carrier or its agents upon request or from the governmental body with whom the tariff has been filed.

(13) Accordingly, it is an easy matter for any shipper of cargo moving pursuant to a SeaFrigo HB/L to become aware of the SeaFrigo HB/L backside terms and conditions by simply asking SeaFrigo for same or looking at those terms and conditions by logging on to the SeaFrigo tariff website.



_____
Olivier Barbeyrac

Dated:  May 19 , 2008

# BARBEYRAC EXHIBIT A

# BILL OF LADING
## ORIGINAL



**SEAFRIGO**
*YOUR REEFER LOGISTICS SPECIALIST*

| SHIPPER (Principal or Seller-license and address) | BILL OF LADING NUMBER | E35039700000 |
|---|---|---|
| BCS S.A.<br>Z.I. LES FRARIES<br><br>42 740 SAINT PAUL EN JAREZ                    FRANCE | **EXPORT REFERENCES**<br>**BOOKING NUMBER** | |
| | **FORWARDING AGENT (References)** | |

| CONSIGNEE (Non-Negotiable unless consigned to order) | POINT AND COUNTRY OF ORIGIN |
|---|---|
| CANTONE & CO INC<br>14 EAST 60TH STREET<br>SUITE 400<br>NEW-YORK 10022                         U.S.A. | |

| NOTIFY PARTY / INTERMEDIATE CONSIGNEE (Name and address) | RELEASE INSTRUCTIONS / Presentation OFFICE |
|---|---|
| SAME AS CONSIGNEE | PLEASE CONTACT :<br>SEAFRIGO INC - Maite CHAVARRI<br>Phone : 201.770.1143 |

| PRE-CARRIAGE BY | PLACE OF RECEIPT | | |
|---|---|---|---|
| **OCEAN VESSEL**<br>STADT WISMAR | **PORT OF LOADING**<br>FOS-SUR-MER | **NUMBER OF ORIGINAL B(s)/L.**<br>0 | |
| **PORT OF DISCHARGE**<br>NEW-YORK | **PLACE OF DELIVERY**<br>NEWARK, NJ | **TYPE OF MOVE** | **CONTAINERIZED**<br>☒YES  ☐NO |

| MARKS AND NUMBERS | NO.OF PKGS | DESCRIPTION OF PACKAGES AND GOODS<br>PARTICULARS DECLARED BY SHIPPER | GROSS WEIGHT | MEASUREMENT |
|---|---|---|---|---|
| EISU 564 813 / 0<br>SEAL : 0980958 | 1 500 | 01X40 REEFER H.C. SAID TO CONTAIN<br>BOXES OF BAKERY PRODUCTS<br>FREIGHT COLLECT - ON BORD<br>TEMPERATURE : -20°C<br>EXPRESS B/L - NO ORIGINAL REQUIRED<br>RYAN : N° 2332036 | 11 315.50 KGS | |

ORIGINAL

DECLARED VALUE ———————————— READ CLAUSE 7.1
HEREOF CONCERNING EXTRA FREIGHT AND CARRIER'S LIMITATION OF LIABILITY.

### FREIGHT RATES, CHARGES, WEIGHTS AND / OR MEASUREMENTS

SUBJECT TO CORRECTION

| | PREPAID | COLLECT |
|---|---|---|
| | | |
| TOTAL PREPAID | | |
| TOTAL COLLECT | | |

Received by Carrier for shipment by ocean vessel between port of loading and port of discharge, and for arrangement or procurement of pre-carriage from place of receipt and on-carriage to place of delivery, where stated above, the goods as specified above in apparent good order and condition unless otherwise stated. The goods to be delivered at the above mentioned port of discharge or place of delivery, whichever applicable, subject always to the exceptions, limitations, conditions and liberties set out on the reverse side hereof, to which the Shipper and/or Consignee agree to accepting this Bill of Lading. IN WITNESS WHEREOF three (3) original Bills of Lading have been signed, not otherwise stated above, one of which being accomplished the others shall be void.

PLACE AND DATE
OF ISSUE

SEAFRIGO MARSEILLES
ZI Avenue LAMARTINE
13170 LES PENNES MIRABEAU
Tél. 04 42 34 38 70   Fax   04 42 34 38 79

AS CARRIER

SEAFRIGO USA, INC.

| | MO | DAY | YEAR |
|---|---|---|---|
| | 09 | 22 | 2006 |

2876

**❶ CLAUSE PARAMOUNT :**
This Bill of Lading shall have effect subject to the provisions of the Hague Rules contained in the International Convention for the unification of certain rules relating to Bills of Lading dated Brussels the 25th August 1924 as amended by the protocols at Brussels on 23rd February 1968 and 21st December 1979. In the event that this Bill of Lading covers shipment to or from the United States, then the Bill of Lading shall have effect subject to the provision of the Carriage of Goods by Sea Act of the United States 46 U.S.C. sections 1300-1315 (hereafter, 'COGSA'). The provisions stated in Hague rules or COGSA (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier.

**❷ DEFINITIONS :**
2.1 "Ship" means the vessel named in this Bill of Lading, or any conveyance owned, chartered, or operated by Carrier or used by Carrier for the performance of this contract.
2.2 "Carrier" means Entrepôts et Transports Berbé Seafrigo Le Havre, France on whose behalf this Bill of Lading has been signed.
2.3 "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.
2.4 "Package" is the largest individual unit of partially or completely covered or contained cargo made up by or for the Shipper which is delivered and entrusted to Carrier, including palletized units and each container stuffed and sealed by the Shipper or on its behalf, although the Shipper may have furnished a description of the contents of such sealed container on this Bill of Lading.
2.5 "Container" includes any container, trailer, transportable tank, tilt van, flat, pallet, or any similar article of transport used to consolidate goods.

**❸ SUBCONTRACTING :**
3.1 Carrier shall be entitled to subcontract on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods.
3.2 Every servant or agent or subcontractor of Carrier shall be entitled to the same rights, exemptions form liability, defenses and immunities to which Carrier is entitled. For these purposes, Carrier shall be deemed to be acting as agent or trustee for such servants or agents, who shall be deemed to be parties to the contract evidenced in this Bill of Lading.

**❹ ROUTE OF TRANSPORT :**
4.1 Carrier is entitled to perform the transport in any reasonable manner and by any reasonable means, methods and routes.
4.2 The Ship shall have the liberty to, at any time, adjust navigational instruments, make trial trips, dry dock, go to repair yards, shift berths, take in fuel or stores, embark or disembark any persons, carry contraband and hazardous goods, sail with or without pilots and save or attempt to save life or property. Delays resulting from such activities shall not be deemed a deviation.

