**UNITED STATES DISTRICT COURT**          07 CV 6602 (PKL)

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CANTONE & CO., INC.,<br>        Plaintiff,<br>- against -<br>SEAFRIGO a.k.a. SEAFRIGO MARSEILLE,<br>        Defendants. | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION:**<br>(1) **TO VACATE PLAINTIFF'S RULE B ATTACHMENT, OR REDUCE THE AMOUNT AND SUBSTITUTE A BANK GUARANTEE; AND/OR**<br>(2) **TO DISMISS THE CASE ON THE BASIS OF A MANDATORY AND EXCLUSIVE FOREIGN FORUM SELECTION AGREEMENT.** |

**INTRODUCTION**

This memorandum is submitted on defendant's behalf in support of its motion to:

A.   Vacate plaintiff's Rule B attachment, or alternatively, reduce the amount of the attachment and substitute a French bank guarantee; and/or

B.   Dismiss the claims against it on grounds of a mandatory and exclusive French forum selection provision in the applicable contract.

References in this memorandum to Exhibits denominated with the prefix "VENGROW," "BARBEYRAC," and "GOURIO," are to the respective lettered Exhibits attached to the accompanying declarations of Stephen H. Vengrow, Olivier Barbeyrac, and Marc Gourio.

**1.**   **The Claims**

Plaintiff sues in admiralty to recover damages in the principal amount of $50,000 for defrosting and thawing damage to a refrigerated, containerized shipment of frozen bakery products (hereafter, the "Shipment") which moved by sea from LeHavre, France to Newark, NJ.

*Deft's Mov. Exhibit VENGROW-G, paras. 1, 5, 7 – 8, 13.* Plaintiff sues as the owner and receiver of the goods, and alleges that defendant was the freight forwarder, the water common carrier, and the bill of lading issuer for the Shipment. *Id. at paras. 4 – 5.*

Plaintiff also alleges that the Shipment was carried pursuant to a "freight forwarding agreement" and a "bill of lading number E35039700000 dated September 22, 2006 … ." *Id. at para. 6.* Plaintiff sues on theories of breach of contract, negligence, and breach of bailment. *Id. at paras. 10 – 13.*

**B.     Defendant's Answer**

Defendant's answer denies the essential allegations of the complaint, [*Deft's Mov. Exhibit VENGROW-H, paras. 1 – 16*], and pleads various affirmative defenses, including:

(a)     Lack of jurisdiction over its person [*id. at paras. 17, 18*];

(b)     Lack of service and insufficiency of the summons [*id. at para. 18*];

(c)     A restricted appearance under Rule E(8) of the Supplemental Admiralty Rules [*id. at para. 19*];

(d)     Invalidity and want of equity in the Rule B attachment [*id. at para. 20*];

(e)     Forum selection or choice of forum provisions in the applicable contracts [*id. at para. 22*].

**C.     History Of The Case**

*July 23, 2007:*          This action was commenced by the filing of a complaint and the issuance of a summons.

| | |
|---|---|
| *July 23, 2007:* | Process of Maritime Attachment and Garnishment issued against defendant's assets up to $60,000. |
| *August 2 – 17, 2007:* | $60,000 of defendant's assets attached from various banks within this district. |
| *August 24, 2007:* | Defendant served and filed its answer. |

*Deft's Mov. Exhibits I and J.*

There has been no discovery and no prior motions. This case is not on the ready trial calendar.

**D.     Relief Requested**

By this motion, defendant seeks the following relief:

1. Vacation of plaintiff's Rule B attachment on equitable grounds and dismissal of the claims against it.

2. If vacation is denied, then in the alternative:

    (i) A reduction in the amount of the attachment to $47,000;

    (ii) Substitution of a French Bank guarantee [*Deft's Mov. Exhibit K*] for the attached money and, upon substitution, release of the attached money; and

    (iii) Dismissal of the claims pursuant to a mandatory and exclusive French forum selection agreement in the applicable contract.

For purposes of this motion only, defendant will assume without admitting that the well pleaded factual allegations of the complaint are true.

