UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
CANTONE  & CO.INC.,                             :          07 Civ. 6602  (PKL )
                                                :
                    Plaintiff,                  :          **ECF CASE**
                                                :
       - against -                              :
                                                :
SEAFRIGO a/k/a SEAFRIGO                          :
MARSEILLE                                        :
                                                :
                    Defendant.                  :
----------------------------------------------------------X


### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE PLAINTIFF'S RULE B ATTACHMENT, OR REDUCE THE AMOUNT AND SUBSTITUTE A BANK GUARANTEE; AND/OR TO DISMISS THE CASE ON THE BASIS OF A MANDATORY AND EXCLUSIVE <u>FOREIGN FORUM SELECTION AGREEMENT</u>


LENNON, MUPRHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
(212) 490-6050 Phone
(212) 490-6070 Fax

*Attorneys for Plaintiff*
*Cantone & Co., Inc.*


Kevin J. Lennon, Esq.
Anne C. LeVasseur, Esq.

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS .....................................................................................................2

ARGUMENT...........................................................................................................................4

POINT ONE
CANTONE HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL
ADMIRALTY RULES B AND E(4)(f) ................................................................................4

POINT TWO
SEAFRIGO CANNOT BE "FOUND" WITHIN THE DISTRICT NOR CAN IT BE
"FOUND" IN NEW JERSEY...................................................................................................8

POINT THREE
THE FRENCH FORUM SELECTION CLAUSE CONTAINED IN THE BILL
OF LADING IS UNENFORCEABLE ...................................................................................11

   *a. Standard of Review on a Motion to Dismiss based on Forum Selection Clause* .......................11

   *b. Test for Analyzing Whether a Forum Selection Clause is Enforceable* ......................................13

   *c. Seafrigo USA's FMC tariff is irrelevant* ................................................................................14

   *d. Seafrigo is subject to personal jurisdiction in New York*...........................................................16

POINT FOUR
CANTONE HAS NOT OVER-ESTIMATED THE AMOUNT OF ITS CLAIM AND
THEREFORE THE AMOUNT OF CANTONE'S ATTACHMENT SHOULD NOT
BE REDUCED.......................................................................................................................18

POINT FIVE
SEAFRIGO'S FRENCH BANK GUARANTEE SHOULD NOT BE
SUBSTITUTED AS SECURITY .........................................................................................20

CONCLUSION......................................................................................................................21

## INTRODUCTION

Plaintiff, Cantone & Co., Inc. (hereinafter "Cantone" or "Plaintiff") by and through its undersigned counsel, Lennon, Murphy & Lennon, LLC, respectfully submits this memorandum of law in opposition to defendant's, Seafrigo a.k.a. Seafrigo Marseille (hereinafter "Seafrigo" or "Defendant") motion to vacate Cantone's maritime attachment, or reduce the amount and substitute a bank guarantee; and/or to dismiss the case on the basis of a mandatory and exclusive foreign forum selection agreement. For the reasons that follow, Seafrigo's application should be denied in all respects.

Cantone's attachment against Seafrigo should be sustained because this Court validly issued the attachment order pursuant to Supplemental Admiralty and Maritime Claims Rule B of the Federal Rules of Civil Procedure ("Rule B") and in accord with the United States Court of Appeals for the Second Circuit's decision in *Aqua Stoli Shipping Ltd. v. Gardner Smith*, 460 F.3d 434 (2d Cir. 2006). The attachment order was proper because: (1) Cantone has a valid *prima facie* admiralty claim against Seafrigo arising out of a contract of carriage dated September 22, 2006 for the carriage of 1,500 packages of frozen ready-to-bake bakery products; (2) Seafrigo cannot be found within the Southern District of New York; (3) Seafrigo concedes that it has a property interest in the funds attached in the District; and (4) there is no statutory bar to the attachment. *See Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006). Accordingly, for the reasons set forth herein, Cantone has satisfied its burden under Supplemental Admiralty Rule E(4) to show cause why the attachment should not be vacated.

In its Verified Complaint, Cantone alleged a valid *prima facie* admiralty claim that Seafrigo breached its obligations as Carrier under the contract of carriage and, therefore, that Seafrigo is liable for Cantone's damages.

