**UNITED STATES DISTRICT COURT**          07 CV 6602 (PKL)

**SOUTHERN DISTRICT OF NEW YORK**

---

CANTONE & CO., INC.,

                          Plaintiff,

     - against -

SEAFRIGO a.k.a. SEAFRIGO MARSEILLE,

                          Defendants.

---

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION:**
  **(1)  TO VACATE PLAINTIFF'S RULE B ATTACHMENT, OR REDUCE THE AMOUNT AND SUBSTITUTE A BANK GUARANTEE; AND/OR**
  **(2)  TO DISMISS THE CASE ON THE BASIS OF A MANDATORY AND EXCLUSIVE FOREIGN FORUM SELECTION AGREEMENT.**

1

TABLE OF CONTENTS

*Page*

| | | |
|---|---|---|
| 1 | | INTRODUCTION |
| 2 | | ARGUMENT |
| 2. | A. | Equitable Vacation of the Attachment |
| 4 | B. | The Forum Clause |
| 9 | C. | Personal Jurisdiction in New York |
| 10 | D. | Reduction of Amount of Attachment |
| 10 | | CONCLUSION |

**UNITED STATES DISTRICT COURT**  07 CV 6602 (PKL)

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CANTONE & CO., INC.,<br>                    Plaintiff,<br>- against -<br><br>SEAFRIGO a.k.a. SEAFRIGO MARSEILLE,<br>                    Defendants. | **DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION:**<br>**(1) TO VACATE PLAINTIFF'S RULE B ATTACHMENT, OR REDUCE THE AMOUNT AND SUBSTITUTE A BANK GUARANTEE; AND/OR**<br>**(2) TO DISMISS THE CASE ON THE BASIS OF A MANDATORY AND EXCLUSIVE FOREIGN FORUM SELECTION AGREEMENT.** |

## INTRODUCTION

This reply memorandum is submitted on defendant's behalf in support of its motion to:

A. Vacate plaintiff's Rule B attachment, or alternatively, reduce the amount of the attachment and substitute a French bank guarantee; and/or

B. Dismiss the claims against it on grounds of a mandatory and exclusive French forum selection provision in the applicable contract.

We think plaintiff is making this motion more complicated than it needs to be. For example:

(1) The extended argument about the validity of its maritime attachment [*Pltff's Opp. Mem., pp. 4 – 8*] is unnecessary. SEAFRIGO's argument is not that plaintiff failed to comply with Rule B in the first instance, but that equitable grounds exist to vacate the attachment.

(2) Also irrelevant is plaintiff's discussion about the standard for dismissal under F.R.Civ.P. 12(b)(1) (Lack of subject matter jurisdiction) and on a motion to dismiss for lack of

1

personal jurisdiction. *Pltff's Opp. Mem., pp. 11 – 13*.  Defendant, SEAFRIGO, did not move under Rule 12(b)(1), and the Second Circuit's test in *Miller* for dealing with motions to dismiss for lack of personal jurisdiction in long-arm cases is irrelevant to a case like this where plaintiff could only obtain process of maritime attachment and garnishment by showing a lack of personal jurisdiction in this district. [1]

(3)     Finally, there are two and one half pages of case law discussing long-arm jurisdiction in New York.  *Pltff's Opp. Mem., pp. 16 – 18.*  The recitation means nothing without some showing that such jurisdiction might exist.  (By plaintiff's own admission, it does not.  *See, POINT C, below.*)

## ARGUMENT

A.     EQUITABLE VACATION OF THE ATTACHMENT

In its moving papers, defendant, SEAFRIGO, argued that it is entitled to vacation of the attachment on equitable grounds since it can be found in the adjacent district of New Jersey through its affiliate, nonparty, SeaFrigo-USA.  Plaintiff opposes the application on grounds that defendant is not entitled to pierce its own corporate veil.  *Pltff's Opp. Mem., pp. 9 – 11.*  However, defendant, SEAFRIGO, did not and does not seek to disregard its own separate corporate existence.

---

[1]     See, *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2d Cir. 1981) cited at pages 11 – 12 of plaintiff's opposing memorandum.   In order to obtain its maritime attachment, plaintiff had to – and did - allege that defendant, SEAFRIGO could not be "found in this district." *Deft's Mov. Exhibit M, paras. 2 – 4.*   That phrase means, among other things that there is no basis for exercising personal jurisdiction here.  *See, Pltff's Opp. Mem., pp. 8 – 9.*

It is a well accepted rule of law that when Company A performs activities for Company B in a given forum that Company B would otherwise have to perform itself, Company A's activities are imputed to Company B for jurisdictional purposes. See, e.g., *Gelfand v. Tanner Motor Tours,* 385 F.2d 116 (2d Cir. 1967) cert. den. 900 U.S. 996 (1968) (Foreign corporation held to be doing business in New York through independent company because otherwise it would have had to go to New York to perform the service for itself). [**2**]

