```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/27/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CANTONE & CO., INC.,

                    Plaintiff,

          - against -                    **OPINION AND ORDER**

SEAFRIGO a/k/a SEAFRIGO
MARSEILLE,                               07 Civ. 6602 (PKL)

                    Defendant.

**APPEARANCES**

LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Kevin J. Lennon, Esq.
Anne C. LeVasseur, Esq.

Attorneys for Cantone & Co., Inc.


CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR, LLP
61 Broadway, Suite 3000
New York, New York 10006
Stephen H. Vengrow, Esq.

Attorneys for SeaFrigo

**LEISURE, District Judge:**

Defendant SeaFrigo a/k/a SeaFrigo Marseilles ("SeaFrigo") moves this Court pursuant to Rule E(4)(f) of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure for an order (1) vacating the process of maritime attachment and garnishment levied in favor of plaintiff Cantone & Co., Inc. ("Cantone") pursuant to this Court's *ex parte* order dated July 23, 2007, and (2) dismissing the claims against SeaFrigo for lack of personal jurisdiction. Alternatively, SeaFrigo moves to (1) have the amount of Cantone's security reduced pursuant to Supplemental Admiralty Rule E(6), (2) substitute a French bank guarantee for the attached funds pursuant to Supplemental Admiralty Rule E(5), upon which substitution, the attached funds would be released, and (3) dismiss Cantone's claims against SeaFrigo on the basis of a French forum selection clause. For the following reasons, SeaFrigo's motion to vacate the writ of attachment and dismiss Cantone's complaint is GRANTED.

## BACKGROUND

### I.    Factual History

The underlying dispute in this admiralty and maritime action arises out of the shipping of 1500 packages of frozen ready-to-bake bakery products from France to Newark, New Jersey in September and October of 2006 on the vessel M/V Stadt Wismar.

1

(Compl. ¶¶ 5, 7.)  Cantone, a New York-based Delaware corporation, owned the cargo, which was carried by SeaFrigo, a French company, pursuant to a freight forward agreement and bill of lading that SeaFrigo issued on September 22, 2006. (Compl. ¶¶ 2-7.)

Cantone asserts that the bakery products were damaged due to defrosting, thawing, and re-freezing during the voyage. (Compl. ¶ 9.)  Cantone alleges that the damage to its cargo was caused by SeaFrigo's breach of its contractual obligations under the contract of carriage. (Compl. ¶¶ 10-11.)  Cantone claims principle damages of $50,000. (Compl. ¶ 13.)

II.  Procedural History

On July 23, 2007, Cantone filed suit against SeaFrigo, seeking an *ex parte* order directing the clerk to issue process of maritime attachment and garnishment against SeaFrigo pursuant to Supplemental Admiralty Rule B in an amount up to $60,000.  On the same day, Judge George B. Daniels, sitting in Part I, issued such an order.  As of the filing of defendant's motion, Cantone had attached $60,000 of SeaFrigo's assets.  SeaFrigo filed its answer on August 24, 2007, asserting several defenses,[1] and asked

---

[1] Pursuant to Supplemental Rule E(8), defendant asserted in its answer that its appearance in this action is limited to defense of the claims for which plaintiff obtained attachment or garnishment of defendant's property. (Answer ¶ 19.)

2

for judgment dismissing the complaint and an order vacating the attachment.

In a letter to the Court dated April 8, 2008, defense counsel Stephen H. Vengrow, Esq. requested a pre-motion conference on defendant's proposed motion to (1) dismiss the complaint on the grounds of a forum selection agreement in the contract, and (2) release the attachment of defendant's property in exchange for a bank guarantee. (Vengrow 4/8/08 Letter at 1.) A pre-motion conference was held on April 24, 2008, at which both parties appeared and presented arguments to the Court. On May 22, 2008, defendant filed the instant motion, which plaintiff opposes.

## DISCUSSION

### I. Motion to Vacate

When a defendant moves to vacate an attachment pursuant to Supplemental Admiralty Rule E, the plaintiff bears the burden of showing that the filing and service requirements of Supplemental Admiralty Rules B and E were met and that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d

3

434, 445 (2d Cir. 2006) (footnote omitted). If plaintiff fails

to demonstrate that it has met the requirements, the Court must

vacate the attachment. Plaintiff, however, is not required to

prove its case. Rather, plaintiff must meet a prima facie

standard. See Ronda Ship Mgmt. Inc. v. Doha Asian Games Org.