**❺ HINDRANCES AFFECTING PERFORMANCE :**
5.1 Carrier shall use reasonable endeavors to complete transport and to deliver the goods at the place designated for delivery.
5.2 If at any time the performance of this contract as evidenced by this Bill of Lading in the opinion of Carrier is or will be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind including strike and if by virtue of the above Carrier has no duty to complete the performance of the contract, Carrier, whether or not the transport is commenced may elect to :
a) treat the performance of this contract as terminated and place the goods at Merchant's disposal at any place Carrier shall deem safe and convenient, or
b) deliver the goods at the place of delivery.
In any event, Carrier shall be entitled to full freight for any goods received for transportation and additional compensation for extra costs resulting from the circumstances referred to above.

**❻ BASIC LIABILITY :**
6.1 Carrier shall be liable for loss of or damage to the goods occurring between the time when it takes goods into its charge and the time of delivery.
6.2 If it is established that the loss of or damage to the goods occurred during sea carriage, liability shall be governed either by the Hague rules or by COGSA (see section 1).
6.3 If it cannot be determined when the loss of or damage to the goods occurred, it shall be presumed that such loss or damage occurred while the goods were in the custody of Carrier.
6.4 Carrier does not undertake that the goods shall be delivered at any particular time and shall not be liable for any direct or indirect losses caused by any delay.
6.5 Carrier shall not be liable for any loss or damage arising from :
(a) an act or omission of Merchant or person other than Carrier acting on behalf of Merchant from whom Carrier took the goods in charge,
(b) compliance with the instructions of any person authorized to give them,
(c) handling, loading, stowage or unloading of the goods by or on behalf of Merchant,
(d) inherent vice of the goods,
(e) lack of insufficiency of or defective condition of packing in the case of goods, which by their nature, are liable to wastage or damage when not packed or when not properly packed,
(f) insufficiency or inadequacy of marks or numbers on the goods, coverings or unit loads,
(g) fire, unless caused by actual fault or privity of Carrier,
(h) any cause or event which Carrier could not avoid and the consequences of which he could not prevent by the exercise of due diligence.
6.6 With respect to the transportation performed by Inland Carriers to the port of loading or from the port of discharge, the responsibility of Carrier shall be to procure transportation by such carriers (one or more) and such transportation shall be subject to the Inland Carrier's contracts of carriage, tariffs and any law compulsorily applicable.

**❼ COMPENSATION FOR LOSS AND DAMAGE :**
7.1 Unless otherwise mandated by compulsorily applicable law, Carrier's liability for compensation for loss of or damage to goods shall in no case exceed the amount of US $500 per package or per customary freight unit, unless the Merchant, with the consent of Carrier, has declared by writing a higher value for the goods in the space provided on the front of this Bill of Lading and paid extra freight per Carrier's tariff, in which case such higher value shall be the limit of Carrier's liability. Where a container is stuffed by shipper or on its behalf, and the container is sealed when received by Carrier for shipment, the Carrier's liability will be limited to US $500 with respect to the contents of each such container, except when the Shipper declares by writing the value on the face hereof and pays additional charges on such declared value.
The freight charged on sealed containers when no higher valuation is declared by the Shipper is based on a value of US $500 per container.

However, Carrier shall not, in any case, be liable for an amount greater than the actual loss to the goods entitled to make the claim.
7.2 In any case where Carrier's liability for compensation may exceed the amounts set forth in clause 7.1 above, compensation shall be calculated by reference to the value of the goods, according to their current market price, at the time and place they are delivered, or should have been delivered, in accordance with this contract.
7.3 If the value of the goods is less than US $500 per package or per customary freight unit, their value for compensation purposes shall be deemed to be the invoice value, plus freight and insurance, if paid.

**❽ DESCRIPTION OF GOODS :**
Merchant warrants to Carrier that all particulars of the goods, including, without limitation, the marks, number, quantity and weight, furnished by Merchant are correct and Merchant shall indemnify Carrier against all losses arising from any inaccuracy.

**❾ CARRIER'S CONTAINERS :**
9.1 If goods are not received by Carrier already in containers, Carrier may pack them in any type container.
9.2 Merchant shall be liable to Carrier for damage to Carrier's container or equipment if such damage occurs while such equipment is in control of Merchant or his agents.
9.3 Merchant indemnifies Carrier for any damage or injury to persons or property caused by Carrier's containers during handling by or when in possession or control of Merchant.
9.4 Merchant undertakes to return such containers to Carrier within the time provided for in Carrier's applicable tariff; otherwise, Merchant shall pay Carrier for the demurrage or detention charges applicable to the containers.

**❿ CONTAINER PACKED BY MERCHANT :**
If Carrier receives the goods already packed into containers :
1. This Bill of Lading is prima facie evidence of the receipt of the particular number of containers set forth, and that number only. Carrier accepts no responsibility with respect to the order and condition of the contents of the containers;
2. Merchant warrants that the stowage and seals of the containers are safe and proper and suitable for handling and carriage;
3. Delivery shall be deemed as full and complete performance when the containers are delivered by Carrier with the seals intact; and
4. Carrier has the right to open and inspect the containers at any time without notice to Merchant, and expenses resulting from same shall be borne by Merchant.

**⓫ DANGEROUS GOODS :**
11.1 Merchant may not tender goods of a dangerous nature without written application to Carrier and Carrier's acceptance of the same. In the application, Merchant must identify the nature of the goods with reasonable specificity as well as the names and addresses of the shippers and consignees.
11.2 Merchant shall distinctly and permanently mark the nature of the goods on the outside of the package and container and shall submit to Carrier or to the appropriate authorities all necessary documents required by law or by Carrier for the transportation of such goods.
11.3 If the goods subsequently, in the judgement of Carrier, become a danger to Carrier, the Ship, or other cargo, Carrier may dispose of the goods without compensation to Merchant and Merchant shall indemnify Carrier for any loss or expenses arising from such action.