3

## THE FACTS

The relevant facts are detailed in the accompanying declarations of Stephen H. Vengrow, Olivier Barbeyrac, and Marc Gourio. Those facts may be summarized as follows:

**A.    Facts Relevant to Vacatur of the Attachment**

1.    Defendant is part of the Condigel Group which offers logistics services. *Deft's Mov. Exhibit E-1 and E-4; Deft's Mov. Decl. of BARBEYAC, para. 7.*

2.    One of the other members of the Condigel Group is non-party, SeaFrigo USA, Inc., with an office in Secaucus, NJ – a sister company of the defendant. *Deft's Mov. Exhibit E-3; Deft's Mov. Decl. of GOURIO, para. 10; Deft's Mov. Decl. pf BARBEYAC, para. 7.* Both SeaFrigo USA and defendant, SEAFRIGO-MARSEILLE, are identified as "offices" of the Condigel Group. *Deft's Mov. Exhibit E-2, 3.*

3.    SeaFrigo USA, Inc. was involved with the subject shipment along with defendant, SEAFRIGO MARSEILLE in that:

    (a)    The name of "SeaFrigo USA, Inc." appears in the lower left corner of the bill of lading plaintiff sues on. *Deft's Mov. Exhibit GOURIO-A and BARBEYRAC-A.*

    (b)    SeaFrigo USA, Inc. is an F.M.C. licensed NVOCC, and the bill of lading form used for the Shipment was its bill of lading. *Deft's Mov. Decl. of BARBEYRAC, para. 4.*

    (c)    SeaFrigo USA, Inc. and defendant, SEAFRIGO MARSEILLE, work together on shipments (including the Shipment at bar) between the U.S.

and France by providing export or import logistical services depending on which direction the cargoes are moving. *Deft's Mov. Decl. of GOURIO, para. 10; Deft's Mov. Decl. of BARBEYAC, paras. 5 and 7.*

**B.   Facts Relevant to the Reduction of Security.**

4.   Plaintiff's complaint demands attachment up to $60,000. It arrives at that figure by taking the principal amount of its claim [$50,000] and adding ""incidental and/or consequential costs and damages, plus prejudgment interest at the rate of 9% per annum and post judgment interest as allowed by the Court." *Deft's Mov. Exhibit VENGROW-G, WHEREFORE Clause at A. and B.*

5.   Plaintiff's claim statement indicates that the invoice value of the goods is not $50,000 but $37,791.25. *Deft's Mov. Exhibit VENGROW-L.* Another $6,754.18 is for ocean freight and other charges. *Id.* Another $2,300 are for something described as "Preferred Freezer" "spot checks" which are not substantiated or further described. *Id.*

6.   The bill of lading sued on by plaintiff contains the following at clauses 7.2 and 17.2 of the reverse side terms and conditions:

> [7.2]   In any case where the Carrier's liability for compensation may exceed [$500 per package or customary freight unit], compensation shall be calculated by reference to the value of the goods … .
>
> [17.2]   Freight shall be deemed earned upon booking of goods by carrier, whether the freight be intended to be prepaid or collected at destination. *** Full freight shall be paid on damaged or unsound goods.

*Deft's Mov. EXHIBIT E-2 (Bracketed text ours).*

**C.     Facts relevant to substitution of French bank guarantee**

7.      If vacation of the attachment is denied, defendant proposes to substitute a guarantee by a French bank in Brest in the full amount of the attachment $60,000 in the form attached as *Deft's Mov. Exhibit VENGROW-K*.

**D.     Facts relevant to enforcement of the forum clause**

8.      The complaint pleads the existence of a bill of lading contract and pleads breach of contract as one of its theories of recovery. *Deft's Mov. Exhibit VENGROW-G, paras, 6, 10, and 13*.

9.      The complaint identifies the bill of lading as being no. E35039700000 issued September 22, 2006 for carriage from LeHavre, France to Newark, NJ. *Id. at paras. 6 – 7*.

10.     That bill of lading contains the following mandatory and exclusive French forum selection clause in its reverse said terms and conditions:

> JURISDICTION
> Disputes arising under this Bill of Lading shall be determined by the Tribunal of Commerce at LeHavre under the laws of France, and no other court shall have jurisdiction with regard to any such action.