## STATEMENT OF FACTS

Cantone was the cargo owner and receiver of 1,500 packages of frozen ready-to-bake bakery products stowed within a freezer container. *Verified Complaint at ¶ 5.* Seafrigo was the carrier of the above cargo pursuant to a freight forwarding agreement and bill of lading number E35039700000 dated September 22, 2006 issued by Seafrigo Marseille. *Verified Complaint at ¶ 6.* Cantone's cargo was loaded in good order and condition on board the motor vessel "Stadt Wismar" (hereinafter "the Vessel") under the bill of lading for carriage from Le Havre, France to Newark, New Jersey. *Verified Complaint at ¶ 7.*

On or about October 3, 2006, the Vessel arrived at Newark, New Jersey and unloaded Cantone's cargo. On discharge Cantone's cargo was found to be damaged due to defrosting, thawing and re-freezing of the cargo which occurred during the voyage. *Verified Complaint at ¶ 9.*

Disputes arose under the contact of carriage with respect to the aforesaid damage to Cantone's cargo. The contract of carriage obligated Seafrigo to deliver the cargo to Cantone in the same good order and conditions as when the cargo was loaded on the Vessel. *Verified Complaint at ¶ 10.*

Cantone initiated this action and prayed for the issuance of an ex parte order of maritime attachment pursuant to Supplemental Admiralty Rule B of the Federal Rule of Civil Procedure

against Seafrigo, to obtain jurisdiction and to obtain pre-judgment security for its claim. *Verified Complaint at ¶ 16.*

The Verified Complaint prayed for issuance of Rule B attachment in the total amount of $60,000.00 against all defendants. *Prayer for relief at B.*

On July 23, 2007, this Court issued an Ex Parte Order of Maritime Attachment in the amount of $60,000.00. Pursuant to that Order, the following garnishee banks attached the following amounts on the following dates: JP Morgan Chase Bank attached $4,913.38 on August 2, 2007 and $7,303.00 on August 10, 2007; Bank of America attached $1,785.22 on August 13, 2007; Citibank attached $13,923.52 on August 1, 2007, $6,783.25 on August 2, 2007, $3,416.44 on August 7, 2007, $13,950.41 on August 10, 2007, and $7,924.78 on August 17, 2007. Thus, Cantone is presently fully secured in the amount of $60,000.00.

On May 22, 2008, Seafrigo filed a Motion to Vacate Plaintiff's Rule B Attachment, or Reduce the Amount and Substitute a Bank Guarantee, and/or to Dismiss the Case on the Basis of a Mandatory and Exclusive Foreign Forum Selection Agreement. Seafrigo argues that Cantone's attachment should be vacated because Seafrigo could have been found in the adjacent federal district of New Jersey, that the claims against Seafrigo should be dismissed because there is no basis for this Court's exercise of jurisdiction over its person, or alternatively seeking that the Court reduce the amount of Cantone's attachment because Cantone has over-estimated its claim by including non-recoverable items. Seafrigo also requests that should the attachment be sustained, that Seafrigo's bank guarantee be substituted as security, or, in the event that the attachment is not vacated, that the claims against Seafrigo be dismissed on the basis of a mandatory and exclusive French forum selection clause in the bill of lading sued on.

For the reasons explained below, the attachment should be sustained and Plaintiff's claims against Defendant should not be dismissed.

## ARGUMENT

### POINT ONE

### CANTONE HAS SATISFIED ITS BURDEN OF PROOF UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)

Cantone has carried its burden to demonstrate that this Court's attachment order was validly issued. Under Supplemental Admiralty Rule B, an order of maritime attachment must issue upon a minimal *prima facie* showing provided that the defendant cannot be found within the district in which the assets are sought to be attached. Supplemental Admiralty Rule B provides, in relevant part:

> If a defendant is not found within the district..., a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property – up to the amount sued for – in the hands of garnishees named in the process. The plaintiff or the plaintiff's attorney must sign and file with the complaint an affidavit stating that, to the affiant's knowledge, or on information and belief, the defendant cannot be found within the district. The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed. R. Civ. P. Supp. Rule B(1). As recently summarized by the Court of Appeals for the Second Circuit:

> To begin the process, a plaintiff must file a verified complaint praying for an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district. [Fed.R.Civ.P. Supp. Rule B(1).] If the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment, which the plaintiff may then serve on any persons in possession of the defendant's property located within the district. The order of attachment may be requested and granted ex parte, though notice of the attachment to

the defendant via appropriate service is required. Id. Supp. Rules B(2), E(3).

*Aqua Stoli Shipping Ltd.*, 460 F.3d at 438. "The power to grant attachments in admiralty is an inherent component of the admiralty jurisdiction given to the federal courts under Article III of the Constitution," and its "historical purpose has been two-fold: first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." *Id. Accord Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 268 (2d Cir. 2002).