In this case, the SEAFRIGO moving declarations as well as the common web site it maintains with SeaFrigo USA shows that the two are part of a common enterprise offering worldwide logistics services, and each acts as an "office" of the corporate group. *See, Deft's Mov. Mem., p. 5 (marshaling the evidence);* see also, *Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.,* 15 N.Y.2d 97, 256 N.Y.S.2d 129 (1965) (Although separate entities, domestic corporation acted as mere department of foreign corporation and foreign corporation was present in New York through the domestic corporation – and the summons and complaint could be served on the foreign corporation by delivery to the domestic corporation).

In a decision earlier this year, Judge Rakoff vacated a Rule B attachment against a foreign corporation (named Onego B.V.) because it could be found in the adjacent district of New Jersey through a related company (named Onego Shipping Inc.), and the related company

---

2    Even though New Jersey law governs the issue of SEAFRIGO's amenability to jurisdiction there, New York cases may also be relied on since New Jersey permits the exercise of personal jurisdiction over a non-resident defendant to the full extent permitted by the due process clause of the 14th Amendment. *Ivan Visin Shipping, Ltd. v. Onego Shipping & Chartering B.V.,* 2008 WL 839714, *2, n. 1 reh. den. 543 F.Supp.2d 338 (S.D.N.Y. 2008).

therefore qualified by law as one on which service of process could have been made. *Ivan Visin Shipping,* infra at fn.2, 2008 WL 839714, *2 – 4. [**3**]

B.   THE FORUM CLAUSE

Plaintiff takes the position that since the bill of lading reverse side terms and conditions were not sent to it, the forum clause cannot be effective. Plaintiff rejects the argument that the SeaFrigo USA tariff provides contstructive notice. *Pltff's Opp. Mem., pp. 11 – 16.* We disagree for several reasons.

First, plaintiff has sued on the very bill of lading contract that contains the forum clause. *Deft's Mov. Exhibit G, paras, 6, 7, 10 and 13.* The courts have been uniform in holding that a plaintiff cannot selectively disavow portions of a contract on which it has brought suit. *Ana Distribution, Inc. v. CMA-CGM (America) Inc.,* 329 F.Supp. 565, 567 (S.D.N.Y. 2004) (citing cases); *Mitsui & Co. v. MIRA M/V,* 111 F.3d 33, 36 (5th Cir. 1997) (Party that sues on bill of lading accepts its terms); *Kanematsu Corp. v. M/V Gretchen W,* 897 F.Supp. 1314, 1317 (D.Or.1995) (Same); *Nissho Iwai Corp. v. M/V Joy Sea,* 1999 WL 970335, *3 (E.D.La. 1999) (Same). As Judge Scheindlin has explained:

> … because it alleges that it is owed a duty by the … carrier[,] [plaintiff] "cannot pick and choose among the clauses of the bills of lading, selecting those that impose duties on the vessel and impose liability while avoiding those that establish the forum where that liability is to be determined."

---

3    Since, as plaintiff complaint alleges, the shipment was carried to Newark, NJ [*Deft's Mov. Exhibit G, para. 8*], long-arm jurisdiction in New Jersey would exist over SEAFRIGO in any event. *See, n. 2, supra.*

*F.D. Import & Export Corp. v. M/V REEFER SUN,* 248 F.Supp.2d 240, 248 – 49 (S.D.N.Y. 2002).

Second, a bill of lading is not, itself, the contract of carriage. It serves as "evidence of the contract for carriage." *Norfolk So. Rwy Corp. v. Kirby,* 543 U.S. 14, 18 – 19 (2004). The fact that a paper bill of lading was not issued does not mean that there was not a binding contract between plaintiff and the bill of lading carrier on the terms and conditions contained in the standard form.

> [I]t cannot be inferred that it was the intention of the parties to enter into a contract that would bind the carrier as insurer; but an implied understanding arose from common business experience that the carrier would issue such bill of lading as it was its custom to issue to shippers in the usual course of its business.
>
> * * *
>
> In the ordinary case of a shipment of goods, it is not to be assumed, upon proof of delivery without condition, that the carrier intends to become insurer; *but a shipper, in the absence of a special contract, must be presumed to deliver his goods on the terms and conditions usually and customarily imposed by the carrier in the regular course of business.*

*Luckenbach S.S. Co., Inc. v. Am. Mills Co.,* 24 F.2d 704, 705 (5th Cir. 1928); See also:

- *Am. Home Assur. Co. v. Hapag-Lloyd Container Linie, GmbH,* 2004 WL 1616379 (S.D.N.Y.) (Rejecting argument that because the Express Cargo Bill was never issued, its terms do not apply. Bill serves as governing contract even if not actually issued) (citing cases);

- *Interline v. Zim Israel Navigation Co.,* 2000 WL 1060445 (N.D.Calif.) (Shipper bound by forum clause in unissued bill of lading);

- *Royal Ins. Co. v. Sea-Land Service, Inc.,* 50 F.3d 723, 727 – 29 (9th Cir. 1995) (Actual possession of a bill of lading is not required to bind the shipper to its terms) (Discussing cases).