Comm., 511 F. Supp. 2d 399, 403 (S.D.N.Y. 2007)("The majority of

courts in this district have understood Aqua Stoli to require

the application of the prima facie standard when considering the

adequacy of a claim in a maritime vacatur motion.").

Once defendant's property has been restrained by a maritime

attachment order, defendant can move to vacate the attachment

under Rule E(4)(f). See Fed. R. Civ. P. Supp. R. E(4)(f). A

district court "must vacate an attachment if the plaintiff fails

to sustain his [or her] burden of showing that he [or she] has

satisfied the requirements of Rules B and E." Aqua Stoli, 460

F.3d at 445. In addition, if plaintiff carries its burden to

show that an attachment satisfies the requirements, the district

court still may vacate the attachment if "1) the defendant is

present in a convenient adjacent jurisdiction; 2) the defendant

is present in the district where the plaintiff is located; or 3)

the plaintiff has already obtained sufficient security for a

judgment." Aqua Stoli, 460 F.3d at 436; see also Williamson v.

Recovery Ltd. P'ship, 542 F.3d 43, 50-51 (2d Cir. 2008) ("[E]ven

when a plaintiff meets the procedural requirements for obtaining

4

a maritime attachment, the district court may nonetheless vacate such an attachment for equitable reasons."). It is defendant's burden to establish any equitable grounds for vacatur. Aqua Stoli, 460 F.3d at 445 n.5; S.T. Shipping & Transp. Inc. v. Golden Fleece Mar. Inc., No. 07 Civ. 11147 (SAS), 2008 WL 4178189, at *4 (S.D.N.Y. Sept. 9, 2008).

In its motion to vacate the attachment of funds that were restrained by the *ex parte* order Judge Daniels issued on July 23, 2007, SeaFrigo does not challenge whether plaintiff has a valid prima facie claim. Rather, in support of its motion to vacate, SeaFrigo argues that it can be found in a convenient adjacent jurisdiction — the District of New Jersey — because a non-party member of its corporate group, SeaFrigo USA, Inc. ("SeaFrigo USA"), has an office in Seacaucus, New Jersey. (SeaFrigo Mot. at 7-9.)

Defendant's memorandum of law and the accompanying declarations submitted in support of defendant's motion to vacate the attachment and dismiss the case set forth numerous facts regarding the relationship between defendant and SeaFrigo USA. Defendant claims that the two companies are owned by the same corporate parent, Entrepots Et Transports Barbe SeaFrigo Le Havre, France, which is part of the Condigel Group, and are "branch offices of one another." (Id. at 4; Gourio Decl. ¶ 10;

5

Barbeyrac Decl. ¶¶ 5, 7.)[2]  In addition, defendant asserts that
it works together with SeaFrigo USA on shipments between the
United States and France. (SeaFrigo Mot. at 4-5; Barbeyrac Decl.
¶ 7.)  With respect to the cargo at issue in this case, Olivier
Barbeyrac, Director of Sales for SeaFrigo USA, declares under
oath that on September 1, 2006, Cantone contacted SeaFrigo USA
to obtain a rate for shipment of a refrigerated container from
France to Newark, New Jersey. (Barbeyrac Decl. ¶ 3.)  In
response, SeaFrigo USA submitted a sales quote to Cantone. (Id.
¶ 4, Ex. B.)  Thereafter, the cargo subject to the sales quote
was booked for transport with defendant, who prepared the bill
of lading underlying this suit and, in turn, contracted with
Hatsu Marine Limited ("Hatsu") for transport of the cargo aboard
the M/V Stadt Wismar.[3] (Id.)  Pursuant to the bill of lading,
defendant was named as carrier and "SeaFrigo USA acted as the
handling agent in the United States," whereby SeaFrigo USA
"provide[d] the arrival notice to . . . Cantone, . . .
effect[ed] delivery of the cargo, as required," and was
obligated to "collect the freight if the movement was a
'collect' shipment." (Barbeyrac Decl. ¶ 5.)