**⓬ PERISHABLE GOODS :**
12.1 Goods of a perishable nature shall be carried in ordinary Containers without special protection, services or other measures unless there is noted on the reverse side of this Bill of Lading that the Goods will be carried in a refrigerated, heated, electrically ventilated or otherwise specially equipped Container or are to receive special attention in any way. The Merchant undertakes not to tender for transportation any Goods which require refrigeration without given written notice of their nature and the required temperature setting of the thermostatic controls before receipt of the Goods by the Carrier in case of refrigerated Container(s) packed by or on behalf of the Merchant. The Merchant undertakes that the Goods have been properly stowed in the Container and that the thermostatic controls have been properly showed in the Container and that the thermostatic controls have been adequately set by him before receipt of the Goods by the Carrier and, if necessary, that the Goods have been pre-chilled before the loading into the Container. The Merchant's attention is drawn to the fact that refrigerated Containers are not designed to freeze down Goods which has not been presented for stuffing at or below its designated carrying temperature and the Carrier shall not be responsible for the consequences of cargo presented at a higher temperature than that required for the transportation. If the above requirements are not complied with the carrier shall not be liable for any loss of or damage to the Goods howsoever arising.
12.2 The term "apparent good order and condition" when used in this Bill of Lading with reference to Goods which require refrigeration does not mean that the Goods, when received were verified by the Carrier as being at the designated carrying temperature.
12.3 The Carrier shall in no event be held liable for damage to Goods due to condensation.

**⓭ DECK CARGO :**
13.1 Carrier has the right to carry the goods in any container under deck or on deck.
13.2 Carrier is not required to note "on deck storage" on the face of this Bill of Lading and goods so carried shall constitute under deck storage for all purposes including the General Average.
13.3 Except as otherwise provided by any law applicable to this contract, if this Bill of Lading states that the cargo is stowed on deck, then Carrier shall not be liable for any non-delivery, misdelivery, delay or loss to goods carried on deck, whether or not caused by Carrier's negligence or the ship's unseaworthiness.

**⓮ HEAVY LIFT :**
14.1 Single packages with a weight exceeding 2.240 pounds gross net presented to Carrier in enclosed containers must be declared in writing by Merchant before receipt of the packages by Carrier. The weight of such packages must be clearly and durably marked on the outside of the package in letters and figures not less than two inches high.
14.2 If Merchant fails to comply with the above provisions, Carrier shall not be liable for any loss of or damage to the goods, and Merchant shall be liable for any loss of or damage to persons or property resulting from such failure and Merchant shall indemnify Carrier against any loss or liability suffered or incurred by Carrier as a result of such failure.

**⓯ DELIVERY :**
15.1 Carrier shall have the right to deliver the goods at any time at any place designated by Carrier within the commercial or geographic limits of the port of discharge or place of delivery shown in this Bill of Lading.
15.2 Carrier's responsibility shall cease when delivery has been made to Merchant, any person authorized by Merchant to receive the goods, or in any manner or to any other person in accordance with the custom and usage of the port of discharge.
15.3 If goods should remain in Carrier's custody after discharge from the ship and possession is not taken by Merchant, after notice, within the time allowed in Carrier's applicable tariff, the goods may be considered to have been delivered to Merchant, and, at Carrier's option, may be stored at Merchant's expense.

**⓰ NOTICE OF CLAIM :**
16.1 Written notice of claims for loss of or damage to goods occurring or presumed to have occurred while in the custody of Carrier must be given to Carrier at the port of discharge before or at the time of removal of the goods by one entitled to delivery. If such notice is not provided, removal shall be prima facie evidence of delivery by Carrier. If such loss or damage is not apparent, Carrier must be given written notice within three (3) days of the delivery.

**⓱ FREIGHT AND CHARGES :**
17.1 Freight may be calculated on the basis of the particulars of the goods furnished by Merchant. Carrier and Merchant agree that it may be difficult or impossible to assess damages if freight is incorrectly declared. Therefore, in case of incorrect declaration of the goods, Merchant shall pay a sum equal to three times the difference between the correct freight and the freight charged as liquidated damages, notwithstanding any other sum having been stated herein as freight payable. Quotations as to fees, rates of duty, freight charges, insurance premiums or other charges given by Carrier to Merchant are for informational purposes only and are subject to change without notice and shall not under any circumstances be binding upon Carrier unless the Carrier in writing specifically undertakes the handling of transportation of the shipment at a specific rate.
17.2 Freight shall be deemed earned upon booking of goods by Carrier, whether the freight be intended to be prepaid or collected at destination. Payment shall be in full and in cash, in the currency named in this Bill of Lading, or another currency at Carrier's option, interest at 12% shall run from the date when freight and charges are due and not returnable in any event. If the services of a freight forwarder are used for this transportation, those services shall be deemed to be performed as agent of Merchant and payment of freight to the freight forwarder is not payment to Carrier. Full freight shall be paid on damaged or unsound goods. In any interest for collection or action against the Merchant for monies due to Carrier, upon recovery by the Carrier, the Merchant shall pay the expenses of collection and/or litigation, including reasonable attorney's fees.
17.3 Merchant shall be liable for all dues, duties, fines, taxes and charges, including consular fees, levied on the goods. Merchant shall be liable for return freight and charges on the goods if they are refused export or import by any government.
17.4 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally liable to Carrier for the payment of all freight and charges, including advances.
17.5 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally indemnify the Carrier for all claims, fines, penalties, damages, costs and other amounts which may be incurred or imposed upon the Carrier by reason of any breach of the Merchant of any of the provisions of this Bill of Lading or of any statutory or regulatory requirements.

**⓲ LIEN :**
The Carrier shall have a general lien on any and all property (and documents relating thereto) of the Merchant, in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by the Carrier in connection with any shipments or operations of the Merchant and if such claim remains unsatisfied for ten (10) days after demand for its payment is made, the Carrier may sell at public auction or private sale or otherwise dispose of the goods, upon ten (10) days written notice, registered mail (R.R.R.) to the Merchant, the goods, wares and/or merchandise or so much necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the amount due the Carrier. Any surplus from such sale shall be transmitted to the Merchant, and the Merchant shall be liable for any deficiency in the sale. If the goods are not claimed during a reasonable time in the Carrier option, the Carrier will make at his discretion and subject to his lien and without responsibility auction, sale, abandon or otherwise dispose of the goods at the risk and expenses of the merchant.

**⓳ TIME BAR :**
Carrier shall be discharged from all liability for loss of or damage to goods unless suit is brought within nine (9) months after delivery of the goods or the date when the goods should have been delivered. The time bar for overcharge claims shall be that set forth in Carrier's applicable tariff or thirty six (36) months, whichever is shorter and of legal effect under the laws of the country having jurisdiction over this contract.