*Deft's Mov. Exhibits BARBEYRAC-A and GOURIO-A.*

# ARGUMENT

# POINT 1

**PURSUANT TO THE SECOND CIRCUIT'S DECISION IN *AQUA STOLI*, PLAINTIFF'S RULE B ATTACHMENT SHOULD BE VACATED BECAUSE DEFENDANT COULD HAVE BEEN FOUND IN THE ADJACENT FEDERAL DISTRICT OF NEW JERSEY.**

Supplemental Admiralty Rule E(4)(f) provides in relevant part:

> *Procedure for Release From Arrest or Attachment.*
> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

In *Aqua Stoli Shipping, Ltd. v. Gardner Smith Pty. Ltd.,* the Second Circuit Court of Appeals said:

> It does not follow, however, that district courts are without any equitable discretion to vacate maritime attachments that comply with Rule B. Following *Integrated* and the other pre-Rule E(4)(f) cases, we believe that an attachment may be vacated only in certain limited circumstances. Although the precise boundaries of a district court's vacatur power are not before us, we are persuaded that vacatur may be warranted when the defendant can show that it would be subject to in personam jurisdiction in another jurisdiction convenient to the plaintiff. See *Integrated,* 476 F.Supp. at 124; cf. *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.,* 341 F.2d 50, 52-53 (2d Cir.1965) (discussing, but not resting on, the district court's vacatur of an attachment issued in the Eastern District because the defendant was present in the Southern District). The concept of "convenience," however, is a narrowly circumscribed one: *A district court may vacate a maritime attachment only if the defendant would be subject to an in personam lawsuit in a jurisdiction adjacent to the one in which the attachment proceedings were brought. An "across the river" case where, for example, assets are attached in the Eastern District but the defendant is located in the Southern District is a paradigmatic example of a case where an attachment should be vacated.*

*Id.,* 460 F.3d 434, 444 - 45 (2d Cir. 2006) (Emphasis added).  This is an "across the river case" in that defendant could have been found in the adjacent federal district of New Jersey.

As to the existence of personal jurisdiction in New Jersey, the complaint alleges that the shipment moved from France to Newark, NJ [*Deft's Mov. Exhibit VENGROW-G, paras. 7 - 8.*] pursuant to a bill of lading that shows Newark as the discharge port.  *Deft's Mov. Exhibits BARBEYRAC-A and GOURIO-A.*  [1]  Since New Jersey exercises personal jurisdiction to the limit allowed by the federal constitution [*Fantis Imports, Inc. v. Hellas Import, Ltd.,* 2008 WL 1790425, *1 (D.N.J.)], the allegation that defendant agreed to and did carry plaintiff's Shipment to New Jersey is sufficient to base specific (long-arm) personal jurisdiction over defendant's person there.  *Granite & Quartzite Centre Inc. v. M/S VIRMA,* 374 F.Supp. 1124, 1127 (S.D.Ga.1974) (act of sailing into a Georgia port to discharge contracted for cargo establish sufficient minimum contacts in an action arising from breach of cargo contract) C*hilean Nitrate Corp. v. M/V HANS LEONHARDT,* 810 F.Supp. 732, 736 – 37 (E.D.La. Dec 30, 1992) (Same).

As to defendant's amenability to service of process in New Jersey, such service could have been made upon SeaFrigo USA, Inc. at Secaucus.  In the affidavit submitted in support of its application for a Rule B attachment, plaintiff's counsel alleged in relevant part at para. 3:

---

1    Although the bill of lading on which plaintiff sues identifies the port of discharge as "New-York", ports on the other side of the Hudson River in New Jersey are considered to be part of the "Port of New York."  See, *SPM Corp. v. M/V Ming Moon,* 965 F.2d 1297, 1299 (3d Cir. 1992) (Port Elizabeth part of Port of New York); *GFT U.S.A. Corp. v. M/V Export Freedom,* 1995 WL 276193 (S.D.N.Y. 1995) (Port Newark in the Port of New York).

> I did locate a website believed to be owned and operated by defendant hosted at www.seafrigo.com. … Upon information, the Defendant has an affiliated company located in Secaucus, NJ named Seafrigo U.S.A. and although that company was involved – apparently as an agent on behalf of the Defendant – in the transaction discussed in the Plaintiff's Complaint, that entity is not named Defendant herein.