Furthermore, in respect of a defendant's right to challenge the validity of a maritime attachment under Supplemental Admiralty Rule E(4)(f), the Second Circuit held in *Aqua Stoli* that a plaintiff need only demonstrate that the attachment order was properly issued, *i.e.*, (1) that it has a valid *prima facie* admiralty claim; (2) the defendant cannot be found within the district; (3) the defendant's property may be found in the district; and (4) there is no statutory bar. Once the plaintiff has made such a showing, a properly issued attachment order may be vacated only if the defendant can prove any of four limited circumstances, none of which Seafrigo has proven in this case. This standard was later restated and followed by Chief Judge Wood in *Tide Line, Inc. v. Eastrade Commodities, Inc.*, 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. 2006) where the court held:

> Furthermore, "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (Supplemental Rule E(4)(f)"). The Court of Appeals for the Second Circuit has recently, for the first time, spoken "directly on the showing necessary to vacate a maritime attachment under Rule E," *Aqua Stoli Shipping Ltd.*, 2006 WL 2129336, at *4, 2006 U.S. App. LEXIS 19302, at *12 – holding that "once a plaintiff has carried his burden to show that his attachment satisfies the requirements of Supplemental Rule B, a district court may vacate an attachment only upon [certain] circumstances," which "can occur where 1)

> the defendant is present in a convenient adjacent jurisdiction; 2) the
> defendant is present in the district where the plaintiff is located; or 3) the
> plaintiff has already obtained sufficient security for a judgment." *Id.*, 2006
> WL 2129336, at *1, 2006 U.S. App. LEXIS 19302, at *2.

*Id.* at 8. While it is a plaintiff's burden to prove that it has complied with the technical

requirements of Supplemental Admiralty Rule B, it is the moving party's burden to prove one of

the limited equitable bases for vacatur. The Second Circuit held as follows in *Aqua Stoli*:

> We therefore hold that, in addition to having to meet the filing and service
> requirements of Rules B and E, an attachment should issue if the plaintiff
> shows that 1) it has a valid prima facie admiralty claim against the
> defendant; 2) the defendant cannot be found within the district; 3) the
> defendant's property may be found within the district; and 4) there is no
> statutory or maritime law bar to the attachment. Conversely, a district
> court must vacate an attachment if the plaintiff fails to sustain his burden
> of showing that he has satisfied the requirements of Rules B and E. We
> believe vacatur is appropriate in other limited circumstances. While, as
> we have noted, the exact scope of a district court's vacatur power is not
> before us, we believe that a district court may vacate the attachment if the
> defendant shows at the Rule E hearing that 1) the defendant is subject to
> suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain <u>in
> personam</u> jurisdiction over the defendant in the district where the plaintiff
> is located; or 3) the plaintiff has already obtained sufficient security for the
> potential judgment, by attachment or otherwise. n.5.
>
> n.5 Rule E(4)(f) clearly places the burden on the plaintiff to show that an
> attachment was properly ordered and complied with the requirements of
> Rule B and E. Although Rule E does not explicitly mention a district
> court's equitable power to vacate an attachment or who bears such a
> burden, former Local Rule 12 required the defendant to establish any
> equitable grounds for vacatur, and we believe that defendants still bear
> that burden under the Supplemental Rules.

*Aqua Stoli*, 460 F.3d at 445. Former Local Rule 12, to which the Second Circuit cited in note 5

of *Aqua Stoli*, provided as follows:

> Where property is arrested or attached, any person claiming an interest in
> the property arrested or attached may, upon showing of any improper
> practice or a manifest want of equity on the part of the plaintiff, be entitled
> to an order requiring that plaintiff to show cause why the arrest or
> attachment should not be vacated or other relief granted, consistent with
> these rules or the supplemental rules.

*Id.*

The Second Circuit emphasized that "Rule B specifies the sum total of what must be shown for a valid maritime attachment." *Id.* at 447. Moreover, the Second Circuit held that upon the plaintiff's showing that the attachment was properly ordered, and that it complied with the requirements of Rules B and E, the "defendant bears the burden of "establish[ing] any equitable grounds for vacatur." *Id.* at 436. As explained above, the Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but merely to determine if the technical requirements of the Rule were met. Thus, as long as the plaintiff establishes that it has alleged a *prima facie* maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. *Id.* at 444. Once a plaintiff has established the technical requirements required by Rule B, the burden then shifts to the defendant to establish the three limited bases for vacatur. *Id.* As indicated above, *Aqua Stoli* held that it is improper for a district court to engage in a fact-intensive inquiry regarding the technical requirements of Rule B at a Rule E(4)(f) post-attachment hearing.

Further, in *Transportes Navieros Y Terrestes, S.A. de C.V. v. Fairmount Heavy Transport, N.A.*, 2007 U.S. Dist. LEXIS 50260, 2007 AMC 1993 (S.D.N.Y. 2007), Judge Preska recently summarized that "[a]lthough the Court of Appeals has not stated exactly what a plaintiff must show to make out a '*prima facie* admiralty claim,' many district courts that have examined this issue since *Aqua Stoli* have adopted the 'limited inquiry contemplated by *Aqua Stoli*' and have adopted a basic definition of the term *prima facie*." *Id. Transportes Navieros Y Terrestes* confirmed that a plaintiff need not prove its case or present evidence. All that is required is a proper verified complaint.

7

Seafrigo's offer to substitute a French bank guarantee does not provide grounds for this Court to vacate Cantone's attachment.   Defendant has not shown that this alternative security would be equivalent to that afforded by the Rule B attachment.  See *Aqua Stoli,* 460 F.3d at 445, n. 5 (placing burden on party reeking vacatur to show alternative security existed).