As one Court explained:

> … so long as the bill of lading has all the necessary information, the shipper, or any interested other party, has the means of learning everything it may wish to know about the terms of the transaction.

*Carman Tool & Abrasives, Inc. v. Evergreen Lines,* 871 F.2d 897, 901, n.9 (9th Cir. 1989).  So, contrary to plaintiff's argument, a carrier is not obligated to ensure that a shipper has actual knowledge of its bill of lading terms and conditions.  Rather, it is the shipper's obligation to review the bill of lading to find out for itself, and there was nothing that prevented plaintiff from doing so.

Relying on the *Olabisi* case, plaintiff takes the position that only a shipper who has previously shipped with a specific carrier can be charged with knowledge of the carrier's bill of lading terms and conditions.  *Pltff's Opp. Mem., pp. 13 – 14.*  Although a prior course of dealing, where it exists, is a perfectly legitimate ground for disposing of a plaintiff's plea of ignorance, it is not the only ground.

> [N]othing in case law indicates that the absence of a prior course of dealing precludes application of [the *Luckenback*] presumption [that a shipper is presumed to deliver his goods to the carrier on the carrier's usual and customary terms and conditions], especially when the shipper is experienced.

*N.H. Ins. Co. v. Seaboard Marine, Ltd.,* 1992 WL 33861, *3 (S.D.Fla.) (Bracketed text ours) (In any case, shipper's experience does not have to be with the specific carrier at issue).

Plaintiff also takes the position that the inclusion of a copy of the bill of lading terms and conditions with the SeaFrigo USA mandated F.M.C. tariff is insufficient to provide constructive notice. In view of the foregoing, we do not believe it is necessary to reach this point. Nevertheless, in the *Ana* case cited above, Judge Rakoff rejected an argument that the bill of lading forum clause was illegible because, inter alia, the bill of lading terms and conditions were publicly noticed in the web site tariff the carrier was required to maintain under federal statute. *Id.*, 329 F.Supp. at 567; see also, *Cera-Tech, S.A. v. ALLISON LYKES,* 1991 WL 94178, *9 reh. den. 1991 WL 126383 (E.D.La.) (Effect of including bill of lading form with F.M.C. tariff is to place public at large on notice of what it contains).[**4**]

The "reasonable communication" test referred to by plaintiff [*Pltff's Opp. Mem., pp. 13 – 14*] has been applied in cases of special contract or consumer transactions such as passenger cruise line tickets. "It is doubtful that the test is tailored to the type of commercial shipping contract at issue here." *Am. Home Assur. Co. v. TGL Container Lines,* 347 F.Supp.2d 749 (N.D.Calif. 2004) (Rejecting argument that bill of lading forum clause was invalid because the carrier failed to provide notice that the clause was in the contract).

Finally, although plaintiff's personnel have submitted declarations that they never received the bill of lading terms and conditions, they do not deny the allegations in plaintiff's

---

[4] Plaintiff argues that a bill of lading forum clause is not a required term of a tariff. *Pltff's Opp. Mem., p. 15.* However, both federal statute and federal regulation obligate a carrier to publish its bill of lading terms and conditions as part of its tariff. 46 U.S.C. 40501(b)(5); 46 C.F.R. 520.4(a)(5)]; see also, *Baosteel America, Inc. v. M/V ""OCEAN LORD,* 257 F.Supp.2d 687, 690 (S.D.N.Y. 2003) ("Pursuant to the Shipping Act, the Federal Maritime Commission requires common carriers to publish a sample of their bills of lading.").

moving papers that plaintiff asked that the shipment move by an "express bill of lading" which meant that no paper document was issued. *Deft's Mov. Decl. of GOURIO, paras. 6 – 7.* The purpose of an express bill of lading is for the shipper's convenience so that the consignee need not await receipt of a paper bill of lading before obtaining delivery of the cargo from the carrier. *Jockey Int'l, Inc. v. M/V LEVERKUSEN EXPRESS,* 217 F.Supp.2d 447, 454 (S.D.N.Y. 2002). Because an express bill is not meant to be issued in paper form, and because plaintiff expressly requested use of an express bill, it would be "illogical and unfair to penalize" SEAFRIGO for not sending plaintiff a paper bill of lading [*id.*] – especially since neither of plaintiff's opposing declarations say that plaintiff ever asked SEAFRIGO for it. *See, Pltff's Opp. Decls. Of NODJOUMI and CANTONE.*