---

[2] "Gourio Decl." refers to the Declaration of Marc Gourio, Office Manager of
SeaFrigo Marseilles, sworn to on May 20, 2008. "Barbeyrac Decl." refers to
the Declaration of Olivier Barbeyrac, Director of Sales for SeaFrigo USA,
sworn to on May 19, 2008.

[3] Hatsu's Sea Waybill for transport of plaintiff's cargo names defendant and
SeaFrigo USA as shipper and consignee, respectively. (Barbeyrac Decl. ¶ 3;
Gourio Decl. ¶ 9, Ex. B.)

6

In addition, "SeaFrigo USA, Inc." appears on the lower left corner of the bill of lading that defendant issued for plaintiff's cargo, as it routinely does, because SeaFrigo USA provides the form bill of lading that defendant uses for movement of cargo between France and the United States. (SeaFrigo Mot. at 4; Gourio Decl. ¶ 10, Ex. A.; Barbeyrac Decl. ¶ 6.) Defendant explains that for cargo moving from France to New Jersey, as in this case, defendant is routinely listed as carrier, while SeaFrigo USA routinely acts as handling agent upon the cargo's arrival, and vice-versa for cargo moving from the United States to France. (Barbeyrac Decl. ¶ 5.)

A defendant is "found" within a district for purposes of Rule B where defendant (1) is found in terms of jurisdiction and (2) can be found for service of process. Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963); Metal Transp. Corp. v. Canadian Transp. Co., 526 F.Supp. 234, 235 (S.D.N.Y. 1981) (Weinfeld, J.). That is, to defeat a Rule B attachment, "not only must the defendant be able to accept process, but the defendant must *also* 'be engaged in sufficient activity in the district to subject it to jurisdiction even in the absence of a resident agent expressly authorized to accept process.'" VTT Vulcan Petroleum, S.A. v. Langham-Hill Petroleum, Inc., 684 F.Supp. 389, 390 (S.D.N.Y. 1988) (Leisure, J.) (quoting Seawind, 320 F.2d at 583).

7

With regard to the jurisdictional prong, a non-resident or foreign defendant is subject to personal jurisdiction in a district where there exist "minimum contacts" between defendant and the forum state, such that the exercise of jurisdiction over defendant does not violate "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).[4]  In addition, a non-resident or foreign defendant "may be subject to jurisdiction, on a general or specific basis, depending on the contacts and actions of its agents." Ivan Visin Shipping, Ltd. V. Onego Shipping & Chartering, B.V., 08 Civ. 1239, 2008 U.S. Dist. LEXIS 25028, at *4-*5 (S.D.N.Y. Apr. 1, 2008) (internal quotation marks and citations omitted), motion for reconsideration denied, 543 F. Supp. 2d 338 (S.D.N.Y. 2008).

In Ivan Visin Shipping, Judge Rakoff confronted an analogous situation where a foreign defendant moved to vacate an attachment on the basis that defendant was found in the convenient adjacent District of New Jersey by virtue of its relationship with another company headquartered and operating a

---

[4] The jurisdictional inquiry is similar under federal and New Jersey law.  New Jersey's long-arm statute has been interpreted as permitting the exercise of personal jurisdiction "to the uttermost limits permitted by the United States Constitution." Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 469, 508 A.2d 1127, 1131 (N.J. 1986). Thus, a New Jersey court could exercise jurisdiction over a non-resident defendant where such defendant's contacts with New Jersey are sufficient enough to satisfy the Due Process clause of the United States Constitution.

8

continuous and systematic business in Hoboken, New Jersey. Id. at *3.  There, although defendant and the related New Jersey entity were branch offices of the same international shipping company, each was a separate corporate entity established pursuant to the laws of its respective domicile country. Id. at *5.  The Court found that defendant succeeded in showing that the affiliated New Jersey corporation was its agent, so that the actions of its agent were imputed to defendant and defendant was subject to personal jurisdiction in New Jersey. Id. at *5-*6.