**⓴ JURISDICTION :**
Disputes arising under this Bill of Lading shall be determined by the Tribunal of Commerce at Le Havre under the laws of France, and no other court shall have jurisdiction with regards to any such action.

**㉑ GENERAL AVERAGE :**
21.1 General Average shall be adjusted at New York, or any other port at Carrier's option, according to the York-Antwerp Rules of 1974. The General Average statement shall be prepared by adjusters appointed by Carrier.
21.2 In the event of accident, damage, danger or disaster after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for the consequences of which Carrier is not responsible by statute, contract or otherwise, Merchant shall contribute with Carrier in General average to the payment of any sacrifice, loss or expense of a General Average nature that may be made or incurred, and shall pay salvage or special charges in respect of the goods. If a salving vessel is owned or operated by Carrier, Salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**㉒ BOTH-TO-BLAME COLLISION CLAUSE :**
If the ship comes into collision with another vessel as a result of negligence of the other vessel and any negligence or fault on the part of Carrier or its servants or subcontractors, Merchant shall indemnify Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of Merchant paid or payable by the other or non-carrying vessel or her owners to Merchant and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying ship or her owner. This provision shall apply as well where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

**㉓ CARRIER'S TARIFFS :**
23.1 The goods carried under this Bill of Lading are also subject to all the terms and conditions of tariff(s) on file with the Federal Maritime Commission, the Interstate Commerce Commission or any other regulatory agency which governs a particular portion of the carriage and the terms are incorporated herein as part of the terms and conditions of this Bill of Lading.
23.2 Copies of Carrier's tariffs may be obtained from carrier or its agents upon request or from the government body with whom the tariff has been filed.

**㉔ SEVERABILITY :**
The terms of this Bill of Lading shall be severable, and, if any part or term hereof shall be held invalid, such holding shall not affect the validity of enforceability of any other part or term hereof.

**㉕ VARIATION OF THE CONTRACT :**
No servant or agent of the Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by the Carrier.

# BARBEYRAC EXHIBIT B

# *SEAFRIGO* USA Inc 

1 Entreprise Avenue
PO Box 2608
Secaucus, NJ 07094
Tel: (201) 770 1143
Fax: (201) 867 9320

## SALES QUOTE # 06.09.0.001

| To: | Reto Cantone / Hospitality Group |
|---|---|
| From: | Olivier Barbeyrac / Seafrigo USA |
| Cc: | Nathalie Pincon-Daniel / Seafrigo Le Havre |
| Subject: | 40' reefer from door St Paul en Jarez to door Newark |
| Nbr. of pages (incl. this one) : 2 | Date : September 1st, 2006 |

Dear Reto,

Please kindly find hereafter our proposed rate for your shipments of 40' reefer of frozen bakery products from door St Paul en Jarez to door Newark :

| FOB charges | |
|---|---|
| Lumpsum from door St Paul en Jarez to FOB Fos | 1040.00 Euro per 40' reefer |
| Temperature recorder (if requested) | 40.00 Euro / recorder |
| AMS | 15.00 Euro / supplier |
| ISPS | 15.00 Euro / ctr |

The FOB charges include the pick up (incl. 2 hours free time for loading. Addtl hour : 50 Euro / hour) with a genset, the origin THC, the export customs clearance and the B/L fee. They do not include an additional stop for the customs clearance if necessary.

| Ocean Freight | Reefer Containers |
|---|---|
| From FOB Fos to door Newark | 3,410.00 US$ per 40' reefer |

| Surcharges | Levels |
|---|---|
| I.F.P – East Coast (subject to change without notice): | 886.00 USD / 40' |
| Chassis Usage Surcharge | Included in the ocean freight |
| Security BL | 30 USD |
| Insurance | 0.80% on (C&F Value + 10%) |

- **Validity:** September 30, 2006.

This tariff includes the ocean-freight, the THC in USA, the CAF, the CUC and the delivery (incl. 2 hours free time for the off-loading. Addtl hour : $75/hour).

This tariff does not include the import customs formalities in USA nor the marine insurance.

# BARBEYRAC EXHIBIT C

HATSU

# SEA WAYBILL

## NON-NEGOTIABLE

| (2) Shipper/Exporter | | (14) Document No. |
|---|---|---|
| SEAFRIGO<br>Z.A. DE L'AGAVON<br>21 AVENUE LAMARTINE<br>13170 LE PENNES MIRABEAU - FRANCE | | 540600103855 |
| | | (6) Export References<br>1ME 350397 |
| | Shipper code | |

| (3) Consignee (complete name and address) | (7) Forwarding Agent-References |
|---|---|
| SEAFRIGO INC<br>1 ENTERPRISE AV<br>SEACAUCUS NJ 07094<br>USA | |

| (4) Notify Party (complete name and address) | (8) Point and Country of Origin (for the Merchant's reference only) |
|---|---|
| SEAFRIGO INC<br>1 ENTERPRISE AV<br>SEACAUCUS NJ 07094<br>USA | |
| | (9) Also Notify Party (complete name and address) |
| Notify code | |

| (12) Pre-carriage by | (13) Place of Receipt/Date<br>FOS-SUR-MER | Received for carriage as below in apparent good order and condition, unless otherwise noted herein, the Goods specified in the below particulars. Delivery of the Goods will be made in exchange for this original Sea Waybill... |
|---|---|---|
| (14) Ocean Vessel/Voy. No.<br>STADT WISMAR GX273W | (15) Port of Loading<br>FOS-SUR-MER | (10) Onward Inland Routing/Export Instructions (for the Merchant's reference only) |
| (16) Port of Discharge<br>NEW YORK, NY | (17) Place of Delivery<br>NEW YORK, NY | |