*Deft's Mov. Exhibit VENGROW-M.* If SeaFrigo U.S.A. acted as defendant's affiliate and agent in the subject Shipment, then plaintiff could have made service of process on defendant through its New Jersey affiliate and agent, given its ongoing work with defendant on shipments to and from New Jersey.

- F.R.Civ.P. 4(h)(1)(B), practice commentary at 184 (West Publ. 2008)(Managing or general agent is one that has some measure of discretion in operating some phase of defendant's business or in the management of a given office.
- *Siegel,* NEW YORK PRACTICE, 110 (4th ed. 2005) ("Managing" or "general" agent liberally construed to include someone in charge of a branch office. (Citing cases).
- *Lone Star package Car Co. v. Balt. & O.R. Co.,* 212 F.2d 147, 152 (5th Cir. 1954) (If foreign corporation's business is so substantial as to render it amenable to suit in State, principal agent in charge of activities in state is managing agent for purposes of Rule 4).

Since defendant was amenable to personal jurisdiction and service of process in New Jersey at all times, the subject attachment should be vacated.

## POINT 2

**IF PLAINTIFF'S RULE B ATTACHMENT IS VACATED, THE CLAIMS AGAINST DEFENDANT SHOULD BE DISMISSED BECAUSE THERE IS NO BASIS FOR THIS COURT'S EXERCISE OF JURISDICTION OVER ITS PERSON.**

If the Rule B attachment is vacated, then the claims against defendant should be dismissed. Absent a valid Rule B attachment, there is no basis for this Court to exercise

jurisdiction over defendant's person. See, *Teyseer Cement Co. v. Halla Maritime Corp.,* 794 F.2d 472, 476 – 77 (9th Cir. 1986). In this case:

 (a) Defendant's answer pleaded lack of personal jurisdiction, lack and insufficiency of service of process, and restricted appearance pursuant to Supplemental Admiralty Rule E(8); so defendant has not waived the issue. F.R.Civ.P. 12(b)(2, 4, 5).

 (b) In the affidavit submitted by plaintiff in support of its application for a Rule B attachment, plaintiff's counsel alleged that defendant could not be found within this district, so there is no basis for plaintiff to allege the existence of general jurisdiction. *Siegel*, supra at 140 (Corporation must be here with a fair measure of permanence and continuity to be subject to general jurisdiction in New York).

 (c) Although the bill of lading identifies the Port of Discharge as "New York" – it is the Port of New York in New Jersey and not that here in New York State. *See, n.1, supra.* Since the bill also shows a place of delivery in New Jersey, there is no basis for plaintiff to allege the existence of specific jurisdiction since none of the transactions, occurrences or events on which plaintiff's suit is based have any New York contacts. See, CPLR 302.

**POINT 3**

**PLAINTIFF HAS OVER-ESTIMATED THE AMOUNT OF ITS CLAIM BY INCLUDING NON-RECOVERABLE ITEMS SUCH AS FREIGHT CHARGES AND CONSEQUENTIAL DAMAGES. IF THE ATTACHMENT SURVIVES, THE AMOUNT SHOULD BE REDUCED ACCORDINGLY.**

When a defendant moves to vacate a Rule B attachment, the plaintiff has the burden of showing, among other things, its compliance with the Rules and the validity of its claim. *Chiquita Int'l Ltd. v. MV BOSSE,* 518 F.Supp.2d 589, 592 - 93 (S.D.N.Y. 2007). The burden extends to showing that the amount attached is not excessive. See, *Supp'l Adm. R. E(6)* (Court may, on motion and hearing, for good cause shown, reduce the amount of security). A review of the relevant documents shows that plaintiff's attachment of $60,000 is excessive.

Plaintiff's claims documents show that the invoice value of the goods is only $37,791.25. To that amount, plaintiff also adds $6,754.18 in ocean freight and other charges paid to defendant. *Deft's Mov. Exhibit VENGROW-L.* However, plaintiff is not entitled to recover those charges back because the SeaFrigo bill of lading provides that the carrier may retain the freight charges regardless of whether the cargo is lost or damaged. Such bill of lading clauses are valid and enforceable. *Alcoa S.S. Co., Inc. v. U.S.,* 338 U.S. 421, 422 (1949).