Seafrigo's offer to provide security cannot be grounds for vacatur of Cantone's attachment.

## POINT TWO

## SEAFRIGO CANNOT BE "FOUND" WITHIN THE DISTRICT NOR CAN IT BE "FOUND" IN NEW JERSEY

Seafrigo does not dispute that it cannot be "found" within the Southern District of New York.  Seafrigo argues that this is an "across the river case" because SeaFrigo USA, an affiliated company to Seafrigo, could have been found in the adjacent federal district of New Jersey.  *See Seafrigo's Memorandum of Law at 8.*  However, SeaFrigo USA is not a party to this action and Cantone is not seeking to hold Seafrigo USA liable.  Cantone knew of SeafrigoUSA's presence prior to filing its Rule B attachment application and specifically addressed this issue in the affidavit submitted by counsel in support of its attachment application.  The attachment is proper and should be sustained because Defendant Seafrigo is not found in a convenient adjacent district requiring vacatur.

Admiralty Rule B(1)(a) provides:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property-up to the amount sued for – in the hands of garnishees named in the process.

Although Admiralty Rule B does not define what it means to be "found" within the district, to be found for the purposes of Rule B requires a two-pronged test: (1) whether the

8

defendant has sufficient contacts with the district to satisfy personal jurisdictional due process requirements, and if so, (2) whether there is someone within the geographic confines of the district on whom process may be served. *See Chilean Line, Inc. v. United States*, 344 F.2d 757 (2nd Cir. 1965). A defendant must satisfy both prongs in order to be "found" within the district.

Cantone performed its required due diligence search for Seafrigo in the Southern District of New York by checking the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for Seafrigo or Seafrigo Marseille. Additionally, Cantone checked the New York State Department of Corporations' online database which showed no listing or registration for Seafrigo or Seafrigo Marseille. The online database did, however, provide a listing for "Seafrigo International Inc." However, although listed as a New York corporation the listing provides that this entity only has a presence in Elizabeth, New Jersey and does not have a registered agent for service of process in the District. Further, although this company may be related to Seafrigo, it is not the Defendant named in this action. Accordingly, the results indicated that Seafrigo could not be found within the district for the purposes of Admiralty Rule B.

Seafrigo does not contend that it can be found in the Southern District of New York, however it does argue that the presence of a separate corporation, SeaFrigo U.S.A., in the District of New Jersey warrants vacatur of Cantone's attachment because SeaFrigo U.S.A.'s presence in New Jersey somehow makes Seafrigo amenable to service of process in the adjacent federal district of New Jersey. Seafrigo does not cite any case law in support of this position.

Seafrigo and SeaFrigo U.S.A. are separate and distinct corporate entities. Defendant Seafrigo is a business entity of France and non-party SeaFrigo U.S.A. is a New Jersey corporation (See Lennon Affirmation). Seafrigo attempts to argue it is the "sister company" of

9

SeaFrigo U.S.A., in that both are owned by the same company and thus, are branch offices of one another. *See Declaration of Marc Gourio at ¶ 10.* Seafrigo's attempt to treat both entities as one single entity should be rejected. A corporation is not permitted to pierce its' own corporate veil. *Rubler v. Unum Provident Corp.*, 2007 U.S. Dist. LEXIS 7791, * 8 (S.D.N.Y. Jan. 25, 2007) ("[u]nder New York law . . . 'a corporation cannot pierce its own corporate veil to benefit either the parent or a subsidiary'. . . In short, this Court cannot ignore the fact that First Unum is a separate legal entity" *citing In re Disston Co.,* 187 A.D. 2d 283 (1st Dept. 1992); *see also Big E. Entertainment, Inc. v. Zombra Enters.*, 453 F.Supp. 2d 788, 797 (S.D.N.Y. 2006)("under New York law, a parent corporation may not pierce the corporate veil it set up for its own benefit in order to advance the claims of its subsidiary").

Nothing in Seafrigo's papers can lead this Court to conclude that Seafrigo is found in New Jersey for purposes of Admiralty Rule B. The two part test for being "found" is clear. Seafrigo must be conducting business in New Jersey and be capable of being served in New Jersey. Seafrigo cannot satisfy either prong. Seafrigo's moving papers do not establish that Seafrigo conducts its own business in New Jersey. Moreover, Seafrigo does not indicate that SeaFrigo U.S.A would have accepted service of process on behalf of Seafrigo. Seafrigo's moving papers allege "plaintiff could have made service of process on defendant through its New Jersey affiliate an agent", *See Seafrigo Memorandum of Law at 9,* but not that such service would have been accepted as valid.