> [Plaintiff] argues that the forum selection clause is not valid because the [carriers] have not produced an [Express Cargo Bill of Lading ("ECB")] that was physically delivered at the time of shipment. This argument cannot be accepted. As discussed above, the raison d'etre of an ECB is to diminish reliance on paper documents. Moreover, an ECB is issued instead of a bill of lading only if the shipper requests it. Under the Shipping Act of 1998, 46 U.S.C.A. app. § 1707(a)(1)(E) and (2), [the carrier] was required to publish the terms and conditions of its bills of lading and its ECBs. [the carrier] did so by publishing them on its website. Because plaintiff specifically requested the ECB, it cannot now complain that it was not issued a paper printout of the same or that it had no notice of the bill of lading's terms and conditions.

*Jockey Int'l,* supra, at 454, n.2 (Bracketed text is ours).

8

C.    PERSONAL JURISDICTION IN NEW YORK

Having previously filed a Rule B affidavit to the effect that defendant, SEAFRIGO, cannot be found in this district, plaintiff now argues that it is in fact subject to personal jurisdiction in the Southern District of New York, and we're not sure we follow the reasoning.

> Seafrigo does not dispute that the bill of lading calls for the discharge port of "New York" with place of delivery as "Newark, NJ." The fact that the cargo was delivered to Newark, NJ, which, as Seafrigo asserts, is a port of New York. *See, Seafrigo's Memorandum of Law at 8.* Seafrigo is subject to personal jurisdiction in New York notwithstanding the Rule B attachment.

*Pltff's Opp. Mem., p. 16.*  We disagree on the facts and the law.

The bill of lading identifies the discharge port as "New York."  *Deft's Mov. Exhibit A.* However, in the maritime industry, certain ports in New Jersey are considered to be part of the "Port of New York".  *Hess v. Port Authority Trans-Hudson Corp.,* 513 U.S. 30, 36 (1994) (Port of New York District, is a defined *geographic* area that embraces New York Harbor, including parts of New York and New Jersey);  see also, *GFT U.S.A. Corp. v. M/V Export Freedom,* 1995 WL 276193, *3, para. 25 (S.D.N.Y.) (Vessel "arrived at Port Newark in the port of New York"). However, that does not mean that ports in New Jersey are considered part of New York State for purposes of personal jurisdiction.  See, *Abrantes v. St. Gotthard Schiffahrts, A.G.,* 621 F.Supp. 49, 50 (S.D.N.Y. 1985).

In this case, plaintiff's complaint is very clear.  The vessel did not discharge anywhere in the Southern District or New York State.  It arrived and discharged at Newark, NJ.  *Deft's Mov.*

9

*Exhibit G, para. 8.* Without more (and plaintiff has no more), there is nothing to suggest the existence of jurisdiction in New York over the person of defendant, SEAFRIGO.

D.REDUCTION OF AMOUNT OF ATTACHMENT

Plaintiff argues that SEAFRIGO is not entitled to a reduction of the amount of the attachment because plaintiff is not required to prove its damages at this stage of the proceeding. *Pltff's Opp. Mem., pp. 18 – 19.* That much is true, but it also side steps the issue. SEAFRIGO is not asking for proof of plaintiff's damages, but whether as a matter of law damages comprising the freight charges and consequential damages are even recoverable. Plaintiff relies upon the *Rhoda Ship Management* case for the proposition that it is not for the Court to decide such a question. But the *Rhoda* case is distinguishable since there, the attachment was sought as security for a case pending in London. This case is not pending in a foreign forum. If, as plaintiff argues, 'This Court is the proper forum to adjudicate this matter" [*Pltff's Opp. Mem., p. 20*], then there is no reason why the legal basis of plaintiff's claimed damages (as opposed to its factual basis) cannot be determined. Otherwise, by plaintiff's reckoning, there could never be a reduction in the amount of Rule B attachments, and Supplemental Admiralty Rule E(6) is a superfluous redundancy.

CONCLUSION

The motion should be granted.

Dated: New York, NY*Respectfully submitted,*
CICHANOWICZ CALLAN KEANE VENGROW &
June 25, 2008TEXTOR, LLP, 61 Broadway 3000, New York, NY 10006
212-344-7042, Attorneys for Defendant

By: /s/ _____Stephen H. Vengrow_____
STEPHEN H. VENGROW [SV-3479]

10