Specifically, the agent chartered and operated vessels in the name and on behalf of defendant and managed operations for defendant's ships trading in the Americas. Id. at *6.  In addition, on behalf of defendant, the agent solicited freight business, booked and contracted for the carriage of cargo, arranged for necessaries, collected and remitted hires and/or freights, attended to customs services, and filed notices of arrival and automated manifest systems for all defendant's vessels. Id. at *6-*7.  Moreover, the New Jersey entity was contractually obligated to provide certain management services on behalf of defendant. Id. at *7-*8.  Based on these facts, Judge Rakoff held that defendant was subject to personal jurisdiction in New Jersey for purposes of Supplemental Admiralty Rules B and E by virtue of the activities of its agent. Id. at *9.

9

Here, like in Ivan Visin Shipping, defendant claims that
SeaFrigo USA and defendant are branch offices of the same
corporate parent, and are listed as such on the corporate
parent's website. (Barbeyrac Decl. Ex. E.) In addition,
defendant contends that it works with SeaFrigo USA on shipments
between France and the United States. (Id. ¶ 7.) Specifically,
defendant asserts that SeaFrigo USA acts as its "handling" agent
in the United States, and, in accordance with this agency
relationship, SeaFrigo USA performed certain management services
on defendant's behalf with respect to plaintiff's cargo, such as
providing arrival notice to plaintiff and effecting delivery of
plaintiff's cargo. (Id. ¶ 5.) Although not a formal contractual
agency relationship, according to Mr. Barbeyrac's sworn
declaration, SeaFrigo USA routinely performs such services on
behalf of defendant on an ongoing basis for cargo moving from
France to New Jersey. (Id.)

Plaintiff's opposition fails to provide material evidence
to rebut the finding that SeaFrigo USA is an agent of defendant.
Indeed, in its Affidavit in Support of Prayer for Maritime
Attachment, sworn to by Kevin J. Lennon, Esq. on July 23, 2007,
plaintiff's counsel states that it reviewed defendant's website,
which revealed that defendant has "an affiliated company located
in Seacaucus, NJ named Seafrigo U.S.A." that was "involved -
apparently as an agent on behalf of the [d]efendant - in the

10

transaction discussed in [p]laintiff's [c]omplaint," but was not named as defendant in the complaint. (Lennon Aff. ¶ 3.) Moreover, Cantone was seemingly aware of SeaFrigo USA's agency relationship with defendant when it booked plaintiff's cargo for transport with defendant. Cantone initially solicited business from SeaFrigo USA for movement of the cargo at issue in this case (Barbeyrac Decl. ¶¶ 3-4), and was later advised that SeaFrigo's "U.S. office would handle all of the logistic[s]" concerning the shipment of plaintiff's cargo from France to New York, and that "[a]ll correspondence and dealings therefore were through their U.S. office." (Cantone Decl. ¶ 2.)[5]

Thus, this Court finds that SeaFrigo USA operates as defendant's general agent, such that defendant would be subject to personal jurisdiction in New Jersey for purposes of Supplemental Admiralty Rules B and E. See Restatement (Third) of Agency § 2.01 cmt. d ("The prototypical general agent . . . has authority to conduct a series of transactions and [] serves the principal on an ongoing as opposed to an episodic basis."); see also Lipton, Inc., v. Grist Mill Co., Inc., Civ A. No. 88-4190, 1989 WL 60325, at *2, *4 (D.N.J. June 6, 1989) (finding, in non-maritime context, that activities of out-of-state defendant's agents – two food brokers who sold defendant's

---

[5] "Cantone Decl." refers to the declaration of Reto E. Cantone, plaintiff's Founder, President, and CEO, which was sworn to on June 19, 2008.

11

products to large New Jersey chain supermarkets and one
confectionary broker who sold defendant's products to vending
machine and candy distributors – constituted minimum contacts
with New Jersey that warranted exercise of personal jurisdiction
over defendant).

Having found that defendant is present in the District of
New Jersey in the "jurisdictional" sense as a result of the
services performed by its general agent, SeaFrigo USA, the Court
next turns to the remaining issue of whether defendant is
present in the District of New Jersey for service of process.