### Particulars furnished by the Merchant

| (18) Container No. And Seal No.<br>Marks & Nos.<br>CONTAINER NO./ SEAL NO. | (19) Quantity And Kind of Packages | (20) Description of Goods | (21) Measurement (M)<br>Gross Weight (KGS) |
|---|---|---|---|
| EISU5648130/4RH/0980958<br><br>SEAL NO. 0980958 | 1 X 4RH | 1500 CTNS  (REEFER HI-CUBE)<br><br>1 500 CARTONS OF FROZEN BAKERY PRODUCTS<br>TEMPERATURE SET AT -20.0 C.<br>THC : PREPAID<br>WHARFAGE : PREPAID<br>REEFER CONTAINER<br><br><br>"OCEAN FREIGHT PREPAID"<br>SHIPPER'S LOAD & COUNT | 65.0000 CBM<br>11,315.500 KGS |

| (22) TOTAL NUMBER OF CONTAINERS OR PACKAGES (IN WORDS) | ONE  (1)  CONTAINER ONLY | (23)<br>Declared Value $<br>If Merchant enters actual value of Goods and pays the applicable ad valorem tariff rate, Carrier's package limitation shall not apply. |
|---|---|---|

| (24) FREIGHT & CHARGES | Revenue Tons | Rate | Per | Prepaid | Collect |
|---|---|---|---|---|---|
| | | | | | |

| (25) Waybill No.<br>HTML<br>540600103855 | (27) Number of Original Waybills<br>NIL  (0) | (29) Prepaid at<br>LE HAVRE | (30) Collect at |
|---|---|---|---|
| (26) Service Type/Mode<br>FCL/FCL   O/O | (28) Place and Date of Issue<br>LE HAVRE SEP.22,2006 | (31) Exchange Rate | (32) Exchange Rate |
| | (33) Laden on Board<br>SEP.22,2006<br>STADT WISMAR GX273W<br>FOS SUR MER | | |

FORM NO. DOC-003-02    (TERMS OF BILL OF LADING ARE CONTINUED ON THE BACK HEREOF AND ENLARGED VERSION OF BACK CLAUSE IS AVAILABLE ON www.hatsu-marine.com)

By _____

AS AGENTS FOR THE CARRIER   HATSU MARINE LIMITED

NON-NEGOTIABLE (1)

# BARBEYRAC EXHIBIT D

*Federal Maritime Commission*

*Washington, D.C. 20573-0001*

## OCEAN TRANSPORTATION INTERMEDIARY LICENSE
## OCEAN FREIGHT FORWARDER AND
## NON-VESSEL-OPERATING COMMON CARRIER

NO. 003616NF

THIS IS TO CERTIFY THAT

SEAFRIGO USA d/b/a SEAFRIGO USA

is the holder of an Ocean Transportation Intermediary license, and, as such, is duly authorized to carry on the business of providing ocean freight forwarding services and interstate shipped via an oceangoing common carrier from the United States, its territories or possessions and foreign countries and non-vessel-operating common carrier services for the carriage of goods by water between the United States, its territories or possessions and foreign countries.

This license is conferred pursuant to the authority contained in Section 19 of the Shipping Act of 1984, as amended by the Ocean Shipping Reform Act of 1998, and is subject to the provisions of said Act, Part 515 of Title 46 of the Code of Federal Regulations as it is or may be amended, and the pertinent provisions of other applicable regulations promulgated under the foregoing Act.

By authority of the Federal Maritime Commission

*Sandra L. Kusumoto*

Director
Bureau of Consumer Complaints and Licensing

Effective: APR 16 2004

# BARBEYRAC EXHIBIT E



2006 - © Copyright Condigel Group



Montoir de Bretagne
Marseille branch
Anvers branch

**USA**
**Canada**
**Argentina**
**Indian Ocean**

**Montoir de Bretagne:**

Rond Point de Gron Rue de la Lombarde

44 550 Montoir de Bretagne

France

Tel: + 33 (0)2 40 17 01 70

Fax: + 33 (0)2 40 17 01 79

E mail us

Rate request

**Marseille branch:**

ZA de l'agavon, 21 avenue Lamartine

13 170 Les Pennes Mirabeau

France

Tel: + 33 (0)4 42 34 38 70

Fax: + 33 (0)4 42 34 38 79

E mail us

Rate request

**Anvers branch**

Nieuwstraat 115 B

9190 Stekene

Belgium

Tel: + 32 3 789 21 40

Fax: + 32 3 789 22 46

E mail us

Rate request

|Top|

2006 - © Copyright Condigel Group



*Global Solutions*

**SEAFRIGO**
*YOUR REEFER LOGISTICS SPECIALIST*

| Home | Company | Services | Offices | Web access | Links |

**Trucking**
**Packaging**
**Quality control**
**Storage**
**Fresh fruits**
**Stevedoring**

**International logistics**

## International logistics

- Deep frozen and refregrated products maritime shipment
- Import or export customs clearance and transit formalities
- Consolidation LCL/LCL
- Personalized consolidation LCL/FCL
- Full container FCL/FCL
- Worldwide network
- NVOCC under Seafrigo house B/L
- EDI (Electronic Data Interchange)

Rate request

2006 - © Copyright Condigel Group

# BARBEYRAC EXHIBIT F

```
-----------------------------------------------------------------------------------------------------------------------
                                                            D
-----------------------------------------------------------------------------------------------------------------------
                                              SEAFRIGO USA INC.
                                                 Tariff Code
                                                 Rule Report
                          USA/WORLD PORTS AND POINTS IMPORT/EXPORT FREIGHT RATE TARIFF
                                                  011198-002
                                                       8
-----------------------------------------------+-----------------------------------------------------------------------
                                              DXI Tariff Report
                                                   Page     1
                           Access date: 28Apr2008    Print date: 23Apr2008
-----------------------------------------------------------------------------------------------------------------------
       Except as otherwise provided, rates apply per 1000.0 KGS or 1.0 CBM, whichever produces the greater revenue.
-----------------------------------------------------------------------------------------------------------------------
   RULE:   8      Effective: 07Feb2008
   ( C )
```

**BILL(S) OF LADING**

**TERMS AND CONDITIONS**

**1. CLAUSE PARAMOUNT :**

This Bill of Lading shall have effect subject to the provisions of the Hague Rules contained in the International Convention for the unification of certain rules relating to Bills of Lading dated Brussels the 25th August 1924 as amended by the protocol at Brussels on 23rd February 1968 and 21st December 1979. In the event that this Bill of Lading covers shipment to or from the United States, then the Bill Of Lading shall have effect subject to the provision of the Carriage of Goods by Sea Act of the United States 46 U.S.C. sections 1300-1315 (hereafter, 'COGSA'). The provisions stated in Hague rules or COGSA (except as may be otherwise specifically provided herein) shall govern before the goods are loaded on and after they are discharged from the ship and throughout the entire time the goods are in the custody of the carrier.

**2. DEFINITIONS :**

2.1 "Ship" means the vessel named in this Bill of Lading, or any conveyance owned, chartered, or operated by Carrier or used by Carrier for the performance of this contract.