Plaintiff further purports to add another $2,300 for "Preferred Freezer" "spot checks" without any substantiation or description of what those charges are for or how they amount to recoverable damages. *Deft's Mov. Exhibit VENGROW-L.*

Finally, plaintiff also claims unspecified consequential damages. *Deft's Mov. Exhibit VENGROW-G, para. 13.* However, as a general rule, consequential damages are not recoverable from the carrier. E.g., *B.F.McKernin & Co. v. U.S.L.,* 416 F.Supp. 1068, 1072 (S.D.N.Y. 1976).

As a general rule, in admiralty cases, prejudgment interest is calculated on the average interest paid on 6 month Treasury bills. See, e.g., *Zim Israel Navigation Co. v. 3-D Imports, Inc.,* 29 F.Supp.2d 186, 193-94 (S.D.N.Y.1998). Rates on 6 month Treasury Bills have dropped dramatically since this shipment took place in September of 2006. Thus, even if we assume a claim of $37,791.25 accruing 20 months ago, and that the case takes a year to resolve, security of $40,000 ought to suffice for the principal and prejudgment interest of plaintiff's claim, and defendant asks for a reduction to that amount.

## POINT 4

**IF THE ATTACHMENT IS NOT VACATED, DEFENDANT'S FRENCH BANK GUARANTEE SHOULD BE SUBSTITUTED AS THE SECURITY.**

If the attachment is not vacated, defendant asks that the attached funds be released and that a bank guarantee in the form attached as *Deft's Mov. Exhibit K* be substituted in its place. French law (applicable to this case by the bill of lading jurisdiction clause) permits the giving of bank guarantees as alternative security in cases of attachment. *Tetley,* "ARREST, ATTACHMENT, AND RELATED MARITIME LAW PROCEDURES," 73 Tul. L. Rev. 1895, 1946 (main text at n. 310) (1999). Moreover, this Court would retain admiralty jurisdiction to enforce the guarantee. *Deval Denizcilik Ve Ticaret A.S. v. Agenzia Tripcovich S.R.L.,* 513 F.Supp.2d 6, 7 – 9 (S.D.N.Y. 2007).

POINT 5

**IN THE EVENT THE ATTACHMENT IS NOT VACATED, THE CLAIMS AGAINST DEFENDANT SHOULD BE DISMISSED ON THE BASIS OF A MANDATORY AND EXCLUSIVE FRENCH FORUM SELECTION CLAUSE IN THE BILL OF LADING SUED ON.**

The bill of lading sued on by plaintiff contains a French forum selection clause requiring all disputes under the bill to be determined by the Tribunal of Commerce at LeHavre and no other court. *See, STATEMENT OF FACTS, D.10, supra.* The clause should be enforced and the claims against defendant dismissed for the following reasons:

1. THE CHOICE OF FORUM IS MANDATORY AND EXCLUSIVE: By its language, bill of lading choice of forum provision explicitly provides that it is to be mandatory and exclusive.

> JURISDICTION
> Disputes arising under this Bill of Lading shall be determined by the Tribunal of Commerce at LeHavre under the laws of France, and no other court shall have jurisdiction with regard to any such action.

*Deft's Mov. Exhibits BARBEYRAC-A and GOURIO-A.* It provides that disputes "shall" be determined in LeHavre. The word "shall" carries a meaning that is imperative and mandatory. BLACK'S LAW DICTIONARY, p. 1375 (6th ed. 1991). The provision also contains additional language providing that the jurisdiction of the LeHavre court is to be to the exclusion of the jurisdiction of any other court. See, e.g., *LPR, SrL v. Challenger Overseas, LLC*, 2000 A.M.C. 2887, 2889 - 90 (S.D.N.Y.).

2. THE CLAUSE IS BROAD IN SCOPE: By its wording, the forum clause applies to "Disputes arising under this Bill … ." See, *Challenger,* supra, 2000 A.M.C. at 2890 – 91. Plaintiff's claims are grounded in defendant's alleged breach of the bill of lading contract of carriage. *Deft's Mov. Exhibit A, paras. 5, 10, 13*. As a general rule, a common carrier cannot be sued outside of its contract of carriage. *Miller Export Corp. v. Hellenic Line,* 534 F.Supp. 707, 710 (S.D.N.Y. 1982); *Atl. Mut. Ins. Co. v. M/V PRES. TYLER,* 765 F.Supp. 815, 818 (S.D.N.Y. 1990).