Seafrigo U.S.A. is a separate and distinct entity from defendant Seafrigo. Seafrigo's papers cannot overcome the fact that SeaFrigo U.S.A. saw an advantage to setting itself up in New Jersey as separate entity, distinct from Seafrigo,. Seafrigo cannot now be permitted to claim that there is no distinction between the two companies. If Cantone was now to obtain a

judgment against Seafrigo, it certainly would not be permitted to collect against SeaFrigo U.S.A. without first proving an *alter ego* case.

**POINT THREE**

**THE FRENCH FORUM SELECTION CLAUSE CONTAINED
IN THE BILL OF LADING IS UNENFORCEABLE**

Seafrigo contends that the bill of lading upon which Cantone has sued for recovery contains a mandatory forum selection clause requiring that Seafrigo bring all claims at the Tribunal of Commerce at LeHavre under the laws of France. *See Seafrigo Memorandum of Law at 6*. However, Seafrigo also readily admits that this forum selection clause is set out only on the reverse side of its bill of lading, which was <u>never issued</u>, and that as such the reverse side of the bill of lading was never previously provided to Cantone. *See Seafrigo Memorandum of Law at 17*. Cantone never received a copy of the reverse side of the bill of lading. *See Declaration of Reto Cantone at ¶4,5; Declaration of Sarah C. Nodjoumi at ¶ 3,4*. It unconvincingly argues that because Seafrigo USA published a tariff on the FMC website that this somehow provided notice to Cantone of the forum selection clause and that Cantone is therefore bound by the clause. Seafrigo's argument ignores several key considerations.

    a.  *Standard of Review on a Motion to Dismiss based on a Forum Selection Clause*

Notwithstanding the fact that Seafrigo is moving to dismiss on the basis of a forum selection clause it fails to inform this Court of the standard of review for such a Rule 12(b)(1) motion. This omission is quite telling. Seafrigo's motion (which essentially asks this Court to decline to exercise jurisdiction), is to be considered in the following manner. "[A]t the initial stage of the litigation, a party seeking to establish jurisdiction need only make a *prima facie* showing by alleging facts which, if true, would support the court's exercise of jurisdiction.

11

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981). When analyzing this

preliminary showing, the facts must be viewed in the light most favorable to the plaintiff. *AVC*

*Nederland*, 740 F.2d at 149. A disputed fact may be resolved in a manner adverse to the plaintiff

only after an evidentiary hearing. *Cutco Indus. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)

(until evidentiary hearing is held, plaintiff need only make *prima facie* showing of personal

jurisdiction); *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir.

1972). Because the risk of loss of plaintiff's chosen forum may be at issue in the forum selection

contract, a party seeking to avoid enforcement of such a contractual clause is also entitled to

have the facts viewed in the light most favorable to it, and no disputed fact should be resolved

against that party until it has had an opportunity to be heard. *See New Moon Shipping Coo., Ltd.*

*v. Int'l Marine Investors and Management Corp.*, 121 F.3d 24, 29 (2d Cir. 1997).

Thus, all that Cantone must do on Seafrigo's motion to dismiss is to show that it has

alleged a valid *prima facie* jurisdictional case against Seafrigo. Further, all of Cantone's

allegations must be viewed in the light most favorable to it since Seafrigo is seeking this motion

not based upon an evidentiary hearing but solely on the strength of an alleged forum selection

clause which, prior to this litigation, the existence of which Cantone knew not.

Seafrigo tries to get ahead of the curve by telling this Court that it foresees that Cantone

will claim that there is a dispute as to the actual terms of the reverse side of the Seafrigo bill of

lading. *See Seafrigo Memorandum of Law at 16.* Cantone contends that the actual bill of lading

contains a forum clause requiring all disputes be brought in the Southern Jurisdiction of New

York. Yet, as stated above, Seafrigo admits that the original Seafrigo bill of lading with reverse

terms was never issued (hence Cantone has never seen such alleged original), but advises that its

counsel will bring this document at oral argument. However, because the law is quite clear that

factual disputes must be resolved in favor of the party resisting a motion to dismiss based on

forum selection then this Court must side with Cantone's allegation that the bill of lading sued on

actually contained a clause calling for jurisdiction in the Southern District of New York. Unless

and until discovery is conducted on Seafrigo's alleged bill of lading (including its authenticity)

and an evidentiary hearing is permitted to Cantone this must be the result.

   b.   *Test for Analyzing  Whether a Forum Selection Clause is Enforceable*

      Curiously missing from Seafrigo's motion is the proper standard by which its forum

selection clause is to be considered. "The Second Circuit has articulated a four-part test to

determine whether a forum selection clause should be enforced. *See Phillips Audio Active Ltd.,*

*495 F.3d 378, 383-84 (2d Cir. 2007).* First, a forum selection clause must be "reasonably

communicated to the party resisting enforcement.' *Id.* Second, a forum selection clause must be

classified as 'mandatory or permissive, *i.e.,* to decide whether the parties are required to bring

any dispute to the designated forum or simply permitted to do so.' *Id.* Third, 'the claims and

parties involved in the suit [must be] subject to the forum selection clause.' *Id.* Fourth, a court

must ascertain whether the resisting party has rebutted the presumption 'of enforceability by

making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that

the [Forum Selection Clause] was invalid for such reasons as fraud or overreaching.' *Id.*" *See*

*Olabisi Sales v. American Export Lines and Hoegh Autoliners Inc.*, 2008 U.S. Dist. LEXIS

36206 (Marrero, J.).