With regard to whether defendant can be found in New Jersey for
purpose of service of process, "[i]n admiralty, as under Rule
4[(h)] of the Federal Rules of Civil Procedure, service upon a
corporation may properly be effected by service upon an officer,
a managing or general agent, or any other agent authorized by
appointment or by law to receive service of process." Seawind,
320 F.2d at 582 (2d Cir. 1963) (internal quotation marks and
citations omitted); see Fed. R. Civ. P. 4(h)(1)(B). "When a
company's managing or general agent is present in the district,
it is immaterial that [the agent] is not expressly authorized by
[defendant] to accept service of process on its behalf." Ivan
Visin Shipping, 2008 U.S. Dist. LEXIS 25028, at *9 (citation
omitted).

Defendant argues that Cantone could have effected service upon defendant through SeaFrigo USA, given SeaFrigo USA's ongoing role as agent for defendant with regard to shipments to and from New Jersey. (SeaFrigo Mot. at 9.) As discussed above, SeaFrigo USA performs activities as defendant's general agent, and hence, the Court finds that defendant could be served with process within the District of New Jersey. See Ivan Visin Shipping, 2008 U.S. Dist. LEXIS 25028, at *9-*10; see also Metal Transp. Corp., 526 F.Supp. at 235 (finding that defendant was "found" within the district for purposes of Rule B because it conducted continuous and systematic activity in New York through the acts of its shipping agent, which "arrange[d] for the discharge and loading of cargo, including the hiring and paying of stevedores, handle[d] the port-to-port operation of chartered vessels and monitor[ed] and report[ed] to [defendant] on the payment of freight monies," thus making clear that defendant was jurisdictionally present within the district and amenable to service of process through its general agent); Mattes v. Nat'l Hellenic Am. Line, S.A., 427 F.Supp. 619, 630 (S.D.N.Y. 1977) (stating that "[n]ormally, the person in charge of the activities in the state which are the basis for the conclusion that the defendant is present is the managing agent for purposes of service" and finding that service on general passenger agent was sufficient service on foreign vessel owner (quoting

13

Grammenos v. Lemos, 457 F.2d 1067, 1072 (2d Cir. 1972))); Green
v. Compania de Navigacion Isabella, Ltd., 26 F.R.D. 616, 617-18
(S.D.N.Y. 1960) (Weinfeld, J.) (denying vessel owner's request
to quash service of process on the ground that corporation
served was not defendant's managing or general agent where
services corporation performed on behalf of defendant, including
negotiation and execution of charter parties, collecting monies
due defendant, and paying certain of vessel's expenses, were
"sufficient to establish 'presence'" of defendant within the
jurisdiction and to find corporation was defendant's general
agent who could be served with process).

       Finally, although plaintiff does not argue that the
District of New Jersey is an obviously less convenient
jurisdiction for plaintiff, see Aqua Stoli, 460 F.3d at 444, the
Court nevertheless notes that the District of New Jersey fits
the Second Circuit's description of a convenient adjacent
jurisdiction. Id. In reaching this conclusion, this Court
agrees with Judge Sand's analysis of the concept of
"convenience" in Swiss Marine Servs. S.A. v. Louis Dreyfus
Energy Servs. L.P., No. 08 Civ. 7981 (LBS), 2008 WL 4906137, at
*5 (S.D.N.Y. Nov. 17, 2008). In Swiss Marine, based on a
textual reading of Rule B and Aqua Stoli, Judge Sand concluded
that "convenience" refers to "geographic proximity," and that
the Second Circuit intended for district courts to consider

                              14

"whether the physical distance of an adjacent jurisdiction
renders it so less obviously convenient to plaintiff that the
court could not equitably vacate the attachment." Id. (internal
quotation marks and citation omitted).

The Court also agrees with Judge Rakoff's conclusion in
Ivan Visin Shipping that the convenient adjacent jurisdiction
need not be in the same state as the attaching district. 543 F.