2.2 "Carrier" means Entrepots et Transports Barbe Seafrigo Le Havre, France on whose behalf this Bill of Lading has been signed.

2.3 "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.

2.4 "Package" is the largest individual unit of partially or completely covered or contained cargo made up by or for the Shipper which is delivered and entrusted to Carrier, including palletized units and each container stuffed and sealed by the Shipper or on its behalf, although the Shipper may have furnished a description of the contents of such sealed container on this Bill of Lading.

2.5 "Container" includes any container, trailer, transportable tank, lift van, flat, pallet, or any similar article of transport used to consolidate goods.

**3. SUBCONTRACTING :**

3.1 Carrier shall be entitled to subcontract on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in

4.1 Carrier is entitled to perform the transport in any reasonable manner and by any reasonable means, methods and routes.

4.2 The Ship shall have the liberty to, at any time, adjust navigational instruments, make trial trips, dry dock, go to repair yards, shift berths, take in fuel or stores, embark or disembark any persons, carry contraband and hazardous goods, sail with or without pilots and save or attempt to save life or property. Delays resulting from such activities shall not be deemed a deviation.

**5. HINDRANCES AFFECTING PERFORMANCE :**

5.1 Carrier shall use reasonable endeavors to complete transport and to deliver the goods at the place designated for delivery.

5.2 If at any time the performance of this contract as evidenced by this Bill of Lading in the opinion of Carrier is or will be affected by any hindrance, risk, delay, difficulty or disadvantage of any kind including strike and if by virtue of the above Carrier has no duty to complete the performance of the contract, Carrier, whether or not the transport is commenced may elect to :

a) treat the performance of this contract as terminated and place the goods at Merchant's disposal at any place Carrier shall deem safe and convenient, or

b) deliver the goods at the place of delivery.

In any event, Carrier shall be entitled to full freight for any goods received for transportation and additional compensation for extra costs resulting from the circumstances referred to above.

**6. BASIC LIABILITY :**

6.1 Carrier shall be liable for loss of or damage to the goods occurring between the time when it takes goods into its charge and the time of delivery.

6.2 If it is established that the loss of or damage to the goods occurred during sea carriage, liability shall be governed either by the Hague rules or by COGSA (see section 1).

6.3 If it cannot be determined when the loss of or damage to the goods occurred, it shall be presumed that such loss or damage occurred while the goods were in the custody of Carrier.

6.4 Carrier does not undertake that the goods shall be delivered at any particular time and shall not be liable for any direct or indirect losses caused by any delay.

relation to the goods.

3.2 Every servant or agent or subcontractor of Carrier shall
be entitled to the same rights, exemptions from liability,
defenses and immunities to which Carrier is entitled. For
these purposes, Carrier shall be deemed to be acting as
agent or trustee for such servants or agents, who shall be
deemed to be parties to the contract evidenced in this
Bill of Lading.

4. ROUTE OF TRANSPORT :

6.5 Carrier shall not be liable for any loss or damage
arising from :

(a) an act or omission of Merchant or person other than
Carrier acting on behalf of Merchant from whom Carrier took
the goods in charge,

(b) compliance with the instructions of any person
authorized to give them,

(c) handling, loading, stowage or unloading of the goods by

---

```
                                     D
-------------------------------------------------------------------------------
                             SEAFRIGO USA INC.
                               Tariff Code
                               Rule Report
             USA/WORLD PORTS AND POINTS IMPORT/EXPORT FREIGHT RATE TARIFF
                                011198-002
                                    8
-------------------------------+-----------------------------------------------
                             DXI Tariff Report
                                 Page     2
                    Access date: 28Apr2008   Print date: 23Apr2008
-------------------------------------------------------------------------------
```

Except as otherwise provided, rates apply per 1000.0 KGS or 1.0 CBM, whichever produces the greater revenue.

-------------------------------------------------------------------------------

RULE:  8   BILL(S) OF LADING
( Continued... )

or on behalf of Merchant,

(d) inherent vice of the goods,

(e) lack of insufficiency of or defective condition of
packing in the case of goods, which by their nature, are
liable to wastage or damage when not packed or when not
properly packed,

(f) insufficiency or inadequacy of marks or numbers on the
goods, coverings or unit loads,

(g) fire, unless caused by actual fault or privity of
Carrier,

(h) any cause or event which Carrier could not avoid and the
consequences of which he could not prevent by the exercise
of due diligence.

6.6 With respect to the transportation performed by Inland
Carriers to the port of loading or from the port of
discharge, the responsibility of Carrier shall be to procure
transportation by such carriers (one or more) and such
transportation shall be subject to the Inland Carrier's
contracts of carriage, tariffs and any law compulsorily
applicable.

7. COMPENSATION FOR LOSS AND DAMAGE :

7.1 Unless otherwise mandated by compulsorily applicable
law, Carrier's liability for compensation for loss of or
damage to goods shall in no case exceed the amount of US
$500 per package or per customary freight unit, unless the
Merchant, with the consent of Carrier, has declared by
writing a higher value for the goods in the space provided
on the front of this Bill of Lading and paid extra freight
per Carrier's tariff, in which case such higher value shall
be the limit of Carrier's liability.

Where a container is stuffed by shipper or on its behalf,
and the container is sealed when received by Carrier for
shipment, the Carrier's liability will be limited to US $500
with respect to the contents of each such container, except
when the Shipper declares by writing the value on the face
hereof and pays additional charges on such declared value.

The freight charged on sealed containers when no higher
valuation is declared by the Shipper is based on a value of
US $500 per container. However, Carrier shall not, in any
case, be liable for an amount greater than the actual loss
to the person entitled to make his claim.

7.2 In any case where Carrier's liability for compensation
may exceed the amounts set forth in clause 7.1 above,
compensation shall be calculated by reference to the value
of the goods, according to their current market price, at
the time and place they are delivered, or should have been
delivered, in accordance with this contract.

7.3 If the value of the goods is less than US $500 per
package or per customary freight unit, their value for
compensation purposes shall be deemed to be the invoice
value, plus freight and insurance, if paid.

quantity and weight, furnished by Merchant are correct and
Merchant shall indemnify Carrier against all losses arising
from any inaccuracy.

9. CARRIER'S CONTAINERS :

9.1 If goods are not received by Carrier already in
containers, Carrier may pack them in any type container.

9.2 Merchant shall be liable to Carrier for damage to
Carrier's containers or equipment if such damage occurs
while such equipment is in control of Merchant or his
agents.