3. THE CLAUSE IS PRESUMPTIVELY VALID: The bill of lading choice of forum provision is presumptively valid and may be overcome only upon a factual showing (1) of fraud or overreach, (2) that litigation in the chosen forum is so gravely inconvenient that for all practical purposes the party opposing the motion will for all practical purposes be denied its day in court, (3) that fundamental unfairness of the selected forum may deprive a plaintiff of a remedy; or (4) the clause contravenes a strong public policy of the forum state. *Challenger,* supra, 2000 A.M.C. at 2890. None of those factors is present here:

(a) The pleadings do not allege anything fraudulent. F.R.Civ.P. 9(b).

(b) Since plaintiff is suing for breach of the bill of lading contract of carriage, it cannot argue overreach. See, *Mitsui & Co. v. MIRA M/V,* 111 F.3d 33, 36 (5th Cir. 1997) (Party that sues on bill of lading accepts its terms); *Kanematsu Corp. v. M/V Gretchen W,* 897 F.Supp. 1314, 1317 (D.Or.1995) (Same).

(c) There is no reason to consider France a fundamentally unfair forum. See, *Conti Zweite Cristallo Schiffarhrts GmbH & Co. KG v. PPG Industries, Inc.,* 2000 WL 1154690, *2 (S.D.N.Y. 09/28/01).

(d) Since France adheres to a shipper-carrier liability regime known as the Hague-Visby Rules, [Note, "Is Sky-Reefer in Jeopardy?", 72 Wash.L.Rev. 625, 631 (n.44) (1997).], the cargo interests will not be deprived of a remedy. *Reed & Barton Corp. v. M.V. TOKIO EXPRESS,* 1999 A.M.C. 1088, 1092 (S.D.N.Y.) app. dism'd 210 F.3d 355 (2d Cir. 2000).

(e) Bill of lading choice of forum clauses contravene no strong U.S. public policy. To the contrary, their enforcement is favored. See, *Vimar Seguros y Reaseguros, S.A. v. M.V. SKY REEFER,* 515 U.S. 528 (1995).

4. THE CLAUSE APPLIES TO THE NON-CONTRACT THEORIES OF RECOVERY: Plaintiff cannot avoid the forum clause by pleading its claims in tort rather than contract. *Challenger,* supra, 2000 A.M.C. at 2889 – 90; *Bison Pulp & Paper Ltd. v. M/V PERGAMOS,* 1996 A.M.C. 2022, 2041 (S.D.N.Y. 1995).

5. THE CLAUSE HAS NOT BEEN WAIVED: Because of the possibility that a forum selection agreement may not be enforced, a defendant sued in a forum other than the one agreed to must still participate in the litigation. See, *Steel Whse. Co. v. Abalone Shpg. Ltd. of Nicosai,* 141 F.3d 234, 238 (5th Cir. 1998). There is no dispute that defendant preserved the forum clause as an affirmative defense in its answer. *Deft's Mov. Exhibit VENGROW-H, para. 22.* Therefore, the forum clause defense has not been waived.

6. THE BILL OF LADING GOVERNS. The rule in this Circuit and elsewhere is that where there are multiple carriers (e.g., an NVOCC and a VOCC), the liability of each carrier is

determined under its own bill of lading. *Royal Ins. Co. v. M.V. ACX RUBY,* 1998 W.L. 524899, *3 (S.D.N.Y.) (citing cases); *SPM Corp. v. M/V MING MOON,* 965 F.2d 1297, 1305 (n.9) (3d Cir. 1992); *Itel Container Corp. v. M/V TITAN SCAN,* 139 F.3d 1450, 1453 (11th Cir. 1998). Therefore, it is the SeaFrigo bill of lading forum clause that should be determinative and not any forum clause that might be contained in the bill of lading issued by the downstream Vessel Operating Common Carrier to which ocean carriage of the Shipment was subcontracted.