      That Seafrigo's counsel was counsel to one of the defendants in the *Olabisi Sales* case

and yet did not cite to this case (in which Judge Marrero upheld the forum selection clause and

dismissed the lawsuit) and the Second Circuit's four part test articulated in the *Phillips Audio*

*Active* case cited therein, indicates that Seafrigo actually recognizes that it cannot show, as it is

13

lawfully required, that its alleged forum selection clause was ever communicated, much less reasonably so, to Cantone and thus such clause is unenforceable.

That the forum selection clause was unknown and never communicated to Cantone is established by the supporting Declarations for Reto Cantone, CEO of Cantone & Co., Inc., and also Sarah Nodjoumi, who was in charge of operations of Cantone & Co. Inc., both whom are fully familiar with the facts and circumstances of the shipment in question and both whom flatly deny any knowledge of the forum selection clause at any relevant time. It should also be considered that this case is unlike those where a court may find that a forum selection clause was reasonably communicated because of a prior course of dealing. *See New Moon Shipping Co., Ltd. v. Int'l Marine Investors and Management Corp.*, 121 F.3d 24, 30-31 (2d Cir. 1997). This was the parties' first transaction and indeed Cantone's first shipment. *See Declaration of Reto Cantone at ¶ 2.*

On this factual basis, and taking Plaintiff's allegations as true and resolving all factual conflicts in its favor, Seafrigo is unable to show to this Court that its alleged forum selection clause was known by, or otherwise communicated to, Cantone. As such, Seafrigo's motion to dismiss Cantone's action in favor of the French forum must be denied as it cannot sustain its burden of proof under the Second Circuit's test announced in <u>Phillips Audio Active Ltd.</u> *See Electroplated Metal Solutions, Inc. v. American Services, Inc.*, 500 F. Supp. 2d 974, 976-77 (N.D. Ill. 2007) (Plaintiff found not to have received any notice of forum selection clause and thus not bound thereby).

c.    *Seafrigo USA's FMC tariff is irrelevant*

Seafrigo argues that because its affiliate Seafrigo USA filed a tariff with the FMC which included a copy of the form bill of lading used by Seafrigo, including the reverse side of the

terms and conditions including the alleged forum selection clause, that Cantone may be bound to the forum selection clause because it had notice of the forum selection clause. Seafrigo cannot cite any case law in support of this position because this is simply not the case.

The effect of filing a tariff with the FMC and the constructive notice that this may create on a party suing under the bill of lading is limited. While Seafrigo would have this Court believe that simply by filing a form bill of lading with the FMC that a carrier defendant puts the entire world on notice of all terms and limitations contained therein, this is not so. Rather, by operation of law, such a tariff filing (which is denied even occurred here since non-party Seafrigo USA filed the tariff) gives constructive notice only of those **terms** that are required to be filed with the FMC. *See Puerto Rico Marine Management, Inc. v. Ken Penn Amusement, Inc.*, 574 F. Supp. 563, (W.D. Pa. 1983) (rates and services set out in tariff enforced but not limitation of liability). *See also Allstate Ins. Co. v. International Shipping Corp.*, 703 F.2d 497 (11th Cir. 1983). (long form bill of lading filed with the FMC has no effect where provisions contained therein not otherwise issued to the shipper are not brought to the shipper's attention).

A review of the relevant law provides that the required **terms** of a tariff filed with the FMC does not include a forum selection clause. *See 46 CFR § 520.4* ***Tariff contents*** *appended as Exhibit B to Declaration of Stephen H. Vengrow.* Again, the filing of an FMC tariff as under this law merely gives constructive notice of terms required to be filed. The plain language of this law does not require that a carrier is required to file a forum selection clause or any limitation of liability asserted in the bill of lading. *See La Salle Machine Tool Inc. v. Maher Terminals, Inc.*, 611 F.2d 56 (4th Cir. 1977). Further, since Cantone did not have actual knowledge of FMC tariff, nor can it be said that it had constructive knowledge of the same, the terms contained on the reverse side of the Seafrigo bill of lading, including the alleged forum selection clause,

cannot bind Cantone. *See Moonwalk Int'l Inc. v. S.S. Seatrain Italy*, 1985 AMC 1270 (S.D.N.Y. 1984).

    d.    <u>*Seafrigo is subject to personal jurisdiction in New York.*</u>

Seafrigo does not dispute that the bill of lading calls for the discharge port of "New-York" with place of delivery as "Newark, NJ." The fact that the cargo was delivered to Newark, NJ, which, as Seafrigo asserts, is a port of New York. *See Seafrigo's Memorandum of Law at 8.* Seafrigo is subject to personal jurisdiction in New York notwithstanding the Rule B attachment.