Supp. 2d at 340 ("Aqua Stoli did not state that such [a
"paradigmatic example"] could not extend to the District of New
Jersey"); cf. China Nat'l Chartering Corp. v. Patracans Air &
Sea, Inc., No. 06 Civ. 13107 (LAK), 2008 WL 5227186, at *2
(S.D.N.Y. Dec. 16, 2008) (finding that Second Circuit's
reference to "adjacent" in Aqua Stoli was not limited to
districts that literally abut the jurisdiction in which
attachment was obtained). But see First Am. Bulk Carrier Corp.
v. Van Om-Meren Shipping (USA) LLC, 540 F. Supp. 2d 483, 485
(S.D.N.Y. 2008) (noting in dicta that "courts have discretion to
vacate an attachment if the defendant would be subject to *in
personam* jurisdiction in an adjacent jurisdiction convenient to
the plaintiff" but that the concept of "adjacent" is "generally
viewed as one of another federal court within the same state,
not one in a different state, even if the two states are
adjacent"). Here, although the District of New Jersey is not
the "paradigmatic example" cited in Aqua Stoli, it nevertheless

15

is an "across the river" jurisdiction and not so remote as to preclude vacatur of the instant order of attachment on equitable grounds. See also Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965)("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge.").

Thus, although Cantone may have met its burden under the Supplemental Admiralty Rules and Second Circuit case law of stating a valid *prima facie* claim, the equitable grounds for vacatur set forth in Aqua Stoli suggest that vacatur is appropriate in this case. Defendant can be found in the District of New Jersey for purposes of both personal jurisdiction and service of process, and New Jersey is a convenient adjacent jurisdiction to the Southern District of New York.[6] As Judge Sand noted in Swiss Marine, this outcome is consistent with the purpose of Rule B: "Where a defendant is

---

[6] In so holding, this Court joins other courts in this jurisdiction that have vacated attachments for similar reasons. See China Nat'l Chartering, 2008 WL 5227186, at *2(vacating attachment against third party defendant where both parties appeared *in personam* in actions in Northern District of Florida, making Florida a convenient adjacent jurisdiction for plaintiff); Swiss Marine, 2008 WL 4906137, at *1 (vacating attachment where defendant was subject to personal jurisdiction and service of process in District of Connecticut); Dominion Bulk Int'l S.A. v. Louis Dreyfus Corp., No. 08 Civ. 8507, Order Modifying Summary Order of Oct. 28, 2008, Docket No. 16 (S.D.N.Y. Nov. 10, 2008) (vacating writ of attachment based on defendant's presence "in New York State and nearby districts"); Ivan Visin Shipping, 2008 U.S. Dist. LEXIS 25028, at *12 (finding defendant jurisdictionally present and capable of being served with process in District of New Jersey); Far E. Shipping Co. v. Progress Bulk Carriers, Ltd., No. 07 Civ 11375 (PAC), 2008 WL 2035788, at *2 (S.D.N.Y. Feb. 8, 2008) (vacating attachment where defendant was jurisdictionally present in Eastern District of New York by virtue of presence of its managing agent).

16

jurisdictionally present in . . . an adjacent district, the ability of the court to exercise *in personam* jurisdiction over the defendant satisfies the plaintiff's need for assurance that it will be able to call the defendant into court to satisfy a judgment." 2008 WL 4906137, at *5 (footnote omitted).

II.  Motion to Dismiss

In its submission to the Court, SeaFrigo also moves to dismiss Cantone's complaint for lack of personal jurisdiction. The Second Circuit has held that the two purposes of maritime attachments are "to obtain jurisdiction of the respondent *in personam* through his property [and] to assure satisfaction of any decree in libelant's favor." Seawind, 320 F.2d at 581-82. Because the attachment is the only basis for jurisdiction in this Court, its vacatur requires dismissal of Cantone's complaint.

## CONCLUSION

The Court finds that SeaFrigo is found in the convenient adjacent jurisdiction of the District of New Jersey and thus GRANTS SeaFrigo's motion to vacate the writ of attachment and dismiss this action.  The Court hereby orders that the writ of attachment issued by Judge Daniels on July 23, 2007 be VACATED and directs the garnishees to release all restrained funds.  As

17

the attachment is the only basis for jurisdiction in this Court,

Cantone's complaint is also DISMISSED without prejudice.

**SO ORDERED.**

**New York, New York**

January 26, 2009

U.S.D.J.

18

Copies of this Order and Opinion have been sent by ECF to:

Attorneys for the Plaintiff
Kevin J. Lennon, Esq.
Anne C. LeVasseur, Esq.
LENNON, MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170


Attorney for the Defendant
Stephen H. Vengrow, Esq.
CICHANOWICZ CALLAN KEANE VENGROW & TEXTOR, LLP
61 Broadway, Suite 3000
New York, New York 10006