9.3 Merchant indemnifies Carrier for any damage or injury to
persons or property caused by Carrier's containers during
handling by or when in possession or control of Merchant.

9.4 Merchant undertakes to return such containers to Carrier
within the time provided for in Carrier's applicable tariff;
otherwise, Merchant shall pay Carrier for the demurrage or
detention charges applicable to the containers.

10. CONTAINER PACKED BY MERCHANT :

If Carrier receives the goods already packed into
containers:

1. This Bill of Lading is prima facie evidence of the
receipt of the particular number of containers set forth,
and that number only. Carrier accepts no responsibility with
respect to the order and condition of the contents of the
containers;

2. Merchant warrants that the stowage and seals of the
containers are safe and proper and suitable for handling and
carriage;

3. Delivery shall be deemed as full and complete performance
when the containers are delivered by Carrier with the seals
intact; and

4. Carrier has the right to open and inspect the containers
at any time without notice to Merchant, and expenses
resulting from same shall be borne by Merchant.

11. DANGEROUS GOODS :

11.1 Merchant may not tender goods of a dangerous nature
without written application to Carrier and Carrier's
acceptance of the same. In the application, Merchant must
identify the nature of the goods with reasonable specificity
as well as the names and addresses of the shippers and
consignees.

11.2 Merchant shall distinctly and permanently mark the
nature of the goods on the outside of the package and
container and shall submit to Carrier or to the appropriate
authorities all necessary documents required by law or by
Carrier for the transportation of such goods.

11.3 If the goods subsequently, in the judgement of Carrier,
become a danger to Carrier, the Ship, or other cargo,

8. DESCRIPTION OF GOODS :

Merchant warrants to Carrier that all particulars, of the
goods, including, without limitation, the marks, number,

Carrier liability upon at such goods without compensation to
Merchant and Merchant shall indemnify Carrier for any loss
or expenses arising from such action.

12. PERISHABLE GOODS :

--------------------------------------------------------------------------------
                                        □
--------------------------------------------------------------------------------
                              SEAFRIGO USA INC.
                                 Tariff Code
                                 Rule Report
              USA/WORLD PORTS AND POINTS IMPORT/EXPORT FREIGHT RATE TARIFF
                                  011198-002
                                      8
--------------------------------+-----------------------------------------------
                               DXI Tariff Report
                                    Page
                                     3
                    Access date: 28Apr2008   Print date: 23Apr2008
--------------------------------------------------------------------------------
    Except as otherwise provided, rates apply per 1000.0 KGS or 1.0 CBM, whichever produces the greater revenue.
--------------------------------------------------------------------------------

   RULE:  8  BILL(S) OF LADING
   ( Continued... )

12.1 Goods of a perishable nature shall be carried in
ordinary Containers without special protection, services or
other measures unless there is noted on the reverse side of
this Bill of Lading that the Goods will be carried in a
refrigerated, heated, electrically ventilated or otherwise
specially equipped Container or are to receive special
attention in any way. The Merchant undertakes not to tender
for transportation any Goods which require refrigeration
without given written notice of their nature and the
required temperature setting of the thermostatic controls
before receipt of the Goods by the Carrier in case of
refrigerated Container(s) packed by or on behalf of the
Merchant. The Merchant understands that the Goods have been
properly stowed in the Container and that the thermostatic
controls have been properly stowed in the Container and that
the thermostatic controls have been adequately set by him
before receipt of the Goods by the Carrier and, if
necessary, that the Goods have been pre-chilled before the
loading into the Container. The Merchant's attention is
drawn to the fact that refrigerated Containers are not
designed to freeze down Goods which has not been presented
for stuffing at or below its designated carrying temperature
and the Carrier shall not be responsible for the
consequences of cargo presented at a higher temperature than
that required for the transportation. If the above
requirements are not complied with the carrier shall not be
liable for any loss of or damage to the Goods howsoever
arising.

12.2 The term "apparent good order and condition" when used
in this Bill of Lading with reference to Goods which require
refrigeration does not mean that the Goods, when received,
were verified by the Carrier as being at the designated
carrying temperature.

12.3 The Carrier shall in no event be held liable for damage
to Goods due to condensation.

13. DECK CARGO :

13.1 Carrier has the right to carry the goods in any
container under deck or on deck.

13.2 Carrier is not required to note "on deck storage" on
the face of this Bill of Lading and goods so carried shall
constitute under deck storage for all purposes including the
General Average.

13.3 Except as otherwise provided by any law applicable to
this contract, if this Bill of Lading states that the cargo
is stowed on deck, then Carrier shall not be liable for any
non-delivery, misdelivery, delay or loss to goods carried on
deck, whether or not caused by Carrier's negligence or the
ship's unseaworthiness.

14. HEAVY LIFT :

14.1 Single packages with a weight exceeding 2.240 pounds
gross not presented to Carrier in enclosed containers must
be declared in writing by Merchant before receipt of the
packages by Carrier. The weight of such packages must be
clearly and durably marked on the outside of the package in
letters and figures not less than two inches high.

14.2 If Merchant fails to comply with the above provisions,
Carrier shall not be liable for any loss of or damage to the
goods, and Merchant shall be liable for any loss of or

damage to persons or property resulting from such failure
and Merchant shall indemnify Carrier against any loss or
liability suffered or incurred by Carrier as a result of
such failure.

15. DELIVERY :

15.1 Carrier shall have the right to deliver the goods at
any time at any place designated by Carrier within the
commercial or geographic limits of the port of discharge or
place of delivery shown in this Bill of Lading.

15.2 Carrier's responsibility shall cease when delivery has
been made to Merchant, any person authorized by Merchant to
receive the goods, or in any manner or to any other person
in accordance with the custom and usage of the port of
discharge.

15.3 If goods should remain in Carrier's custody after
discharge from the ship and possession is not taken by
Merchant, after notice, within the time allowed in Carrier's
applicable tariff, the goods may be considered to have been
delivered to Merchant, and, at Carrier's option, may be
stored at Merchant's expense.

16. NOTICE OF CLAIM :

16.1 Written notice of claims for loss of or damage to goods
occurring or presumed to have occurred while in the custody
of Carrier must be given to Carrier at the port of discharge
before or at the time of removal of the goods by one
entitled to delivery. If such notice is not provided,
removal shall be prima facie evidence of delivery by
Carrier. If such loss or damage is not apparent, Carrier
must be given written notice within 3 days of the delivery.