7. PLAINTIFF'S OPPOSITION – THE CORRECT TERMS: We anticipate that plaintiff will take the position that the reverse side of the SeaFrigo bill of lading contains a Southern District of New York forum clause. However, the original SeaFrigo bill of lading is in the possession of defendant's undersigned counsel and will be produced at oral argument. A true copy is attached to this motion as *Deft's Mov. Exhibits BARBEYRAC-A and GOURIO-A.* It does not contain any such clause. Plaintiff has so far not produced any original of the bill of lading sued on which contains such a clause. All plaintiff has shown is photostatic copies – on different sheets of paper – of the front of the SeaFrigo bill of lading and some reverse side terms and conditions containing a Southern District of New York jurisdiction clause, but without any evidence whatsoever that the two Photostats came from the same bill of lading. In fact, they do not.

- ➢ SeaFrigo USA is required by federal law [46 C.F.R. 520.4(a)(5)] to publish its bill of lading terms and conditions as part of its tariff, which it has done, and the Clause 20 French Jurisdiction Clause sought to be enforced here is there. *Deft's Mov. Exhibit BARBEYRAC-F.*

> A sample bill of lading from an ocean common carrier named Hatsu Marine shows that the Southern District jurisdiction clause relied on by plaintiff comes from the Hatsu bill. *Deft's Mov. Exhibits VENGROW D and E.* In fact, the bill of lading identified in plaintiff's complaint contains the above mentioned LeHavre jurisdiction clause. *Deft's Mov. Exhibits BARBEYRAC-A and GOURIO-A.; Deft's Mov. Decl. of BARBEYAC, paras. 2 – 5; Deft's Mov. Decl. of GOURIO, paras. 2 – 3, 8 – 10.*

Hatsu Marine which was the subcontractor that performed the ocean carriage portion of the movement. However, as explained in POINT 5.6 above, the Hatsu Marine bill of lading does not govern the relationship between plaintiff and defendant.

7. PLAINTIFF'S OPPOSITION – LACK OF ACTUAL KNOWLEDGE: Plaintiff has also taken the position that because the original SeaFrigo bill was never issued and only a copy of the front side was faxed to it, it never saw the French Jurisdiction clause and so should not be bound by it. This argument is without merit for several reasons:

(a) Having sued on the bill, plaintiff is bound by all of its terms, including the jurisdiction clause. See, *MIRA M/V,* supra, 111 F.3d at 36; *Kanematsu,* supra, 897 F.Supp. at 1317.

(b) Under the U.S. Carriage of Goods by Sea Act, an ocean carrier is not required to issue a bill of lading unless it is requested to do so by the shipper. 46 U.S.C. 30701, Notes at Sec. 3(3) ("… the carrier shall, on demand of the shipper, issue to the shipper a bill of lading … ."). In this case, because the SeaFrigo bill was an express bill, a copy of the face was faxed. No paper bill of lading was demanded to be issued.

  (c) Having accepted the benefits of using an express bill, plaintiff cannot now claim lack of knowledge of its terms. *Jockey Intern., Inc. v. M/V "LEVERKUSEN EXPRESS"*, 217 F.Supp.2d 447, 454 (n.2) (S.D.N.Y. 2002) (Reason for being of electronic documents is to diminish reliance on paper documents. Carrier published bill of lading terms and conditions on its web site as federal law required. Shipper cannot then complain that no paper bill was issued or that it had no notice of its terms).

  (d) Moreover, because the bill of lading terms were required to be, and were published, plaintiff can also not claim lack of notice. *Id.*

  (e) In any case, the SeaFrigo bill governs the rights of the parties even if it was not issued. *Anvil Knitwear, Inc. v. Crowley Am. Transport, Inc.*, 2001 A.M.C. 2382, 2384 (S.D.N.Y.).

## CONCLUSION

The motion should be granted.

Dated:  New York, NY  *Respectfully submitted,*

    May 22, 2008  CICHANOWICZ CALLAN KEANE VENGROW
           & TEXTOR, LLP
           61 Broadway 3000, New York, NY 10006
           212-344-7042
           Attorneys for Defendant

           By: /s/ _____Stephen H. Vengrow_____
             STEPHEN H. VENGROW [SV-3479]