"The burden of establishing personal jurisdiction lies with the party seeking to assert such jurisdiction. . . The law of the forum in which the district court sits determines a defendant's amenability to suit in that forum." *Santapaola v. Marine Oil Services of New York*, 2003 U.S. Dist. LEXIS 3390 at *1-2. Accordingly, New York law controls the analysis of this case. Seafrigo is subject to personal jurisdiction through New York Civil Practice Law and Rules ("C.P.L.R.") § 302(a). "Subsection (1) of C.P.L.R. § 302(a) provides for personal jurisdiction over a non-domiciliary who transacts any business within the state or contracts anywhere to supply goods or services to the state." *Id.* at *4. "The 'transacting business' requirement of §302(a)(1) is a lesser showing than the 'doing business' requirement of § 301. Under 301(a)(1), there must also be "some articulable nexus between the business transacted and the cause of action sued upon. Further, there must have been some purposeful activity within the State that would justify bringing the nondomiciliary defendant before the New York courts." *Id. citing McGowan v. Smith*, 52 N.Y.2d 268, 419 N.E.2d 321, 322, 437 N.Y.S. 2d 643 (N.Y. 1981).

Seafrigo services New York ports and derives business and income from these "purposeful activities" in New York. *See Santapaola v. Marine Oil Services of New York*, *supra*, 2003 U.S. Dist. LEXIS 3390 at *1-2.

As such, Seafrigo has "minimum contacts" with New York such that it may reasonably foresee the prospect of defending a suit here.

> This Court must inquire as to whether the exercise of personal jurisdiction over the defendant would offend the Fourteenth Amendment requirement of due process. See *A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 82 (2d Cir. 1993)*. In order to assert personal jurisdiction over a non-domiciliary defendant, the defendant must have certain "minimal contacts" with the state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). Due process requires that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958). Due process is not offended if the defendant's "conduct and connection with the forum State are such that it should reasonably anticipate being hailed into court there." *LaMarca v. Pak-Mor Manuf. Co.*, 95 N.Y.2d 210, 735 N.E.2d 883, 887, 713 N.Y.S.2d 304 (N.Y. 2000).
>
> In Metro. Life Ins., 84 F.3d 560, the Second Circuit interpreted the due process analysis as a two part inquiry. First, a court must inquire as to whether a defendant has "minimum contacts" with the forum state. Second, a court must determine if "the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'--that is, whether it is reasonable under the circumstances of the particular case." Metro. Life Ins., 84 F.3d 560, 567 (2d Cir. 1996), quoting Int'l Shoe, 326 U.S. at 316.

*See Santapaola v. Marine Oil Services of New York, supra*, 2003 U.S. Dist. LEXIS 3390 at *7-8.

Seafrigo has "minimum contacts" with New York such that it may reasonably foresee the prospect of defending a suit here. Seafrigo has purposefully availed itself of the privilege of transacting business in New York. Seafrigo has purposefully caused one of its vessels to travel to a port of New York to deliver cargo. Further, the assertion of personal jurisdiction over Seafrigo by this Court comports with the "traditional notions of fair play and substantial justice" as Seafrigo has conducted business here with entities at New York ports and in New York waters, such that defending this lawsuit in New York would not be burdensome. *See Id. at 8.*

"Further, there is no suggestion that resolution of this controversy could not proceed efficiently in plaintiff's chosen forum, or that the interests of any other state in litigation this matter are more compelling than those of New York." *Id. citing Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113, 94 L.Ed. 2d 92, 107 S. Ct. 1026 (1987).

Accordingly, the assertion of personal jurisdiction over Seafrigo is reasonable, and comports with "traditional notions of fair play and substantial justice." Therefore, this Court has personal jurisdiction over Seafrigo.[1]

## POINT FOUR

### CANTONE HAS NOT OVER-ESTIMATED THE AMOUNT OF ITS CLAIM AND THEREFORE THE AMOUNT OF CANTONE'S ATTACHMENT <u>SHOULD NOT BE REDUCED</u>

Seafrigo alternatively moves for a reduction in the amount of Cantone's attachment based on its allegation that Cantone has over-estimated the amount of its claim by including non-recoverable items such as freight charges and consequential damages. *Seafrigo's Memorandum of Law at 11.*

Admiralty Rule E(6) provides: "Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given." "While the plaintiff need not prove its damages with exactitude," the court must find that the plaintiff's damages estimate is "not frivolous." *Rice Co. v. Express Sea Transp. Corp.*, 2007 U.S. Dist. LEXIS 84300 at *8-9, 2008 A.M.C. 164 *citing Dongbu Express Co. Ltd. v. Navios Corp.*, 944 F. Supp. 235, 237 (S.D.N.Y. 1996).