17. FREIGHT AND CHARGES :

17.1 Freight may be calculated on the basis of the
particulars of the goods furnished by Merchant. Carrier and
Merchant agree that it may be difficult or impossible to
assess damages if freight is incorrectly declared. Therefore
, in case of incorrect declaration of the goods, Merchant
shall pay a sum equal to three times the difference between
the correct freight and the freight charged as liquidated
damages, notwithstanding any other sum having been stated
herein as freight payable. Quotations as to fees, rates of
duty, freight charges, insurance premiums or other charges
given by Carrier to Merchant are for informational purposes
only and are subject to change without notice and shall not
under any circumstances be binding upon Carrier unless the
Carrier in writing specifically undertakes the handling of
transportation of the shipment at a specific rate.

17.2 Freight shall be deemed earned upon booking of goods
by Carrier, whether the freight be intended to be prepaid or
collected at destination. Payment shall be in full and in
cash, in the currency named in this Bill of Lading, or
another currency at Carrier's option, interest at 12% shall
run from the date when freight and charges are due and not
returnable in any event. If the services of a freight
forwarder are used for this transportation, those services
shall be deemed to be performed as agent of Merchant and
payment of freight to the freight forwarder is not payment
to Carrier. Full freight shall be paid on damaged or unsound
goods. In any referral for collection or action against the
Merchant for monies due to Carrier, upon recovery by the
Carrier, the Merchant shall pay the expenses of collection

```
------------------------------------------+-----------------------------------------------------
                    :                      □
------------------------------------------+-----------------------------------------------------
                            SEAFRIGO USA INC.
                             Tariff Code
                             Rule Report
                USA/WORLD PORTS AND POINTS IMPORT/EXPORT FREIGHT RATE TARIFF
                             011198-002
                                  8
------------------------------------------+-----------------------------------------------------
                            DXI Tariff Report
                               Page      4
                    Access date: 28Apr2008   Print date: 23Apr2008
------------------------------------------------------------------------------------------------
     Except as otherwise provided, rates apply per 1000.0 KGS or 1.0 CBM, whichever produces the greater revenue.
------------------------------------------------------------------------------------------------
```

RULE:    8    BILL(S) OF LADING
( Continued... )

and/or litigation, including reasonable attorney's fees.

17.3 Merchant shall be liable for all dues, duties, fines, taxes and charges, including consular fees, levied on the goods. Merchant shall be liable for return freight and charges on the goods if they are refused export or import by any government.

17.4 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally liable to Carrier for the payment of all freight and charges, including advances.

17.5 All persons encompassed within the definition of "Merchant" as provided in section 2 of this Bill of Lading shall be jointly and severally indemnify the Carrier for all claims, fines, penalties, damages, costs and other amounts which may be incurred or imposed upon the Carrier by reason of any breach of the Merchant of any of the provisions of this Bill of Lading or of any statutory or regulatory requirements.

18. LIEN :

The Carrier shall have a general lien on any and all property (and documents relating thereto) of the Merchant, in its possession, custody or control or en route, for all claims for charges, expenses or advances incurred by the Carrier in connection with any shipments or operations of the Merchant and if such claim remains unsatisfied for ten (10) days after demand for its payment is maid, the Carrier may sell at public auction or private sale or otherwise dispose of the goods, upon ten (10) days written notice, registered mail (R.R.R.) to the Merchant, the goods, wares and/or merchandise or so much necessary to satisfy such lien, and apply the net proceeds of such sale to the payment of the amount due the Carrier. Any surplus from such sale shall be transmitted to the Merchant, and the Merchant shall be liable for any deficiency in the sale.

If the goods are not claimed during a reasonable time in the Carrier opinion, the Carrier will make at his discretion and subject to his lien and without responsibility auction, sale, abandon or otherwise dispose of the goods at the risk and expenses of the merchant.

19. TIME BAR :

Carrier shall be discharged from all liability for loss of or damage to goods unless suit is brought within 9 months after delivery of the goods or the date when the goods should have been delivered. The time bar for overcharge claims shall be that set forth in Carrier's applicable tariff or 36 months, whichever is shorter and of legal effect under the laws of the country having jurisdiction over this contract.

20. JURISDICTION :

Disputes arising under this Bill of Lading shall be determined by the Tribunal of Commerce at Le Havre under the laws of France, and no other court shall have jurisdiction with regards to any such action.

21 GENERAL AVERAGE :

21.1 General Average shall be adjusted at New York, or any other port at Carrier's option, according to the York-Antwerp Rules of 1974. The General Average statement shall be prepared by adjusters appointed by Carrier.

21.2 In the event of accident, damage, danger or disaster after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for the consequence of which Carrier is not responsible by statute, contract or otherwise, Merchant shall contribute with Carrier in General average to the payment of any sacrifice, loss or expense of a General Average nature that may be made or incurred, and shall pay salvage or special charges in respect of the goods. If a salving vessel is owned or operated by Carrier, Salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

22. BOTH-TO-BLAME COLLISION CLAUSE :

If the ship comes into collision with another vessel as a result of negligence of the other vessel and any negligence or fault on the part of Carrier or its servants or subcontractors, Merchant shall indemnify Carrier against all loss or liability to the other or non-carrying vessel or her owners, insofar as such loss or liability represents loss of, or damage to, or any claim what so ever of Merchant paid or payable by the other or non-carrying vessel or her owners to Merchant and setoff, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying ship or her owner. This provision shall apply as well where the owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault with respect to a collision or contact.

23. CARRIER'S TARIFFS :

23.1 The goods carried under this Bill of Lading are also subject to all the terms and conditions of tariff(s) on file with the Federal Maritime Commission, the Interstate Commerce Commission or any other regulatory agency which governs a particular portion of the carriage and the terms are incorporated herein as part of the terms and conditions of this Bill of Lading.

23.2 Copies of Carrier's tariffs may be obtained from carrier or its agents upon request or from the governmental body with whom the tariff has been filed.

24. SEVERABILITY :

The terms of this Bill of Lading shall be severable, and, if any part or term hereof shall be held invalid, such holding shall not affect the validity of enforceability of any other part or term hereof.

25. VARIATION OF THE CONTRACT :

No servant or agent of the Carrier shall have power to waive or vary any of the terms hereof unless such variation is in writing and is specifically authorized or ratified in writing by the Carrier.
======================= End of Rule Text =======================