---

[1] Assuming, *arguendo*, this Court declines to exercise jurisdiction over Seafrigo, this Court should not dismiss this action, but rather transfer the substantive recovery action to the District of New Jersey and sustain the Admiralty Rule B attachment in New York, where security exists for recovery of Cantone's claim.

Seafrigo argues that Cantone should not be allowed to include $6,754.18 in ocean freight and other charges paid to Seafrigo in the amount of the attachment because the Seafrigo bill of lading provides that the carrier may retain the freight charges regardless of whether cargo is lost or damaged. *Seafrigo's Memorandum of Law at 11.* Seafrigo also contends that the attachment should be reduced because consequential damages are not recoverable from the carrier. *Seafrigo's Memorandum of Law at 12.* These arguments raise questions of interpretation of the bill of lading. However, Admiralty Rule E(4)(f) does not require a plaintiff to prove its case at this stage of the proceedings. *See Ronda Ship Management Inc. v. Doha Asian Games Organising, Committee*, 511 Supp. 2d 399, 403 2007 U.S. Dist. LEXIS 72694 at *5. Accordingly, a motion to reduce the amount of the attachment is not the proper forum for interpreting damages recoverable pursuant to the terms of the underlying contract. *See Rhoda Ship Management Inv. V. Doha Asian Games, supra,* at 406 (holding "it is not for this Court to decide whether incidental and consequential damages are recoverable under the charter parties at issue, but rather for the English court to resolve in due course." ) The Court need only be satisfied that Cantone's claims are not frivolous.

Cantone provided Seafrigo with copies of invoices detailing the charges relating to preferred freezer spot checks by Cantone. *See Declaration of Sarah C. Nodjoumi at ¶ 8.* In fact, Cantone itemized each and every cost incurred relating to the freight shipment including the costs of $38,683.57 incurred from the manufacturer, the loading and unloading costs incurred by Preferred Freezer, purchaser of the frozen bakery products, plus monthly storage charges, and spot checks performed on behalf of Seafrigo. *See Declaration of Sarah C. Nodjoumi at ¶ 8.*

Seafrigo's claims for damages are not frivolous and therefore this Court should not reduce the amount of Cantone's attachment. It is not Cantone's burden at this stage of the

proceedings to prove its damages with exactitude. As Cantone has put forth sufficient evidence that its claim is not frivolous, this Court should not reduce the amount of its attachment.

## POINT FIVE

### SEAFRIGO'S FRENCH BANK GUARANTEE SHOULD NOT BE SUBSTITUTED AS SECURITY

Seafrigo requests that if this Court sustains the attachment, that the attached funds be released and it be allowed to substitute security in the form of a French bank guarantee. Seafrgio's reasoning for substitution of a French bank guarantee is based on its argument that French law, which it contends is applicable to this case by the bill of lading jurisdiction clause, permits the giving of bank guarantees as alterative security in cases of attachment. *Seafrigo's Memorandum of Law at 12.* However, as discussed supra, the jurisdictional clause allegedly contained in the bill of lading is unenforceable. This Court is the proper forum to adjudicate this matter, and accordingly a French bank guarantee cannot substitute as security for restrained funds attached pursuant to Cantone's Process of Maritime Attachment and Garnishment.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons Cantone respectfully requests that this

Court deny Seafrigo's motion to vacate Cantone's maritime attachment, or to reduce the amount

and substitute a bank guarantee, and/or to dismiss the case on the basis of a mandatory and

exclusive foreign forum selection agreement.

Dated: June 20, 2008
        New York, NY

                            LENNON, MURPHY & LENNON, LLC
                            *Attorneys for Plaintiff*
                            *Cantone & Co., Inc.*


                            By: _Anne C. LeVasseur_
                                Kevin J. Lennon
                                Anne C. LeVasseur
                                420 Lexington Avenue, Suite 300
                                New York, NY 10170
                                (212) 490-6050 – phone
                                (212) 490-6070 – facsimile
                                kl@lenmur.com
                                acl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on June 20, 2008 a copy of the foregoing MEMORANDUM OF

LAW IN OPPOSITION TO MOTION TO VACATE PLAINTIFF'S RULE B ATTACHMENT,

OR REDUCE THE AMOUNT AND SUBSTITUTE A BANK GUARANTEE; AND/OR TO

DISMISS THE CASE ON THE BASIS OF A MANDATORY AND EXCLUSIVE FOREIGN

SELECTION AGREEMENT was filed electronically and served by mail on anyone unable to

accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of

the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

Parties may access this filing through the Court's CM/ECF system.


By:  _Anne C. LeVasseur_
     Anne C. LeVasseur